JUDGE OETKEN

**14 CV       3251**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR MENALDI, Individually and on
Behalf of All Others Similarly Situated,

                          Plaintiff(s),

              v.

OCH-ZIFF CAPITAL MANAGEMENT
GROUP LLC, DANIEL S. OCH, and
JOEL M. FRANK,

                         Defendants.

Case No.

**CLASS ACTION**

**DEMAND FOR JURY TRIAL**



RECEIVED
MAY - 5 2014
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff Arthur Menaldi ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Och-Ziff Capital Management Group  LLC, ("Och-Ziff" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than defendants and their affiliates, who purchased the securities of Och-Ziff from February 9, 2012 to April 25, 2014, inclusive (the "Class Period").  Plaintiff seeks to pursue remedies against Och-Ziff and certain of its officers and directors for violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Defendant Och-Ziff is a publicly owned investment management company that was founded in 1994 and is based New York, New York with additional offices in London, United Kingdom; Hong Kong; Tokyo, Japan; Bangalore, India; and Beijing, China.  Och-Ziff is a Delaware corporation whose shares trade on the New York Stock Exchange ("NYSE").

3.      The Company provides investment advisory services for its clients and it invests in equity markets and real estate across the world. The Company also makes investments in alternative markets throughout the world.

4.      Throughout the Class Period, defendants made false and/or misleading statements, and failed to disclose material adverse facts about the Company's business, operations, prospects and performance.  Specifically, during the Class Period, defendants made false and/or misleading statements and/or failed to disclose that:  (i) the Company violated relevant anti-bribery laws by accepting an investment from the Libyan Investment Authority, a sovereign wealth fund; (ii) the Company loaned $234 million to help finance two ventures in the Democratic Republic of Congo in violation of the Foreign Corrupt Practices Act ("FCPA"); (iii) beginning in 2011, the Company received subpoenas from the Securities and Exchange Commission ("SEC") and the United States Department of Justice ("DOJ") in connection with

the transactions mentioned above; and (iv) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

5.      On February 3, 2014, the Wall Street Journal ("WSJ") reported that the U.S. Department of Justice (the "DOJ") joined a widening investigation of banks, private-equity firms and hedge funds, including Och-Ziff, relating to the possible violation of anti-bribery laws in their dealings with Libya's government-run investment fund. The article also stated that the criminal investigation by the DOJ was proceeding alongside a civil probe by the SEC that began in 2011.

6.      Regarding the investigations in general, the article stated:

> Authorities are examining investment deals made around the time of the financial crisis and afterward, these people said. In the years leading up to Libya's 2011 revolution, Western firms—encouraged by the U.S. government—raced to attract investment money from the North African nation, which was benefiting from oil sales and recently had opened to foreign investment.

> Investigators are trying to determine whether the firms violated the Foreign Corrupt Practices Act, the people said. The 1977 law prohibits U.S. companies and companies listed on U.S. stock exchanges from paying bribes to foreign officials. U.S. authorities consider employees of state-owned investment funds, such as the Libyan Investment Authority, to be foreign officials.

7.      Regarding Och-Ziff specifically, the article stated:

> Prosecutors and regulators also are investigating transactions involving real-estate investments in Libya, according to people familiar with the matter. Among the deals being scrutinized is a $120 million hotel project in which Och-Ziff had a stake—a joint venture involving U.K.-based InterContinental Hotels Group as well as a Libyan developer and the Libyan Investment Authority to build a luxury hotel in Tripoli—according to people familiar with the probe.

> The hotel, which was slated to open in the Libyan capital in 2010, would have 351 rooms and "stunning views across the city and waterfront," according to a 2007 news release from InterContinental, but construction stalled as fighting broke out in the country. It still hasn't been completed.

