UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARTHUR MENALDI, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiff,

    v.

OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC,
DANIEL S. OCH, JOEL M. FRANK, and MICHAEL
COHEN,

        Defendants.

No. 1:14-CV-03251 (JPO)

# REPLY MEMORANDUM OF LAW OF DEFENDANTS OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC, DANIEL S. OCH, AND JOEL M. FRANK IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone: (212) 351-4000
Fax: (212) 351-4035

*Attorneys for Defendants Och-Ziff Capital
Management Group LLC, Daniel S. Och,
and Joel M. Frank*

July 2, 2015

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................................ii

TABLE OF ABBREVIATIONS ................................................................................ vi

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................... 2

    I.    The Amended Complaint Does Not Plead
          An Actionable Misrepresentation Or Omission............................................ 2

        A.    Plaintiffs Do Not Plead Particularized Facts Showing That
              The Company Has Violated The FCPA Or Any Other Law ................................ 2

        B.    Och-Ziff Had No Duty To Accuse Itself Of Wrongdoing................................. 10

        C.    Och-Ziff Did Not Misrepresent Its Regulatory Status........................................ 13

    II.    The Amended Complaint Fails To Plead Facts Giving
          Rise To A Strong Inference Of Fraudulent Intent ........................................ 15

    III.    The Amended Complaint Fails To Plead A Claim For "Scheme" Liability ............... 18

    IV.    Plaintiffs' Section 20(a) Claim Should Be Dismissed................................................. 20

    V.    Plaintiffs' Request For Further Leave To Amend Should Be Denied......................... 20

CONCLUSION........................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### Cases

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ................................................................ 20

*Auer v. Robbins*,
   519 U.S. 452 (1997) ........................................................................ 20

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................... 7, 9

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
   506 F. App'x 32 (2d Cir. 2012) ..................................................... 13

*Bolger v. First State Fin. Servs.*,
   759 F. Supp. 182 (D.N.J. 1991) ................................................... 10

*Christopher v. SmithKline Beecham Corp.*,
   132 S. Ct. 2156 (2012) ................................................................. 20

*Ciresi v. Citicorp*,
   782 F. Supp. 819 (S.D.N.Y. 1991),
   *aff'd*, 956 F.2d 1161 (2d Cir. 1992) ..................................... 1, 10, 16

*City of Brockton Ret. Sys. v. Avon Prods. Inc.*,
   2014 WL 4832321 (S.D.N.Y. Sept. 29, 2014) ............................... 8

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
   928 F. Supp.2d 705 (S.D.N.Y. 2013) .......................................... 15

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) ............................................... 1, 12, 13

*Fezzani v. Bear, Stearns & Co. Inc.*,
   777 F.3d 566 (2d Cir. 2015) ........................................................ 19

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011) ......................................... 17

*Hart v. Internet Wire, Inc.*,
   145 F. Supp. 2d 360 (S.D.N.Y. 2001),
   *aff'd*, 50 F. App'x 464 (2d Cir. 2002) ......................................... 18

*In re AXIS Capital Holdings Ltd. Sec. Litig.*,
   456 F. Supp. 2d 576 (S.D.N.Y. 2006) ............................... 4, 10, 11, 16

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*In re BioScrip, Inc. Sec. Litig.*,
  __ F. Supp. 3d __, 2015 WL 1501620 (S.D.N.Y. Mar. 31, 2015) ............................................ 14

*In re CRM Holdings, Ltd. Sec. Litig.*,
  2012 WL 1646888 (S.D.N.Y. May 10, 2012) ...................................................................... 18

*In re FBR Inc. Sec. Litig.*,
  544 F. Supp. 2d 346 (S.D.N.Y. 2008) ...................................................... 1, 2, 4, 10, 11, 12

*In re JP Morgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) ...................................................................... 2, 4, 10

*In re Manulife Fin. Corp. Sec. Litig.*,
  276 F.R.D. 87 (S.D.N.Y. 2011) ...................................................................................... 17

*In re Optionable Sec. Litig.*,
  577 F. Supp. 2d 681 (S.D.N.Y. 2008) ............................................................................... 8

*In re ProShares Trust Sec. Litig.*,
  728 F.3d 96 103 (2d Cir. 2013) ...................................................................................... 10

*In re Sotheby's Holdings, Inc. Sec. Litig.*,
  2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000) ................................................................. 11

*In re Thornburg Mortg., Inc. Sec. Litig.*,
  695 F. Supp. 2d 1165 (D.N.M. 2010) ............................................................................. 14

*In re Turquoise Hill Resources Ltd. Sec. Litig.*,
  2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ................................................................. 17

*In re Van der Moolen Holding N.V. Sec. Litig.*,
  405 F. Supp. 2d 388 (S.D.N.Y. 2005) ............................................................................. 14

*In re Yukos Oil Co. Sec. Litig.*,
  2006 WL 3026024 (S.D.N.Y. 2006) .................................................................... 4, 10, 16

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  131 S. Ct. 2296 (2011) .................................................................................................. 20

*JHW Greentree Capital, L.P. v. Whittier Trust Co.*,
  2005 WL 3008452 (S.D.N.Y. Nov. 10, 2005) ................................................................. 20

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) .......................................................................................... 16

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Lamb v. Thompson,*
   265 F.3d 1038 (10th Cir. 2001) ........................................................................ 20

*Lapin v. Goldman Sachs Group, Inc.,*
   506 F. Supp. 2d 221 (S.D.N.Y. 2000) .............................................................. 11

*Medis Investor Grp. v. Medis Techs., Ltd.,*
   586 F. Supp. 2d 136 (S.D.N.Y. 2008) .............................................................. 16

*Menkes v. Stolt-Nielsen S.A.,*
   2005 WL 3050970 (D. Conn. Nov. 10, 2005) .................................................. 11

*Pacific Inv. Mgmt. Co. LLC, v. Mayer Brown LLP,*
   603 F.3d 144 (2d Cir. 2010) ............................................................................. 19

*Plumbers & Steamfitters Local 773 Fund v. Canadian Imperial Bank of Commerce,*
   694 F. Supp. 2d 287 (S.D.N.Y. 2010) .............................................................. 10

*Rapoport v. Asia Elecs. Holding Co., Inc.,*
   88 F. Supp. 2d 179 (S.D.N.Y. 2000) .................................................................. 5

*Republic of Iraq v. ABB AG,*
   768 F.3d 145 (2d Cir. 2014) ............................................................................. 19