8.      On the news, Och-Ziff stock fell $0.87, or 6.7%, to close at $12.08 on heavy volume.

9.      On March 18, 2014, after the close of trading, Och-Ziff filed an annual report on Form 10-K with the SEC.  In the 10-K the Company stated:

> Beginning in 2011, and from time to time thereafter, we have received subpoenas from the SEC and requests for information from the U.S. Department of Justice (the "DOJ") in connection with an investigation involving the FCPA and related laws. The investigation concerns an investment by a foreign sovereign wealth fund in some of our funds in 2007 and investments by some of our funds, both directly and indirectly, in a number of companies in Africa. At this time, we are unable to determine how the investigation will be resolved and what impact, if any, it will have. An adverse outcome could have a material effect on our business, financial condition or results of operations.

10.      Although the Och-Ziff did not disclose which foreign sovereign wealth fund investment was being investigated by the SEC and the DOJ, according to articles published by the WSJ, Bloomberg, and other news sources, the investigation revolved around an investment by the Libyan Investment Authority.  An article in Bloomberg News stated:

> The sovereign fund referenced by Och-Ziff in its filing is the Libyan Investment Authority, according to a person with knowledge of the matter who asked not to be identified because they weren't authorized to speak publicly. Regulators have been investigating how the LIA made investment decisions before the toppling of Muammar Qaddafi's regime in 2011.

11.      On the news, shares in Och-Ziff fell $0.49 or 3.5%, on heavy trading volume, to close at $13.71 on March 19, 2014.

12.      On April 27, 2014, the WSJ published an article providing details about the Och-Ziff investments in Africa under investigation by the SEC and DOJ.  The article stated that the probe centered on two loans totaling $234 million, to companies controlled by a controversial mining executive, which helped finance two ventures in the Democratic Republic of Congo involving properties that were the subject of ownership disputes. The article stated further that:

> The loans to companies . . . include one made in 2008 by an investment fund run jointly by Och-Ziff and South African partners; another was made in 2010 by Och-Ziff itself, according to the documents, which include offshore corporate-registration filings, investment memos and emails. The loans were made under the oversight of Michael Cohen, then the head of Och-Ziff's London office and one of its most senior executives, the documents show. Mr. Cohen resigned last year after 15 years at the firm.

13.     On the news, shares in Och-Ziff fell $1.28, or almost 10% on heavy trading volume, to close at $11.65 on April 28, 2014.

14.     As a result of defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

15.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

16.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

17.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as a significant portion of the defendants' actions, and the subsequent damages, took place within this District.

18.     In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

19.     Plaintiff, as set forth in the accompanying Certification, which is incorporated by reference herein, purchased the common stock of Och-Ziff at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

20.     Defendant Och-Ziff is a Delaware corporation with its principal executive offices located at 9 West 57th Street New York, NY 10019. Och-Ziff's common stock trades on the NYSE under the ticker symbol "OZM."

21.     Defendant Daniel S. Och ("Och") is the founder of the Company and has been its Chairman and Chief Executive Officer ("CEO") since its inception.

22.     Defendant Joel M. Frank ("Frank") is, and at all relevant times was, the Company's Chief Financial Officer ("CFO").

23.     Defendants referenced above in ¶¶ 21 and 22 are sometimes referred to herein, collectively, as the "Individual Defendants."

24.     Defendant Och-Ziff and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

25.     Och-Ziff Capital Management Group LLC is a publicly owned investment manager.  The Company provides investment advisory services for its clients.  It invests in equity markets and in real estate across the world.

26.     The Company also makes its investments in alternative markets across the world and employs quantitative and qualitative analysis to make its investments.  The firm also manages a buyout fund, Och-Ziff Energy Fund.  Och-Ziff Capital Management Group LLC was

founded in 1994 and is based New York, New York with additional offices in London, United Kingdom; Hong Kong; Tokyo, Japan; Bangalore, India; and Beijing, China.

## Materially False and Misleading
## Statements Issued During the Period

27.     On February 9, 2012, the first day of the Class Period, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2011. For the fourth quarter, the net loss allocated to Class A Shareholders was $137 million, or $1.17 per diluted share, on revenues of $181.3 million, compared to a net loss allocated to Class A Shareholders of $22.8 million or $0.24 per diluted share on revenues of $568.7 million for the same period in the prior year. For the year, the net loss allocated to Class A Shareholders was $419 million or $4.07 per diluted share on revenues of $616.4 million, compared to a net loss allocated to Class A Shareholders of $294.4 million or $3.35 per diluted share on revenues of $924.5 million for the prior year.