*Richman v. Goldman Sachs Grp., Inc.,*
   868 F. Supp. 2d 261 (S.D.N.Y. 2012) ............................................. 1, 13, 14, 16

*SEC v. Dunn,*
   587 F. Supp. 2d 486 (S.D.N.Y. 2008) ................................................................ 3

*SEC v. Jackson,*
   908 F. Supp. 2d 834 (S.D. Tex. 2012) ............................................................... 3

*SEC v. Kelly,*
   817 F. Supp. 2d 340 (S.D.N.Y. 2011) .............................................................. 19

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,*
   552 U.S. 148 (2008) ......................................................................................... 19

*Taylor v. Westor Capital Grp.,*
   943 F. Supp. 2d 397 (S.D.N.Y. 2013) .............................................................. 19

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,*
   531 F.3d 190 (2d Cir. 2008) ............................................................................. 18

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................................... 3, 15

*Tyler v. Liz Claiborne, Inc.*,
    814 F. Supp. 2d 323 (S.D.N.Y. 2011) ..................................................... 17

*U.S. v. Schiff*,
    538 F. Supp. 2d 818 (D.N.J. 2008) .......................................................... 3

*Vining v. Oppenheimer Holdings Inc.*,
    2010 WL 3825722 (S.D.N.Y. Sept. 29, 2010) ........................................ 18

**Statutes & Rules**

15 U.S.C. § 78j(b) .................................................................... 2, 3, 4, 19, 20

15 U.S.C. § 78t(a) ............................................................................... 20

15 U.S.C. § 78dd-1(a)(3) ...................................................................... 4

15 U.S.C. § 78u-4(b)(1)(B) ................................................................... 3

15 U.S.C. § 78u-4(b)(2)(A) ................................................................... 3

17 C.F.R. § 229.103 ............................................................................. 1

17 C.F.R. § 229.303 ........................................................................ 2, 15

17 C.F.R. § 229.303(a)(3)(ii) .............................................................. 15

17 C.F.R. § 240.10b-5 ........................................................................ 19

17 C.F.R. § 240.10b-5(a) .............................................................. 2, 19, 20

17 C.F.R. § 240.10b-5(b) .................................................................... 20

17 C.F.R. § 240.10b-5(c) .............................................................. 2, 19, 20

28 U.S.C. § 1658(b) ........................................................................... 19

Fed. R. Civ. P. 9(b) ............................................................................. 3

**Agency Opinions**

*In re Flannery*,
    2014 WL 7145625 (Dec. 15, 2014) ........................................................ 20

v

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **Amended Complaint** | Plaintiffs' Consolidated Amended Class Action Complaint, dated November 24, 2014 (Dkt. 17) |
| **CAMEC** | Central African Mining and Exploration Company plc |
| **Company** | Och-Ziff Capital Management Group LLC |
| **Congo** | Democratic Republic of Congo |
| **Defendants** | Och-Ziff Capital Management Group LLC, Daniel S. Och, Joel M. Frank, and Michael Cohen |
| **DOJ** | U.S. Department of Justice |
| **FCPA** | Foreign Corrupt Practices Act |
| **Individual Defendants** | Daniel S. Och, Joel M. Frank, and Michael Cohen |
| **LIA** | Libyan Investment Authority |
| **Och-Ziff** | Och-Ziff Capital Management Group LLC |
| **Opp.** | Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss, dated May 29, 2015 (Dkt. 32) |
| **Plaintiffs** | Ralph Langstadt and Julie Lemond |
| **PSLRA** | Private Securities Litigation Reform Act of 1995 |
| **Rule 10b-5** | 17 C.F.R. § 240.10b-5 |
| **SDN** | Specially Designated National |
| **SEC** | U.S. Securities and Exchange Commission |
| **Section 10(b)** | 15 U.S.C. § 78j(b) |
| **Section 20(a)** | 15 U.S.C. § 78t(a) |
| **Serio Decl.** | Declaration of Robert F. Serio, dated March 16, 2015 |
| **Serio Reply Decl.** | Reply Declaration of Robert F. Serio, dated July 2, 2015 |

## INTRODUCTION

Plaintiffs' opposition confirms that the Amended Complaint should be dismissed for multiple independent reasons. *First*, despite all their rhetoric about the "questionable" and "controversial" nature of the Africa Transactions, Plaintiffs do not identify any improper payment to a foreign official that was made by Och-Ziff or on Och-Ziff's behalf. Instead, Plaintiffs speculate that there must have been bribes and ask the Court to dispense with the applicable pleading requirements in private securities actions. Plaintiffs' speculation does not satisfy the relaxed pleading standard of Rule 8(a), much less the heightened and applicable pleading requirements of the PSLRA and Rule 9(b). In the absence of well-pled facts showing that Och-Ziff violated the FCPA, there is no factual predicate for Plaintiffs' claim that Och-Ziff should have disclosed that the Company violated the FCPA.

*Second*, Plaintiffs make no attempt to dispute the case law holding that "the law does not impose a duty to disclose uncharged, unadjudicated wrongdoing," *Ciresi v. Citicorp*, 782 F. Supp. 819, 823 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 1161 (2d Cir. 1992), and do not identify any "specific statements [by Och-Ziff] that could be interpreted as suggesting that the undisclosed improper activity alleged by plaintiffs was not occurring." *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 359 (S.D.N.Y. 2008). Instead, Plaintiffs try to contrive a claim based on statements that are both unrelated to the Africa Transactions and immaterial as a matter of law under binding precedent that Plaintiffs make no attempt to address. *See ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009).

*Third*, Plaintiffs do not dispute the authority holding that disclosure of a regulatory investigation under Item 103 of SEC Regulation S-K is "not required" until the investigation "matures to the point where litigation is apparent and substantially certain to occur." *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 274-75 (S.D.N.Y. 2012). Nor do Plaintiffs

plead any facts contradicting the Company's statements in its March 2014 Form 10-K that it was "unable to determine how the investigation will be resolved and what impact, if any, it will have." (Serio Decl. Ex. B at 27.)  In the absence of such facts, Och-Ziff had no duty to disclose the SEC and DOJ investigation under Item 303 of Regulation S-K.

*Fourth*, Plaintiffs do not plead facts giving rise to a strong inference of fraudulent intent on the part of any Defendant.  Plaintiffs plead no facts at all about Messrs. Och and Frank other than that they are officers of the Company.  Plaintiffs allege that the Africa Transactions "were made under the primary direction of Cohen," Opp. at 38, but do not plead facts showing that the Company violated the FCPA in connection with the Africa Transactions, much less facts showing that Mr. Cohen was aware of any illegal conduct.