28.     On February 27, 2012, the Company filed an annual report on Form 10-K with the SEC which was signed by defendants Och and Frank, and reiterated the Company's previously announced quarterly and year-end financial results and financial position. In addition, the Form 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by defendants Och and Frank, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     In the 10-K, the Company stated:

> We are not currently subject to any pending judicial, administrative or arbitration proceedings that we expect to have a material impact on our results of operations or financial condition.

30.     On May 2, 2012, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the first quarter ended March 31, 2012. Net loss allocated to Class A Shareholders was $122.7 million, or $0.87 per diluted share, on revenues of $140.9 million, compared to a net loss allocated to Class A Shareholders of $95.5 million or $0.99 per diluted share on revenues of $138.4 million for the same period in the prior year.

31.     On May 2, 2012, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by Defendant Frank, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Och and Frank, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

32.     In the Form 10-Q, the Company stated:

> The Company is currently not subject to any pending judicial, administrative or arbitration proceedings that are expected to have a material impact on the Company's consolidated financial statements.

33.     On August 2, 2012, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the second quarter ended June 30, 2012. Net loss allocated to Class A Shareholders was $116.27 million or $0.82 per diluted share on revenues of $178.4 million, compared to a net loss allocated to Class A Shareholders of $93.4 million or $0.96 per diluted share, on revenues of $147.3 million for the same period in the prior year.

34.     On August 2, 2012, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by Defendant Frank, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX

certifications signed by defendants Och and Frank, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

35.     In the Form 10-Q, the Company stated:

> We are not currently subject to any pending judicial, administrative or arbitration proceedings that we expect to have a material impact on our consolidated financial statements.

36.     On November 2, 2012, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the third quarter ended September 30, 2012. Net loss allocated to Class A Shareholders was $127.5 million, or $0.89 per diluted share on revenues of $168 million, compared to a net loss allocated to Class A Shareholders of $93.1 million or $0.93 per diluted share on revenues of $147.3 million for the same period in the prior year.

37.     On November 5, 2012, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by Defendant Frank, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Och and Frank, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

38.     In the Form 10-Q, the Company stated:

> We are not currently subject to any pending judicial, administrative or arbitration proceedings that we expect to have a material impact on our consolidated financial statements.

39.     On February 7, 2013, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2012. For the fourth quarter, net income allocated to Class A Shareholders was

$50.7 million, or $.34 per diluted share on revenues of $724 million, compared to a net loss allocated to Class A Shareholders of $137 million or $1.17 per diluted share on revenues of $181.3 million for the same period in the prior year. For the year, net loss allocated to Class A Shareholders was $315.8 million or $2.21 per diluted share, on revenues of $1.2 billion compared to a net loss allocated to Class A Shareholders of $419 million, or $4.07 per diluted share on revenues of $616 million, for the prior year.

40.     On February 28, 2013, the Company filed an annual report on Form 10-K with the SEC, which was signed by defendants Och and Frank, and reiterated the Company's previously announced quarterly and year-end financial results and financial position. In addition, the Form 10-K contained SOX certifications signed by defendants Och and Frank, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

41.     In the Form 10-K, the Company stated:

> We are not currently subject to any pending judicial, administrative or arbitration proceedings that we expect to have a material impact on our consolidated financial statements.

42.     On March 19, 2013, the Company filed a Form 8-K with the SEC announcing the resignation of Michael L. Cohen, Head of European Investing. The Form 8-K stated:

> On March 18, 2013, Michael L. Cohen, Head of European Investing for Och-Ziff Capital Management Group LLC (the "Company"), submitted his resignation, effective as of March 18, 2013. Mr. Cohen will remain with the Company through the end of March 2013 in order to assist with an orderly transition of his responsibilities.