*Fifth*, Plaintiffs' contrived claim for "scheme" liability fails to plead virtually every element of a claim under Rule 10b-5(a) and (c).

For all the reasons herein, the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

### I.    The Amended Complaint Does Not Plead An Actionable Misrepresentation Or Omission

#### A.    Plaintiffs Do Not Plead Particularized Facts Showing That The Company Has Violated The FCPA Or Any Other Law

Plaintiffs do not dispute the case law holding that "Plaintiffs' failure to properly plead the wrongdoing that they allege defendants were obligated to disclose is fatal to both their Section 10 and Section 20 claims."  *FBR*, 544 F. Supp. 2d at 355; *see also In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 632 (S.D.N.Y. 2005) (dismissing Section 10(b) claim based on alleged failure to disclose violations of law because "there are no particular[ized] factual allegations that support the conclusory assertion that these investment opportunities were provided as 'kickbacks'").

2

Plaintiffs do not identify particularized facts in the Amended Complaint, however, showing that Och-Ziff violated the FCPA or any other law.  Instead, as if they stood in the shoes of the government and could dispense with the pleading requirements imposed by the PSLRA and Rule 9(b), Plaintiffs assert that "unlike the PSLRA, the FCPA does not impose heightened pleading requirements to state a claim and survive dismissal."  Opp. at 19 (citing *SEC v. Jackson*, 908 F. Supp. 2d 834, 847 (S.D. Tex. 2012)).

Because this is a private civil litigation under the Securities Exchange Act of 1934, Plaintiffs are subject to the heightened pleading standards of the PSLRA and Rule 9(b), not the pleading standards for SEC enforcement actions or DOJ criminal actions.  *See SEC v. Dunn*, 587 F. Supp. 2d 486, 501 (S.D.N.Y. 2008) (explaining that "the PLSRA created a distinct, heightened pleading standard for private securities actions" that do not apply to SEC enforcement actions); *U.S. v. Schiff*, 538 F. Supp. 2d 818, 829-30 (D.N.J. 2008) ("In a criminal case, an indictment is not required to meet the heightened pleading standards operative a in a civil case.").

As the Supreme Court has explained, the PLSRA was "[d]esigned to curb perceived abuses of the § 10(b) private action."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007).  Among other things, the PLSRA requires plaintiffs in private securities actions to "state with particularity all facts on which [a] belief is formed" and "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. §§ 78u-4(b)(1)(B) & (b)(2)(A).  Similarly, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

Thus, in private securities actions, courts have repeatedly applied the heightened pleading requirements of the PLSRA and Rule 9(b) to dismiss claims based on an issuer's nondisclosure of purportedly illegal conduct where, as here, the plaintiffs failed to plead particularized facts showing that the issuer engaged in illegal conduct:

3

- *In re AXIS Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585-86 (S.D.N.Y. 2006) (dismissing Section 10(b) claim based on alleged nondisclosure of anti-competitive scheme because plaintiffs' scheme allegations were "far too conclusory to satisfy the requirements of Rule 9 and the PSLRA");

- *In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *14 (S.D.N.Y. 2006) (dismissing Section 10(b) claim based on alleged nondisclosure of tax violation because "the Complaint fails to plead with particularity sufficient facts demonstrating that Yukos' tax strategy violated Article 40 of the Russian Federation Tax Code");

- *FBR*, 544 F. Supp. 2d at 354 ("[I]n order to state a claim that defendants violated the securities laws because they failed to disclose the insider trading scheme, plaintiffs must plead the alleged trading scheme with particularity.");

- *JP Morgan*, 363 F. Supp. 2d at 632 (dismissing securities fraud action because "Plaintiffs contend that JPM Chase made material omissions in failing to disclose its violations of 18 U.S.C. §§ 215 and 1005," but "Plaintiffs have failed to allege with particularity that JPM Chase or its agents violated [those] statutes").

Plaintiffs do not cite any authority to the contrary, and Plaintiffs' failure to plead particularized facts showing that the Company violated the FCPA dooms their claim that Defendants should have disclosed that the Company violated the FCPA.

Plaintiffs concede that they do not allege any "direct payments from [Och-Ziff] to a foreign official," Opp. at 18, and, notwithstanding their rhetoric, do not allege any illegal conduct by the Company in connection with the Africa Transactions.  Plaintiffs fail to identify any improper payments to foreign officials that were made by others on Och-Ziff's behalf, much less improper payments that were known to Och-Ziff or to which Och-Ziff willfully turned a blind eye.  Thus, under any pleading standard, Plaintiffs have failed to state a claim.

***Zimbabwe – Purchase of CAMEC Shares.***  Plaintiffs do not allege that Och-Ziff offered, paid, gave, promised to pay or to give, or authorized an intermediary to pay money or to give anything else of value to, a Zimbabwean government official for the purpose of influencing an act or decision of that official.  *See* 15 U.S.C. § 78dd-1(a)(3).  Instead, Plaintiffs allege that "Defendants invested $150 million in exchange for shares in CAMEC," a London-listed

4

company, that were "issued on April 7, 2008." *Id.* at 7.  The remainder of Plaintiffs' allegations

concerns conduct by other parties.  Plaintiffs complain that CAMEC subsequently acquired

Lefever Finance Ltd., a British Virgin Islands company, for "a cash payment of $5 million and

the issuance of 215,000,000 new CAMEC ordinary shares" and CAMEC's agreement to advance

to Lefever a $100 million loan, the proceeds of which Plaintiffs contend was ultimately

channeled to the regime of Zimbabwe's President, Robert Mugabe.  (¶ 46.)

      Rather than plead facts showing that Defendants knew or should have known about

CAMEC's loan to Lefever, and that the loan proceeds to Lefever would then be channeled to

President Mugabe's regime, Plaintiffs resort to mischaracterizing "a memorandum prepared by

James McGee, former U.S. ambassador to Zimbabwe." Opp. at 7.  The McGee memorandum

does not state that "the $100 million derived from Och-Ziff was paid to the Zimbabwean

government by CAMEC." *Id.*  Indeed, the memorandum does not even reference Och-Ziff,

much less single out its investment in CAMEC shares as being the source of funds allegedly

channeled to President Mugabe's regime.[1] *See* Serio Reply Decl. Ex. G; *Rapoport v. Asia Elecs.