43.     On May 2, 2013, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the first quarter ended March 31, 2013. Net Income allocated to Class A Shareholders was $26.1 million, or $0.17 per diluted share, on revenues of $270.4 million, compared to a net loss allocated to Class A Shareholders of

$122.7 million or $0.87 per diluted share on revenues of $140.9 million for the same period in the prior year.

44.     That same day, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by Defendant Frank, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Och and Frank, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

45.     In the Form 10-Q, the Company stated:

> The Company is currently not subject to any pending judicial, administrative or arbitration proceedings that are expected to have a material impact on the Company's consolidated financial statements.

46.     On August 2, 2013, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the second quarter ended June 30, 2013. Net Income allocated to Class A Shareholders was $4.9 million or $0.03 per diluted share, on revenues of $207.9 million, compared to a net loss allocated to Class A Shareholders of $116.2 million or $0.82 per diluted share on revenues of $178.4 million for the same period in the prior year.

47.     On August 2, 2013, the Company filed a quarterly report on Form 10-Q with the SEC, which was signed by Defendant Frank, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Och and Frank, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

48.     In the Form 10-Q, the Company stated:

> We are not currently subject to any pending judicial, administrative or arbitration proceedings that we expect to have a material impact on our consolidated financial statements.

49.     On November 5, 2013, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the third quarter ended September 30, 2013. Net income allocated to Class A Shareholders was $24.9 million or $0.16 per diluted share, on revenues of $256.9 million, compared to a net loss allocated to Class A Shareholders of $127.5 million, or $0.89 per diluted share on revenues of $168 million for the same period in the prior year.

50.     On November 5, 2013, the Company filed a quarterly report on Form 10-Q with the SEC which was signed by Defendant Frank, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the Form 10-Q contained SOX certifications signed by defendants Och and Frank, stating that the financial information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

51.     In the 10-Q, the Company stated:

> We are not currently subject to any pending judicial, administrative or arbitration proceedings that we expect to have a material impact on our consolidated financial statements.

52.     The statements referenced in ¶¶ 27–51 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to Defendants or recklessly disregarded by them, including that: (i) the Company violated relevant anti-bribery laws by accepting an investment from the Libyan Investment Authority, a sovereign wealth fund; (ii) the Company loaned $234 million to help finance two ventures in the Democratic Republic of Congo in violation of the FCPA; (iii) beginning in 2011,

the Company received subpoenas from the SEC and the DOJ in connection with the transactions mentioned above; and (iv) as a result of the above, the Company's financial statements were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

53.    On February 3, 2014, the Wall Street Journal reported that the DOJ joined a widening investigation of banks, private-equity firms and hedge funds, including Och-Ziff, regarding possible violations of antibribery laws in their dealings with Libya's government-run investment fund. The article also stated that the criminal investigation by the DOJ was proceeding alongside a civil probe by the SEC that began in 2011.

54.    Regarding the investigations in general, the article stated:

> Authorities are examining investment deals made around the time of the financial crisis and afterward, these people said. In the years leading up to Libya's 2011 revolution, Western firms—encouraged by the U.S. government—raced to attract investment money from the North African nation, which was benefiting from oil sales and recently had opened to foreign investment.

> Investigators are trying to determine whether the firms violated the Foreign Corrupt Practices Act, the people said. The 1977 law prohibits U.S. companies and companies listed on U.S. stock exchanges from paying bribes to foreign officials. U.S. authorities consider employees of state-owned investment funds, such as the Libyan Investment Authority, to be foreign officials.

55.    Regarding Och-Ziff specifically, the article stated:

> Prosecutors and regulators also are investigating transactions involving real-estate investments in Libya, according to people familiar with the matter. Among the deals being scrutinized is a $120 million hotel project in which Och-Ziff had a stake—a joint venture involving U.K.-based InterContinental Hotels Group as well as a Libyan developer and the Libyan Investment Authority to build a luxury hotel in Tripoli—according to people familiar with the probe.