Holding Co., Inc.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) ("[T]he documents contradict

Plaintiffs' allegations and, therefore, this Court must grant Defendants' motion to dismiss.").

      Plaintiffs make no attempt to explain how a CAMEC "regulatory announcement" in

March 2008 shows that Och-Ziff was aware that funds from a CAMEC loan to Lefever that had

not yet been made would later be channeled to President Mugabe's regime.  According to

Plaintiffs, the announcement, which was made "before the first round of elections in Zimbabwe"

(¶ 56), stated that CAMEC "had discussions with potential investors about 'multiple investment

---

[1] As reflected in the news articles upon which Plaintiffs rely, Och-Ziff was not the only investor in CAMEC shares.  "Blackrock and 10 other companies, including GLG Partners and Credit Suisse" also reportedly invested in CAMEC shares in March and April 2008.   (Serio Decl. Ex. E.)

opportunities' in Africa outside of the Congo."  Opp. at 8.  There is nothing illegal about investing in Africa, and Plaintiffs do not allege that CAMEC discussed with potential investors plans for future bribes to Zimbabwean government officials.  Plaintiffs also inexplicably cite to reported statements by the spokesperson for CAMEC's then CEO Andrew Stuart Groves.  *Id.* Far from showing that Och-Ziff authorized, was aware of, or turned a blind eye to any bribes, the reported statements show that CAMEC's executives affirmatively represented that the loan to Lefever was being used for legitimate purposes:

> A spokeswoman for Groves said the $100 million went "to a series of international creditors for a variety of commodities, primarily for seeds, grain, fertilizer, and fuel" and that the company "undertook appropriate due diligence" when it paid out the money [to Lefever].  She also said Camec executives believed Och-Ziff was "aware of the profile of assets being considered" when it bought into the mining company.

(Serio Decl. Ex. E.)

Plaintiffs make no attempt to explain how references in a July 2008 spreadsheet to "Platinum (Zim)" and "Meryweather (BR)" (¶ 58) show that Och-Ziff authorized, was aware of, or turned a blind eye to any improper payments to government officials.  In April 2008, CAMEC publicly disclosed that it had "entered into an agreement to acquire an interest in platinum mining assets in Zimbabwe via the acquisition of 100% of Lefever" and that "Lefever owns 60% of Todal," a "Zimbabwean company, which in turn has the rights to certain platinum concessions in Zimbabwe."  (Serio Reply Decl. Ex. H).  CAMEC also disclosed that "Meryweather Investments Limited" was "the seller of the shares in Lefever."  The references in the July 2008 spreadsheet to "Platinum (Zim)" and "Meryweather (BR)" thus reflect publicly disclosed information, not any inside information about improper payments to government officials.[2]

---

[2] Plaintiffs do not dispute that the Amended Complaint fails to identify any business transactions by Och-Ziff with Muller Conrad Rautenbach at any time, let alone after he was designated a SDN (¶ 58), and the Amended Complaint makes clear that the Och-Ziff subsidiary's purchase of CAMEC shares and CAMEC's subsequent acquisition of Lefever both occurred *before* Mr. Rautenbach was designated a SDN in November 2008.  (¶¶ 45-46, 50, 56, 58.)

The Amended Complaint pleads no facts even remotely supporting Plaintiffs' assertion that Defendant Michael Cohen "deliberately paid" Daniel Gertler "with respect to the Zimbabwe . . . transactions." Opp. at 20. Instead, all that the Amended Complaint alleges about Mr. Gertler in connection with the Zimbabwe transactions is that he was a CAMEC shareholder. (¶ 45.)

Plaintiffs are ultimately reduced to a "but for" theory of FCPA liability – *i.e.*, that Och-Ziff violated the FCPA because, but for Och-Ziff's investment in CAMEC shares, CAMEC could not have acquired Lefever and that funds from CAMEC's loan to Lefever could not have been channeled to President Mugabe's regime. Plaintiffs do not cite, and Defendants are unaware of, any case in which a court has recognized a "but for" theory of FCPA liability.

***Congo – Loans to Gertler-Controlled Companies.*** Plaintiffs completely miss the point when they assert that "violation of the FCPA is not contingent on a direct payment from Och-Ziff to the Congolese government." Opp. at 9. The Amended Complaint does not identify *any* payment, direct or indirect, to a Congolese government official made on Och-Ziff's behalf.

Plaintiffs' only allegations about Och-Ziff relate to loans made in the spring of 2008 and in November 2010 to "companies controlled by Gertler," an "Israeli mining magnate." (¶¶ 6, 60-61, 65.) The Amended Complaint does not allege that the loan proceeds were used to pay bribes, or otherwise give something of value to, a Congolese government official, much less allege that Och-Ziff authorized, was aware of, or turned a blind eye to any such bribes or improper gifts. Instead, Plaintiffs speculate that there must have been a bribe or improper gift because Mr. Gertler was able to "secure extremely valuable assets at fire-sale prices." Opp. at 9. A plaintiff's speculation of wrongdoing is insufficient even under the relaxed pleading standard of Rule 8(a). *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In an attempt to salvage their claim, Plaintiffs allege for the first time in their opposition brief that, according to a news article published in July 2014, Mr. Gertler "lends Kabila his

7

private jet for trips abroad" and "invites Kabila's associates to visit him in Israel."  Opp. at 9 &
n.7.  Putting aside the procedural impropriety of advancing allegations that are not in the
Amended Complaint, neither Plaintiffs nor the news article provide any relevant context to these
allegations, including the identity of any person who contends that Mr. Gertler loaned his jet to
President Kabila, whether Mr. Gertler not only invited President Kabila's associates to visit him
in Israel but also paid or offered to pay for any trips to Israel, or whether any gifts that Mr.
Gertler supposedly made were made in relation to the transactions at issue, or on Och-Ziff's
behalf or for Och-Ziff's benefit.  *See City of Brockton Ret. Sys. v. Avon Prods. Inc.*, 2014 WL
4832321, at *23 (S.D.N.Y. Sept. 29, 2014) (rejecting allegation based on news article reporting
information from a "person familiar with the matter" because the article's "vague description of
the source provides no basis for the Court to evaluate its reliability"); *In re Optionable Sec.
Litig.*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008) ("Conclusory allegations of wrongdoing are no
more sufficient if they come from a newspaper article than from plaintiff's counsel.").

Moreover, neither Plaintiffs nor the news article allege any facts showing that Och-Ziff
was aware of, or had reason to know, that Mr. Gertler had loaned or would loan his private jet to
President Kabila or had paid or would offer to pay for trips by Congolese officials.  The new
allegations in Plaintiffs' opposition brief thus do not come close to salvaging Plaintiffs' claim.