The hotel, which was slated to open in the Libyan capital in 2010, would have 351 rooms and "stunning views across the city and waterfront," according to a 2007 news release from InterContinental, but construction stalled as fighting broke out in the country. It still hasn't been completed.

56.     Thus, despite repeatedly representing in quarterly and annual reports that the Company was not subject to any "pending judicial, administrative or arbitration proceedings," in fact, the Company had been under investigation by the SEC and the DOJ for potential violations of anti-bribery laws and the FCPA since 2011.

57.     On this news, Och-Ziff stock fell $0.87 or 6.7%, to close at $12.08 on heavy volume.

58.     On February 6, 2014, the Company issued a press release and filed a Form 8-K, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2013. For the fourth quarter, net income allocated to Class A Shareholders was $195.8 million, or $1.12 per diluted share, on revenues of $1.1 billion, compared to net income allocated to Class A Shareholders of $50.7 million or $0.35 per diluted share on revenues of $724 million for the same period in the prior year. For the year, net income allocated to Class A Shareholders was $251.6 million or $1.57 per diluted share on revenues of $1.8 billion, compared to a net loss allocated to Class A Shareholders of $315.8 million or $2.21 per diluted share on revenues of $1.2 billion for the prior year.

59.     On March 4, 2014, the Company filed a Notification of Late Filing on Form 12b-25 with the SEC, stating as follows:

> Och-Ziff Capital Management Group LLC (the "Company") was unable to file its Annual Report on Form 10-K for the fiscal year ended December 31, 2013 (the "2013 Form 10-K") by March 3, 2014, without unreasonable effort or expense because it is working to resolve certain outstanding comments that the Company recently received from the staff of the Securities and Exchange Commission (the "SEC") in connection with its periodic review of the Company's reports.

14

***

> Specifically, the Company is currently addressing the SEC's comments on the Company's accounting relating to (i) the non-consolidation of the collateralized loan obligation vehicles ("CLOs") it manages; and (ii) deferral of certain income attributable to its consolidated funds.

60.     On March 14, 2014, the Company filed a Form 8-K with the SEC announcing that some of their previously issued financial statements would be restated and should not be relied upon. In the Form 8-K, the Company stated as follows:

> Och-Ziff Capital Management Group LLC (the "Company") will restate certain of its previously issued financial statements in its Annual Report on Form 10-K for the year ended December 31, 2013, which the Company expects to file with the U.S. Securities and Exchange Commission ("SEC") on or before March 18, 2014.  None of these changes will have any impact on the Company's Economic Income, Distributable Earnings and Distributable Earnings per Adjusted Class A Share, each as previously reported.

61.     On March 18, 2014, the Company filed an annual report on Form 10-K with the SEC which was signed by defendants Och and Frank, and reiterated the Company's previously announced quarterly and year-end financial results and financial position. In addition, the Form 10-K contained SOX certifications signed by defendants Och and Frank, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

62.     Moreover, the Form 10-K included statements confirming the media reports that the Company was in fact being investigated by the SEC and the DOJ since 2011:

> Beginning in 2011, and from time to time thereafter, we have received subpoenas from the SEC and requests for information from the U.S. Department of Justice (the "DOJ") in connection with an investigation involving the FCPA and related laws. The investigation concerns an investment by a foreign sovereign wealth fund in some of our funds in 2007 and investments by some of our funds, both directly and indirectly, in a number of companies in Africa. At this time, we are unable to determine how the investigation will be resolved and what impact, if any, it will have. An adverse outcome could have a material effect on our business, financial condition or results of operations.

15

63.     Although Och-Ziff did not disclose which foreign sovereign wealth fund investment was under investigation, according to articles published by the WSJ, Bloomberg, and other news sources, the investigation involved an investment by the Libyan Investment Authority. An article published by Bloomberg News stated:

> The sovereign fund referenced by Och-Ziff in its filing is the Libyan Investment Authority, according to a person with knowledge of the matter who asked not to be identified because they weren't authorized to speak publicly. Regulators have been investigating how the LIA made investment decisions before the toppling of Muammar Qaddafi's regime in 2011.