***Libya – LIA Investment and Loan to Magna Holdings.***  Plaintiffs do not identify any
bribe that was paid to a Libyan government official in order to secure the LIA's investment in
Och-Ziff funds.  Instead, relying upon a *Wall Street Journal* article published in December 2014,
Plaintiffs allege that "Och-Ziff paid a 'placement fee' to a company owned by London-based,
Lebanese businessman Mohamad Ali Ajami," and that "Mr. Ajami paid some of Och-Ziff's fee
to another intermediary, a Tunisian named Salah Jnifen."  Opp. at 10-11.  Neither Mr. Ajami nor

8

Mr. Jnifen is a Libyan government official, and, as Plaintiffs admit in the Amended Complaint, fees paid to placement agents such as Mr. Ajami are not inherently illegal.  (¶ 71.)

Plaintiffs speculate that there may have been a bribe to a Libyan government official because the *Wall Street Journal* article reported that Mr. Ajami "had relationships with Libyan security officials" and Mr. Jnifen was "close to Qaddafi's son, Seif al-Islam, and to Mustafa Zarti, who was then the deputy chief to the LIA," Opp. at 10-11, but the same *Wall Street Journal* article states that "[i]t is unclear whether the government has evidence any of the fee Och-Ziff paid went to any Libyan government officials."  (Serio Reply Decl. Ex. I.)  Moreover, the Amended Complaint contains no facts showing that Och-Ziff authorized, was aware of, or turned a blind eye to any payments to a Libyan government official.  Plaintiffs' speculation that there must have been a bribe is insufficient to satisfy even the relaxed pleading standard of Rule 8(a).  *See Twombly*, 550 U.S. at 555.

Plaintiffs also do not identify any bribe that was paid to a Libyan government official on Och-Ziff's behalf in order to secure business for Magna Holdings.  Instead, Plaintiffs aver that "Mr. Ajami was a key fixer in obtaining [a] development contract" for a hotel in Tripoli.  Opp. at 11.  However, Mr. Ajami is not a Libyan government official, and, as Plaintiffs admit in the Amended Complaint, fees paid to placement agents such as Mr. Ajami are not inherently illegal. (¶ 71.)  Moreover, Och-Ziff's alleged connection to the hotel development is limited to "extend[ing] a $40 million convertible loan to Magna Holdings."  Opp. at 11.

Relying again upon the *Wall Street Journal* article published in December 2014, Plaintiffs allege for the first time in their opposition brief that "Mr. Ajami's nephew, who was working on the development projects, was found guilty of corruption" and that a Libyan court said that he was "'conspiring with his uncle' to pay bribes and forge documents."  Opp. at 11-12 (quoting, without attribution, from *Wall Street Journal* article).  Neither Plaintiffs nor the news

9

article allege any facts indicating that any bribes were made on Och-Ziff's behalf, or that Och-Ziff, as a creditor of Magna Holdings, sought to have, or turned a blind eye to, bribes paid in connection with the hotel development. *See Plumbers & Steamfitters Local 773 Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010) ("Although a plaintiff may use [news articles] in pleadings, 'the news articles cited still must indicate particularized facts about a defendant's conduct.'").

* * *

Because Plaintiffs do not plead facts showing that Och-Ziff authorized, was aware of, or turned a blind eye to any bribes or improper gifts to a foreign government official, Plaintiffs fail to state a claim based on Och-Ziff's failure to disclose that it violated the FCPA or any other law. *See AXIS*, 456 F. Supp. 2d at 585-86; *Yukos*, 2006 WL 3026024, at *14; *FBR*, 544 F. Supp. 2d at 354; *JP Morgan*, 363 F. Supp. 2d at 632.

### B. <u>Och-Ziff Had No Duty To Accuse Itself Of Wrongdoing</u>

Plaintiffs also cannot state a claim for the independent reason that Och-Ziff had no duty to accuse itself of wrongdoing. Plaintiffs concede that the investigation by the SEC and DOJ is "still ongoing" and that "FCPA violations remain uncharged," Opp. at 2, and do not dispute the case law holding that "the law does not impose a duty to disclose uncharged, unadjudicated wrongdoing or mismanagement." *Ciresi*, 782 F. Supp. at 823; *see also In re ProShares Trust Sec. Litig.*, 728 F.3d 96, 103 (2d Cir. 2013); *Bolger v. First State Fin. Servs.*, 759 F. Supp. 182, 194 (D.N.J. 1991).

Plaintiffs contend that Och-Ziff was "compelled to disclose" its "illegal conduct" in connection with the Africa Transactions to prevent its prior statements from being misleading, Opp. at 21, but do not identify any statements by the Company regarding the Africa Transactions that would be rendered false by the Company's failure to accuse itself of wrongdoing.

In *AXIS*, the court explained that the nondisclosure of alleged illegal conduct is only actionable when "the illegal conduct [i]s specifically pled and there [i]s a *direct nexus* to the defendant's existing disclosures which rendered those statements misleading."  456 F. Supp. 2d at 589 (emphasis supplied).  Similarly, in *FBR*, the court observed that in those cases where a court has found "the requisite connection between improper activity and affirmative statements," the "defendants made specific statements that could be interpreted as suggesting that the undisclosed improper activity alleged by plaintiffs was not occurring."  544 F. Supp. 2d at 358.  In *In re Sotheby's Holdings, Inc. Sec. Litig.*, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000), for example, the court found that Sotheby's failure to disclose an alleged "price-fixing agreement" with Christie's to be actionable because Sotheby's specifically represented that "there was 'intense' competition with its 'primary auction competitor,' Christie's."  *Id.* at *4.  Similarly, in *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221 (S.D.N.Y. 2000), the court found the failure to disclose alleged "pervasive" conflicts of interest to be actionable because the defendant stated that it had "truly independent investment research" and "defended the independence" of its research "without qualification" even after questions had been publicly raised about the independence of research analysts in the industry, thus "implying that the criticisms . . . did not apply to Goldman."  *Id.* at 236, 240.[3]

Here, Plaintiffs have not identified any "specific statements that could be interpreted as suggesting that the undisclosed improper activity alleged by plaintiffs was not occurring."  *FBR*, 544 F. Supp. 2d at 358.  Instead, Plaintiffs try to contrive a claim based on statements that are not only unrelated to the Africa Transactions, but also immaterial as a matter of law.