64.     On the news, shares in Och-Ziff fell $0.49 or 3.5%, on heavy trading volume, to close at $13.71 on March 19, 2014.

65.     On April 27, 2014, the WSJ published an article providing details about the Och-Ziff investments in Africa under investigation by the SEC and DOJ. The article stated that the probe involved two loans totaling $234 million, to companies controlled by a controversial mining executive, which helped finance two ventures in the Democratic Republic of Congo involving properties that were the subject of ownership disputes. The article stated further that:

> The loans to companies . . . include one made in 2008 by an investment fund run jointly by Och-Ziff and South African partners; another was made in 2010 by Och-Ziff itself, according to the documents, which include offshore corporate-registration filings, investment memos and emails. The loans were made under the oversight of Michael Cohen, then the head of Och-Ziff's London office and one of its most senior executives, the documents show. Mr. Cohen resigned last year after 15 years at the firm.

66.     On the news, shares in Och-Ziff fell $1.28, or almost 10%, on heavy trading volume, to close at $11.65 on April 28, 2014.

67.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'CLASS ACTION ALLEGATIONS

68.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Och-Ziff securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

69.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Och-Ziff securities were actively traded on the NYSE.   While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.   Record owners and other members of the Class may be identified from records maintained by Och-Ziff or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

70.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

71.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

72.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Och-Ziff;

- whether the Individual Defendants caused Och-Ziff to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Och-Ziff securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and,

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

73.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

74.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

·18

- Och-Ziff securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Och-Ziff securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

75.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

76.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

77.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

78.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

79.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions,

practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Och-Ziff securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Och-Ziff securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

80.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Och-Ziff securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Och-Ziff's finances and business prospects.

81.     By virtue of their positions at Och-Ziff, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made,

although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

82.     Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of Och-Ziff securities from their personal portfolios.

83.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Och-Ziff, the Individual Defendants had knowledge of the details of Och-Ziff's internal affairs.

84.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Och-Ziff. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Och-Ziff's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Och-Ziff securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Och-Ziff's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Och-Ziff securities at artificially inflated prices and relied upon the price of

the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

85.    During the Class Period, Och-Ziff securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Och-Ziff securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Och-Ziff securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Och-Ziff securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

86.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

87.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

88.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

89.     During the Class Period, the Individual Defendants participated in the operation and management of Och-Ziff, and conducted and participated, directly and indirectly, in the conduct of Och-Ziff's business affairs.  Because of their senior positions, they knew the adverse non-public information about Och-Ziff's misstatement of income and expenses and false financial statements.

90.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Och-Ziff's financial condition and results of operations, and to correct promptly any public statements issued by Och-Ziff which had become materially false or misleading.

91.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Och-Ziff disseminated in the marketplace during the Class Period concerning Och-Ziff's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Och-Ziff to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Och-Ziff within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Och-Ziff securities.

92.     Each of the Individual Defendants, therefore, acted as a controlling person of Och-Ziff.  By reason of their senior management positions and/or being directors of Och-Ziff,

each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Och-Ziff to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Och-Ziff and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

93.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Och-Ziff.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:   May 5, 2014

Respectfully submitted,

**POMERANTZ LLP**

Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        fmcconville@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

25

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _ARTHUR Menaldi_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Och-Ziff Capital Management Group LLC ("Och-Ziff" or the "Company"), and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire Och-Ziff securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Och-Ziff securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of my transactions in Och-Ziff securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed   _2 May 2014_
           (Date)

_____
(Signature)

_____
(Type or Print Name)

Och-Ziff Capital Management Group LLC (OZM)                    **Menaldi, Arthur**

## LIST OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 03/31/2014 | PUR | 500 | $13.6000 |
| 04/07/2014 | PUR | 200 | $12.2100 |
| 04/07/2014 | PUR | 300 | $12.8800 |
| 04/10/2014 | PUR | 1,000 | $11.8800 |
| 04/10/2014 | PUR | 1,000 | $12.3500 |