---

[3]   *See also Menkes v. Stolt-Nielsen S.A.*, 2005 WL 3050970, at *7-8 (D. Conn. Nov. 10, 2005) (holding that defendant's failure to disclose its alleged anti-competitive activity was not actionable based on statements that "did not discuss competition between other companies," but was actionable based on statements that "directly reference[d]" competition with other companies).

*Statements About "Risk Management."*   Plaintiffs contend that Och-Ziff was required to accuse itself of wrongdoing because it stated that "risk management was 'central to the investment process,'" Opp. at 24, but entirely ignore Och-Ziff's accompanying statements that its "risk management processes and systems" could be "ineffective," and that its investments "include investments in debt or equity of companies that we do not control" and that "may make business, financial or management decisions contrary to our expectations." (Serio Decl. Ex. B at 32, 36, 38.); *FBR*, 544 F. Supp. 2d at 359-60 (rejecting argument that statements about risk management "misled investors into believing that they had an effective compliance program that would root out any impropriety").

Plaintiffs also make no attempt to address, much less distinguish, the Second Circuit's unequivocal holding in *ECA* that a company's statements about its risk management practices, including a company's statement that it "set the standard for best practices in risk management techniques," are immaterial as a matter of law because "a reasonable investor would not depend on [such statements] as a guarantee that [the company] would never take a step that might adversely affect its reputation." 553 F.3d at 205-06.

*Statements About "Integrity."*   Plaintiffs contend that Och-Ziff was required to accuse itself of wrongdoing because it stated that its "reputation for integrity is its most important asset" and that "the success of [its] business depends on the efforts, judgment and personal reputations of [its] key partners," Opp. at 4, but again make no attempt to address or distinguish the Second Circuit's holding in *ECA*. There, as here, the plaintiffs sought to assert a claim based on the defendant's statements about its "standard-setting reputation for integrity." 553 F.3d at 206. There, as here, the plaintiffs argued that the defendant's statements about its integrity were material because "the significance of a bank's reputation is undeniable." *Id.* The Second Circuit rejected the plaintiffs' argument because "[f]inding that [the defendant's] statements constitute a

material misrepresentation would bring within the sweep of federal securities laws many routine representations made by investment institutions."  *Id.*

Plaintiffs' claim here should likewise be rejected.  Contrary to Plaintiffs' assertion that Och-Ziff's statements about its integrity are unique, Och-Ziff's peer competitors make the same type of statements about their integrity.  *See* Serio Reply Decl. Ex. J (chart of statements made by peer competitors regarding their "reputation" and "integrity").

***Statements About "Transparency."***  Och-Ziff's statements about its "transparency" are likewise not actionable.  Indeed, Plaintiffs make no attempt to address the holding in *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32 (2d Cir. 2012) (summary order), that a company's statement that its "transparent and independent decision-making process" and its "integrity, reliability and credibility" had "enabled" it to "compete successfully" are not actionable because "no reasonable purchaser of [the company's] stock would view statements such as these as meaningfully altering the mix of available information."  *Id.* at 37.[4]

### C.   Och-Ziff Did Not Misrepresent Its Regulatory Status

Och-Ziff did not misrepresent its "regulatory status" by stating that "[w]e are not currently subject to any pending judicial, administrative, or arbitration proceeding."  Opp. at 21-22.  Indeed, as courts have made clear, "[a]n investigation on its own is not a 'pending legal proceeding' until it reaches a stage when the agency or prosecutorial authority makes known that it is contemplating filing suit or bringing charges."  *Richman*, 868 F. Supp. 2d at 272.

Plaintiffs do not cite any authority to the contrary.  Instead, Plaintiffs attempt to contrive a claim, asserting that "Defendants' statements that, *inter alia*, Och-Ziff was 'like other

---

[4]   Moreover, Plaintiffs do not dispute that the Amended Complaint pleads no facts at all about the reports that Och-Ziff provides to fund investors and thus no facts contradicting Och-Ziff's "transparency" statement that "[w]e provide our fund investors with comprehensive reporting about each portfolio on a regular basis, and our senior management team and portfolio managers regularly meet with them to address their questions."  (Serio Decl. Ex. B at 12.)

businesses' and was 'subject to extensive scrutiny by regulatory agencies' that 'may in the future result in regulatory agency investigations, litigation and subpoenas' perpetuated the false impression that it was just 'business as usual'" and that the risks of a regulatory investigation "were no longer merely speculative but had already materialized." Opp. at 23.

Plaintiffs' selective quotation, however, omits Och-Ziff's plain disclosure that the regulatory scrutiny "*has resulted in* . . . regulatory agency investigations, litigation and subpoenas." (¶¶ 94, 101, 104).  Och-Ziff thus did not "caution that it is *only possible* for the unfavorable events to happen when they have already occurred," *In re Van der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 400 (S.D.N.Y. 2005) (emphasis supplied), or state that "there was 'no assurance that [it] will not receive subpoenas or be requested to produce documents in pending investigations,' when in fact [it] had received just such a request." *In re BioScrip, Inc. Sec. Litig.*, __ F. Supp. 3d __, 2015 WL 1501620, at *10 (S.D.N.Y. Mar. 31, 2015).  Instead, Och-Ziff accurately disclosed that it was already the subject of regulatory investigations.

Plaintiffs are thus reduced to asserting that Och-Ziff should have specifically disclosed the SEC and DOJ subpoenas relating to the Africa Transactions.  As courts have made clear, however, disclosure of a specific regulatory investigation as a pending legal proceeding is "not required" until the investigation "matures to the point where litigation is apparent and substantially certain to occur." *Richman*, 868 F. Supp. 2d at 274-75; *see also In re Thornburg Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1208-09 (D.N.M. 2010).  Plaintiffs do not cite any authority to the contrary and do not allege any facts showing that, during the putative class period, the SEC and DOJ investigation relating to the Africa Transactions reached the point where litigation was substantially certain to occur.

While the Company was under no obligation to disclose the SEC and DOJ investigation, it voluntarily did so in its Form 10-K filed on March 18, 2014 following media reports about the investigation.  (¶¶ 111-12.)  Plaintiffs contend that the Company should have made the disclosure earlier under Item 303 of Regulation S-K because "Defendants should have expected that their multiple, illegal transactions . . . would have triggered government investigations that could have *uncertain financial consequences* for the Company."  Opp. at 26 (emphasis supplied).  But disclosure under Item 303 is not triggered by investigations that could have "uncertain financial consequences" for a Company.  Instead, Item 303 calls for disclosure of "known trends or uncertainties" that an issuer "reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  17 C.F.R. § 229.303(a)(3)(ii).  Plaintiffs do not plead any facts contradicting the Company's statement in its March 2014 Form 10-K that it was "unable to determine how the investigation will be resolved and what impact, if any, it will have."  (Ex. B at 27.)[5]

## II.   The Amended Complaint Fails To Plead Facts Giving Rise To A Strong Inference Of Fraudulent Intent

In addition to failing to plead an actionable misrepresentation or omission, the Amended Complaint fails to "plead with particularity facts that give rise to a 'strong' – *i.e.*, a powerful or cogent – inference" of scienter.  *Tellabs*, 551 U.S. at 323.

Plaintiffs completely miss the point when they assert that Defendants "knew about the Investigations, . . . but omitted that information from the Company's statements for three years."

---

[5]   By sharp contrast, in *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp.2d 705 (S.D.N.Y. 2013), the plaintiffs alleged facts showing that "[t]he Metlife Defendants reasonably should have expected that the state investigations would cause Metlife to alter its IBNR reserves," including that Metlife had "discovered that it held $80 million in benefits that should have, but had not been, paid" in connection with individual life insurance policies following a "cross-check" against a Social Security Administration database, but refrained for years from performing a similar cross-check against the database in connection with group policies.  *Id.* at 711-12, 718.

Opp. at 29.  As explained in both Defendants' opening brief and Point I.C. above, Och-Ziff had

no duty to disclose the ongoing regulatory investigation by the SEC and DOJ.  As both the

Second Circuit and courts in this District have made clear, there can be no strong inference of

fraud unless there was an *obvious* duty to disclose the information that allegedly should have

been disclosed.  *See Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir. 2001); *Richman*, 868 F. Supp.

2d at 276; *Medis Investor Grp. v. Medis Techs., Ltd.*, 586 F. Supp. 2d 136, 143 (S.D.N.Y. 2008).

Plaintiffs do not cite any authority to the contrary.

      Plaintiffs also do not plead facts giving rise to a strong inference that the Defendants

fraudulently concealed that the Company's conduct in the Africa Transactions was illegal.  As

explained in both Defendants' opening brief and Point I.B. above, there was no duty for Och-Ziff

to disclose that it violated the FCPA.  Indeed, Plaintiffs admit that the investigation by the SEC

and DOJ is "still ongoing" and that "FCPA violations remain uncharged," Opp. at 2, and make

no attempt to dispute the case law holding that "the law does not impose a duty to disclose

uncharged, unadjudicated wrongdoing or mismanagement."  *Ciresi*, 782 F. Supp. at 823.

Because Och-Ziff had no obvious duty to accuse itself of wrongdoing, there can be no strong

inference of any Defendant's fraud.  *Kalnit*, 264 F.3d at 143; *Richman*, 868 F. Supp. 2d at 276.

      Moreover, the Amended Complaint does not plead facts showing that any Defendant was

aware of Company conduct in connection with the Africa Transactions that was illegal.  *See*

*AXIS*, 456 F. Supp. 2d at 590-96 (no strong inference of scienter where plaintiff failed to plead

facts showing that company's use of contingent incentive agreements was illegal and that

defendants were aware of such illegality); *Yukos*, 2006 WL 3026024, at *14-20 (no strong

inference of scienter where plaintiff failed to plead facts showing that company's tax strategy

violated the law and that defendants were aware that the company's tax strategy violated the

law).

**Daniel S. Och and Joel M. Frank.**  Plaintiffs ask the Court to infer fraud on the part of Messrs. Och and Frank based on their "active involvement in the day-to-day affairs of the business" as CEO and CFO of the Company, respectively.  Opp. at 33.  But "conclusory 'accusations founded on nothing more than [defendants'] corporate position[s] are entitled to no weight.'"  *In re Turquoise Hill Resources Ltd. Sec. Litig.*, 2014 WL 7176187, at *6 (S.D.N.Y. Dec. 16, 2014).  That Messrs. Och and Frank "knew about the Investigations," Opp. at 29, adds nothing.  *See In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 102 (S.D.N.Y. 2011).

Plaintiffs' attempted reliance on the "core operations" doctrine underscores their failure to plead scienter.  "It is questionable whether the 'core operations' doctrine has survived the PLSRA at all."  *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 596 n.17 (S.D.N.Y. 2011).  Even if the doctrine did survive, it applies only where the transactions at issue "constitute nearly all of a company's business."  *Tyler v. Liz Claiborne, Inc.*, 814 F. Supp. 2d 323, 343 (S.D.N.Y. 2011).  Here, Plaintiffs' own allegations make clear that the Africa Transactions related to but a small fraction of Och-Ziff's assets under management.  (¶¶ 21, 44-75); *see also* Opp. at 3 ("Och-Ziff is one of the largest . . . alternative asset managers in the world, with approximately $46.2 billion in assets under management as of October 1, 2014"); Serio Reply Decl. Ex. K at 5 (showing that the vast bulk of assets under management in Och-Ziff's master fund are not in Africa).

**Michael Cohen.**  Plaintiffs ask this Court to presume that there was illegal conduct, even though "FCPA violations remain uncharged," Opp. at 2, and even though Plaintiffs have not undertaken any investigation of the underlying facts beyond a review of public documents, Am. Compl. at 1, and infer fraud by Mr. Cohen because the Africa Transactions "were made under the primary direction of Cohen."  Opp. at 38.  That is not the law.  Plaintiffs must "detail specific contemporaneous data or information" that was known to Mr. Cohen showing that he was aware of illegal conduct in connection with the Africa Transactions.  *Hart v. Internet Wire, Inc.*, 145 F.

Supp. 2d 360, 368 (S.D.N.Y. 2001), *aff'd*, 50 F. App'x 464, 465 (2d Cir. 2002).  Plaintiffs have

not done so.  Moreover, Plaintiffs do not plead any facts connecting Mr. Cohen's resignation in

March 2013 to any alleged Company wrongdoing.  *See In re CRM Holdings, Ltd. Sec. Litig.*,

2012 WL 1646888, at \*29 (S.D.N.Y. May 10, 2012) ("In order to plead scienter on this basis,

Plaintiffs must allege 'facts linking the [] resignations and the alleged fraud.'") (citation

omitted).

     ***Och-Ziff Management Group LLC.***  Plaintiffs do not explain how "the Complaint more

than adequately pleads scienter with respect to Och-Ziff."  Opp. at 33.  Plaintiffs (i) have not

pled any facts giving rise to a strong inference of scienter on the part of Messrs. Och or Frank;

(ii) concede that Mr. Cohen was not responsible for the challenged disclosures in Och-Ziff's

public filings; (iii) do not identify any other individual at Och-Ziff with responsibility for the

challenged disclosures, much less one who had the requisite intent to defraud; and (iv) do not

plead any "dramatic" circumstances from which Och-Ziff's scienter could be strongly inferred.

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195-96 (2d

Cir. 2008).  Accordingly, "there is no basis on which to impute scienter to the corporate entity."

*Vining v. Oppenheimer Holdings Inc.*, 2010 WL 3825722, at \*13 (S.D.N.Y. Sept. 29, 2010).

## III.    The Amended Complaint Fails To Plead A Claim For "Scheme" Liability

     Plaintiffs' claim for "scheme" liability makes no sense.  According to Plaintiffs,

Defendants' "scheme" was to portray Och-Ziff as a "conservative, compliant company" during

the putative class period, so that "[m]eanwhile" it could engage in transactions that "violated the

law all over Africa."  Opp. at 37.  The Africa Transactions occurred years before the putative

class period (¶¶ 1, 44-75), however, and Plaintiffs do not explain how statements made during

the putative class period could have given Defendants "cover" to engage in the Africa

Transactions.  Plaintiffs' "scheme" claim should be dismissed for multiple reasons.

*First*, if the "core misconduct" of the supposed scheme was "the FCPA violations themselves," Opp. at 35, Plaintiffs' claim should be dismissed because there is no private right of action under the FCPA. *See Republic of Iraq v. ABB AG*, 768 F.3d 145, 171 (2d Cir. 2014).

*Second*, the Africa Transactions were business transactions that occurred well before the putative class period, not acts undertaken in connection with Plaintiffs' purchases or sales of securities during the putative class period.[6] *See Taylor v. Westor Capital Grp.*, 943 F. Supp. 2d 397, 402 (S.D.N.Y. 2013) ("The plain language of Rule 10b-5 mandates that the proscribed schemes or acts be done 'in connection with the purchase or sale of any security.'").

*Third*, Plaintiffs have foreclosed any pleading of reliance because they expressly disclaim knowledge of Defendants' alleged misconduct in connection the Africa Transactions. (¶ 3); *see Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 161 (2008); *Fezzani v. Bear, Stearns & Co. Inc.*, 777 F.3d 566, 574 (2d Cir. 2015); *Pacific Inv. Mgmt. Co. LLC, v. Mayer Brown LLP*, 603 F.3d 144, 158-60 (2d Cir. 2010). If Defendants' alleged misconduct was unknown to Plaintiffs, it could not have been "necessary or inevitable" for Defendants to make any misrepresentations to Plaintiffs. *Id.*

*Fourth*, as discussed in Point II above, Plaintiffs have failed to plead particularized facts giving rise to a strong inference of fraudulent intent.

*Fifth*, "[s]cheme liability under subsections (a) and (c) of Rule 10b-5 hinges on the performance of an inherently deceptive act that is distinct from an alleged misstatement," *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011), and Plaintiffs do not allege any "deceptive acts" by Och-Ziff or Messrs. Och or Frank apart from the alleged misstatements. *See JHW*

---

6   Moreover, if the "core misconduct" of the supposed scheme was "the FCPA violations themselves," Opp. at 35, Plaintiffs' "scheme" claim is time-barred in substantial part by the five-year statute of repose for Section 10(b) claims, 28 U.S.C. § 1658(b), because nearly all of the Africa Transactions occurred more than five years prior to the filing of this lawsuit on May 5, 2014. (¶¶ 44-75.)

*Greentree Capital, L.P. v. Whittier Trust Co.*, 2005 WL 3008452, at *7 n.11 (S.D.N.Y. Nov. 10, 2005) (dismissing scheme claims because "plaintiffs have failed to plead any allegations against Linda Loehr personally, apart from her alleged misrepresentations and omissions").[7]

**IV.**   **Plaintiffs' Section 20(a) Claim Should Be Dismissed**

In the absence of a primary violation of Section 10(b) and facts showing any Defendant's "culpable participation" in a primary violation, Plaintiffs' Section 20(a) claim must be dismissed. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007).

**V.**   **Plaintiffs' Request For Further Leave To Amend Should Be Denied**

This Court's Individual Practice Rule 3.E. states that if a plaintiff "elects not to amend its pleading" within 21 days after a motion to dismiss is filed, "no further opportunity to amend will be granted." Here, Plaintiffs elected not to amend their pleading after Defendants moved to dismiss and have not identified any new facts that would cure the myriad deficiencies in their pleading. Accordingly, Plaintiffs' request for further leave to amend should be denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice and award such further relief as it deems appropriate.

---

[7]   Plaintiffs do not cite any case law to the contrary. Instead, Plaintiffs ask this Court to ignore Article III case law and defer to the view expressed by the SEC in *In re Flannery*, 2014 WL 7145625 (Dec. 15, 2014). The Supreme Court, however, has repeatedly "expressed skepticism over the degree to which the SEC should receive deference regarding the private right of action [under Rule 10b-5]," *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2303 n.8 (2011), and made clear that deference to an agency interpretation is unwarranted where, as in *Flannery*, the agency seeks to expand the scope of its enforcement authority. *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-67 (2012).

The interpretation of Rule 10b-5 that the SEC advocates in *Flannery* is entitled no deference because it is "inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997). The words "statements" and "omissions" appear only in Rule 10b-5(b). If Rule 10b-5(a) and (c) were construed to encompass "statements" and "omissions" as well, *all* the conduct that could fall under Rule 10b-5(b) would be encompassed by Rule 10b-5(a) and (c), and Rule 10b-5(b) would serve no purpose. *See Lamb v. Thompson*, 265 F.3d 1038, 1052 n.16 (10th Cir. 2001) (no deference to agency interpretation that renders words in a statute "mere surplusage").

Dated:   New York, New York
         July 2, 2015

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:   /s/ Robert F. Serio
       Robert F. Serio (rserio@gibsondunn.com)
       Aric H. Wu (awu@gibsondunn.com)
       Jonathan B. Austin (jbaustin@gibsondunn.com)

200 Park Avenue
New York, NY 10166-0193

*Attorneys for Defendants Och-Ziff Capital Management Group LLC, Daniel S. Och, and Joel M. Frank*

21