UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARTHUR MENALDI, Individually and on Behalf of
All Others Similarly Situated,

        Plaintiff,

    v.

OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC,
DANIEL S. OCH, JOEL M. FRANK, and MICHAEL
COHEN,

        Defendants.

No. 1:14-CV-03251 (JPO)

 

**MEMORANDUM OF LAW OF DEFENDANTS OCH-ZIFF CAPITAL
MANAGEMENT GROUP LLC, DANIEL S. OCH, AND JOEL M. FRANK
IN SUPPORT OF THEIR MOTION FOR PARTIAL RECONSIDERATION
OF THE COURT'S FEBRUARY 17, 2016 OPINION AND ORDER**

 

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Fax: (212) 351-4035

*Attorneys for Defendants Och-Ziff Capital
Management Group LLC, Daniel S. Och,
and Joel M. Frank*

March 2, 2016

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 8

    I.    The Court's Order Erroneously Construed Disclosures Regarding
          "Pending Judicial, Administrative, Or Arbitration Proceedings"
          As If They Were Disclosures Regarding Regulatory Investigations ............................ 9

    II.   The Court's Order Erroneously Held That An Alleged "Contrast" Between
          Och-Ziff's Disclosures On March 18, 2014 And Its Disclosures In 2012 And
          2013 Was Sufficient To Plead The Falsity Of The 2012 And 2013 Statements ......... 13

    III.  The Court's Order Overlooked That Nonculpable Explanations For Defendants'
          Conduct Must Be Considered And That An Omission Cannot Give Rise To A
          Strong Inference Of Recklessness Unless There Was A "Clear Duty To Disclose".... 18

CONCLUSION .................................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Acito v. IMCERA Grp.*,
    47 F.3d 47 (2d Cir. 1995) ................................................................4, 14

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013)........................................3, 7, 11

*In re BioScrip, Inc. Sec. Litig.*,
    95 F. Supp. 3d 711 (S.D.N.Y. 2015).................................11, 12, 17, 22

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    __ F. Supp. 3d __, 2015 WL 5311196 (S.D.N.Y. Sept. 11, 2015) ..............13, 16, 17

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    928 F. Supp. 2d 705 (S.D.N.Y. 2013)........................................16, 17

*Denny v. Barber*,
    576 F.2d 465 (2d Cir. 1978)........................................................4, 14

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)............................................................21

*Faulkner v. Verizon Commc'ns., Inc.*,
    156 F. Supp. 2d 384 (S.D.N.Y. 2001)...........................................14

*In re Hous. Am. Energy Corp. Sec. Litig.*,
    970 F. Supp. 2d 613 (S.D. Tex. 2013),
    *rev'd on other grounds sub nom.*,
    *Spitzberg v. Hous. Am. Energy Corp.*, 759 F.3d 676 (5th Cir. 2014) ...................21

*Janbay v. Canadian Solar, Inc.*,
    2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ...................................5, 18

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)..........................................................7, 21

*In re Lions Gate Entm't Corp. Sec. Litig.*,
    2016 WL 297722 (S.D.N.Y. Jan. 22, 2016) ............................... *passim*

*Lubbers v. Flagstar Bancorp., Inc.*,
    __ F. Supp. 3d __, 2016 WL 520944 (E.D. Mich. Feb. 10, 2016) ...........3, 7, 11, 12

*In re Magnum Hunter Res. Corp. Sec. Litig.*,
    26 F. Supp. 3d 278 (S.D.N.Y. 2014),
    *aff'd*, 616 F. App'x 442 (2d Cir. 2015)........................................14

*In re Morgan Stanley Deriv. Litig.*,
542 F. Supp. 2d 317 (S.D.N.Y. 2008)............................................................22

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
135 S. Ct. 1318 (2015) .........................................................3, 5, 14, 16

*Richman v. Goldman Sachs Grp., Inc.*,
868 F. Supp. 2d 261 (S.D.N.Y. 2012).........................................7, 13, 21

*In re SAIC, Inc. Sec. Litig.*,
2014 WL 407050 (S.D.N.Y. Jan. 30, 2014) ............................................8

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996)....................................................3, 5, 14

*Small v. Nobel Biocare USA, LLC*,
2012 WL 952396 (S.D.N.Y. Mar. 21, 2012) ...........................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).............................................................5, 6, 19

*In re Thornburg Mortg., Inc. Sec. Litig.*,
695 F. Supp. 2d 1165 (D.N.M. 2010) ....................................................21

**Statutes, Rules, And Regulations**

Local Civil Rule 6.3 ..........................................................................................1

17 C.F.R. § 229.103 ........................................................................................13

17 C.F.R. § 229.303 ........................................................................................13

17 C.F.R. § 240.10b-5................................................................................1, 8, 9

17 C.F.R. § 243.100 ........................................................................................19

31 U.S.C. § 3733 ............................................................................................17

Pursuant to Local Civil Rule 6.3, Defendants Och-Ziff Capital Management Group LLC, Daniel S. Och, and Joel M. Frank respectfully submit this memorandum of law in support of their motion for reconsideration of the portion of the Court's Opinion and Order, dated February 17, 2016 (Dkt. 39), that denied Defendants' motion to dismiss Plaintiffs' Amended Complaint.

## INTRODUCTION

In denying Defendants' motion to dismiss "insofar as Plaintiffs allege Rule 10b-5(b) violations with respect to statements about pending regulatory proceedings," the Court stated that Plaintiffs had adequately alleged that "Och-Ziff's projections [in 2012 and 2013] about the likely impact of regulatory proceedings" were rendered misleading by Och-Ziff's failure to disclose the "existence and scope" of an ongoing investigation by the SEC and DOJ.  Order at 20-21, 27.  The Court explained that dismissal was "inappropriate" at the pleading stage because "reasonable minds could disagree" as to whether Och-Ziff's disclosures in 2012 and 2013 "omitted material information about pending regulatory proceedings."  *Id.* at 22.

Most respectfully, the Court's analysis is based on a fundamental error.  Plaintiffs argued, and the Court apparently accepted, that Och-Ziff "'obfuscated the truth' about the existence and scope of the SEC-DOJ Investigation" through what the Court described as "projections" that there were no "pending **regulatory**, administrative, or arbitration proceedings" that were "expect[ed] to have a material impact on [Och-Ziff's] results of operations."  *Id.* at 20-21 (emphasis added).  The 2012 and 2013 disclosures, however, never refer to "regulatory proceedings."  Instead, they consistently referred to "pending **judicial**, administrative or arbitration proceedings."  Am. Compl. ¶¶ 78, 85, 88, 91, 94, 101, 104, 107 (emphasis added).  Thus, while the predicate of the Court's holding is that "Och-Ziff chose to discuss regulatory proceedings, and had a duty to speak truthfully once it made that choice," Order at 18 n.9, Och-Ziff's 2012 and 2013 disclosures in fact made no reference at all to "regulatory proceedings."

This was a critical error because regulatory investigations do not become "judicial proceedings" or "administrative proceedings" until a regulatory agency files a lawsuit in court or commences an administrative action. On its website, for example, the SEC explains that:

> Securities and Exchange Commission (SEC) investigations are conducted confidentially to protect evidence and reputations. Important documents could be destroyed if an investigation is publicly announced, so confidential treatment may help to preserve key evidence in a case. A confidential process also protects the reputations of companies and individuals where the SEC finds no wrongdoing by the firm or the individuals that were the subject of the investigation. As a result, the SEC generally will not confirm or deny the existence of an investigation unless and until it becomes a matter of public record.
>
> An investigation becomes public when the SEC files an action in court or through an administrative proceeding. The SEC website contains information about public enforcement actions.

"Investigations by the SEC," *available at* https://www.sec.gov/answers/investg.htm. Similarly, in a recent decision dismissing a securities fraud action based on a company's alleged failure to timely disclose an SEC investigation, Judge Koeltl explained that the SEC investigation started in 2011, but that "the SEC commenced the administrative proceeding on March 13, 2014." *In re Lions Gate Entm't Corp. Sec. Litig.*, 2016 WL 297722, at *4, 13 (S.D.N.Y. Jan. 22, 2016).

Thus, the "projections" in Och-Ziff's 2012 and 2013 disclosures regarding "pending judicial, administrative, or arbitration proceedings" did not refer to any regulatory investigations. Because the Court mistakenly construed the "projections" regarding "pending judicial, administrative, or arbitration proceedings" as if they were disclosures about regulatory investigations, the Court erred in holding that "Plaintiffs have plausibly alleged that Och-Ziff misled investors by suggesting that the company was not facing an investigation that could have a material impact on its business." Order at 20.

Far from making any "projections" about the potential impact of any regulatory investigations, the Company stated only that it was subject to "extensive scrutiny" by regulatory

agencies that "has resulted or may in the future result" in "regulatory agency investigations." Am. Compl. ¶¶ 78, 85, 88, 91, 94, 101, 104, 107. That statement was true and was not rendered false by the failure to specifically identify the SEC-DOJ Investigation. *See Lubbers v. Flagstar Bancorp., Inc.*, __ F. Supp. 3d __, 2016 WL 520944, at *6 (E.D. Mich. Feb. 10, 2016) (statements that government agencies investigate the company's practices "from time to time" and that it was subject to "ongoing investigations" were not rendered false by failure to disclose that the "the CFPB was specifically investigating Flagstar for violations of consumer protection laws and regulations"); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013) ("[W]here there is disclosure that is broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk.").

Even if it were proper to construe disclosures about "pending judicial, administrative, or arbitration proceedings" as if they were disclosures about regulatory investigations (and it is not), dismissal would still be warranted. To adequately plead falsity, Plaintiffs must allege facts that were known to the Company in 2012 and 2013 and that contradict the Company's statement that there were no "pending judicial, administrative, or arbitration proceedings" that were "expected to have a material impact." *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1328-32 (2015). Plaintiffs plead no contemporaneous facts from 2012 or 2013, and the Order cites no such facts. Instead, Plaintiffs rely on, and the Order cites, Och-Ziff's disclosures on March 18, 2014, which allegedly stand "in contrast" to the 2012 and 2013 disclosures. Order at 20. As the Second Circuit has long made clear, an alleged "contrast" between a later company statement and an earlier one is insufficient to plead the falsity of the earlier statement. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris*

*Cos.*, 75 F.3d 801, 812-13 (2d Cir. 1996); *Acito v. IMCERA Grp.*, 47 F.3d 47, 53 (2d Cir. 1995); *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978).

Even if it were sufficient to merely "contrast" a later statement with an earlier statement (and it is not), there was nothing inconsistent about stating in 2012 and 2013 that there were no "pending judicial, administrative, or arbitration proceedings" that were "expected to have a material impact," and stating on March 18, 2014 that, "[a]t this time, we are unable to determine how the [SEC-DOJ] investigation will be resolved and what impact, if any, it will have. An adverse outcome could have a material effect on our business, financial condition or results of operations." Am. Compl. ¶ 112.

Stating in March 2014 that the unknown future outcome of the SEC-DOJ Investigation "could have a material effect" did not mean that the Company had secretly expected in 2012 or 2013 that it would have a material impact. Indeed, as the Company explained, even as of March 18, 2014, the Company was still unable to determine how the SEC-DOJ Investigation would be resolved, much less "what impact, if any," it would have. Plaintiffs do not plead any facts to the contrary. *See Lions Gate*, 2016 WL 297722, at *10-11 (dismissing claim that company "misled investors by mentioning that Lions Gate was involved in 'certain claims and legal proceedings' but omitting the fact that the SEC Enforcement Division was investigating [it]" even though company stated that it "did not believe that the outcome [of the claims and legal proceedings] would have a material adverse effect" because "the plaintiffs have failed to plead how the defendants' opinions were not supported by the facts known to them at the time").

Because the Amended Complaint pleads no contemporaneous facts from 2012 or 2013 contradicting the Company's statement that it was "not currently subject to any pending judicial, administrative, or arbitration proceedings" that were "expected to have a material impact," the

Court erred in holding that Plaintiffs had adequately pled falsity.  *See Omnicare*, 135 S. Ct. at 1329; *San Leandro*, 75 F.3d at 812-13; *Lions Gate*, 2016 WL 297722, at *11.

The Court should also reconsider its scienter analysis, in which it determined that Plaintiffs' allegations were sufficient because Defendants allegedly "knew about the SEC-DOJ Investigation from 2011 onward, but waited [until March 2014] to disclose its potential impact." Order at 23.  Regulatory investigations are not static; instead, they develop over time, and the views of both the regulatory agency and the subject of the investigation develop over time as well.  Och-Ziff's statement in March 2014 that the unknown future outcome of the Investigation "could have a material effect" thus says nothing about what the status of the SEC-DOJ Investigation was in 2012 or 2013.  Because Plaintiffs do not plead any facts about the status of the SEC-DOJ Investigation in 2012 or 2013, the Court erred in holding that Plaintiffs had adequately pled facts giving rise to a strong inference that Defendants "opt[ed] to misrepresent their exposure to civil and criminal liability" in 2012 and 2013.  Order at 23.  *See Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306, at *11 (S.D.N.Y. Mar. 30, 2012) (holding that complaint "fails to allege scienter with respect to all statements prior to November 11, 2009" because plaintiffs' scienter allegations were based on statements made on November 11 and 23, 2009, and e-mails exchanged between November 13, 2009 and March 11, 2010).

Moreover, in "[c]onstruing all inferences in Plaintiff's favor," Order at 23, the Court overlooked that it was required to "consider plausible, *nonculpable* explanations for the defendant's conduct, as well as inferences favoring the plaintiff," and that scienter is only sufficiently pled "if a reasonable person would deem the inference of scienter *cogent and at least as compelling as any opposing inference* one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007) (emphasis added).  The Court appears

to have found significant the fact that Och-Ziff disclosed the existence of the SEC-DOJ Investigation after it was publicized by the *Wall Street Journal*, but that does not give rise to a strong inference of recklessness under the "inherently comparative" analysis that *Tellabs* compels, *id.* at 323; the inference is at least as compelling—if not far more compelling—that Och-Ziff believed it was under no obligation to disclose the SEC-DOJ Investigation, but concluded, upon learning that its existence had been reported publicly, that it was appropriate to provide context to the market (including by disclosing that, although the Company could not predict how the SEC-DOJ Investigation would unfold, a potentially material adverse result was within the realm of possibility).

The Court's scienter analysis was also erroneous in another significant respect. In assessing the adequacy of Plaintiffs' allegations, the Court erroneously assumed that "Och-Ziff made projections about the likely impact of regulatory proceedings" in its 2012 and 2013 disclosures, which "suggest[ed] that the company was not facing an investigation that could have a material impact." Order at 18, 20. Och-Ziff made no such projections. Thus, the relevant issue for the scienter analysis is not whether Defendants were "reckless in opting to misrepresent their exposure to civil and criminal liability." *Id.* at 23. Instead, the relevant issue is whether Och-Ziff "incurred a duty to disclose the Investigation," *id.* at 18, and, if so, whether the Company deliberately or recklessly "failed to disclose that since 2011, Och-Ziff has been under investigation by the DOJ and the SEC for violation of the FCPA and other related laws." Am. Compl. ¶¶ 79, 86, 89, 92, 95, 102, 105, 108. Och-Ziff's position is that it did not incur a duty to disclose the SEC-DOJ Investigation based either on its disclosure that the Company was subject to "extensive scrutiny" by regulatory agencies that "has resulted" in "regulatory agency investigations," or any SEC rule or regulation. Even if the Court disagrees, however, dismissal

is still warranted because Plaintiffs do not plead facts giving rise to a strong inference that Defendants deliberately or recklessly omitted disclosure of the SEC-DOJ Investigation.

Where a securities fraud claim "lies in non-disclosure" (such as the failure to specifically disclose the SEC-DOJ Investigation in 2012 or 2013), a plaintiff's allegations cannot give rise to the requisite strong inference of fraudulent intent or recklessness unless they "present facts indicating a *clear duty to disclose*." *Kalnit v. Eichler*, 264 F.3d 131, 144 (2d Cir. 2001) (emphasis added). There was no duty to disclose here, much less a "clear" duty. Och-Ziff's disclosure that it was subject to "extensive scrutiny" by regulatory agencies that "has resulted" in "regulatory agency investigations" was not rendered false by the failure to specifically disclose the SEC-DOJ Investigation. *See Flagstar*, 2016 WL 520944, at *6; *In re Bank of Am.*, 980 F. Supp. 2d at 579. Moreover, as Judge Koeltl explained in his recent decision in *Lions Gate*, there is no SEC rule or regulation requiring the disclosure of an SEC investigation and "no clear case law that would require the disclosure of the SEC investigation and the Wells Notices in the absence of a pre-existing duty to disclose." 2016 WL 297722, at *18. To the contrary, "[t]here was authority that supported [the company's] failure to disclose the ongoing SEC investigation and Wells Notices." *Id.* (citing *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 272-76 (S.D.N.Y. 2012)).

Plaintiffs do not identify any authority that existed at the time of Och-Ziff's disclosures in 2012 and 2013 and that would have established a "clear" duty to disclose the SEC-DOJ Investigation. Instead, Plaintiffs simply allege that Defendants "knew about the SEC-DOJ Investigation from 2011 onward, but waited to disclose its potential impact." Order at 23. "[A]lleging that the disclosures in the securities filings were incomplete or that they omitted material information, is not enough to plead scienter." *Lions Gate*, 2016 WL 297722, at *18.

Moreover, because there was no clear duty to disclose the SEC-DOJ Investigation in 2012 or 2013, but instead authority indicating that disclosure was not required because it had not matured to the point where litigation was apparent or substantially certain to occur, "[t]he more cogent inference is that [Och-Ziff] did not specifically disclose the investigation [in 2012 or 2013] . . . because it did not believe that there was a requirement to do so." *Lions Gate*, 2016 WL 297722, at *18.

For these and all the other reasons herein, Defendants respectfully request that the Court reverse the portion of its Order that denied their motion to dismiss.

## ARGUMENT

"The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *Small v. Nobel Biocare USA, LLC*, 2012 WL 952396, at *2 (S.D.N.Y. Mar. 21, 2012). "The purpose of a motion for reconsideration . . . is to draw a court's attention to its prior missteps, whatever they may have been." *Id.* at *2 n.5. Thus, reconsideration may be granted where a court has overlooked a matter that might reasonably be expected to alter its conclusion or where there is otherwise "a need to correct a clear error or prevent manifest injustice." *Id.* at *2.

As explained below, reconsideration should be granted here because the Court's holding that "Plaintiffs [adequately] allege Rule 10b-5(b) violations with respect to statements about pending regulatory proceedings" is based on factual and legal errors that should be addressed at the outset of this case to avoid unnecessary litigation and costs. *See In re SAIC, Inc. Sec. Litig.*, 2014 WL 407050, at *4-6 (S.D.N.Y. Jan. 30, 2014) (reversing partial denial of motion to dismiss securities fraud action and dismissing action with prejudice because, "on reconsideration, the Court should correct its initial mistake rather than proceed as if it did not exist").

**I.**     **The Court's Order Erroneously Construed Disclosures Regarding
"Pending Judicial, Administrative, Or Arbitration Proceedings"
As If They Were Disclosures Regarding Regulatory Investigations**

In holding that the "Plaintiffs have adequately alleged that Och-Ziff made actionable

misstatements about the existence and risks of **<u>regulatory proceedings</u>**," the Court credited

Plaintiffs' argument that Och-Ziff had "'obfuscated the truth' about the existence and scope of

the SEC-DOJ Investigation" with "slightly different versions" of the following opinion statement

in its 2012 and 2013 SEC filings:

> We are not currently subject to any pending **<u>regulatory</u>**, administrative or
> arbitration proceedings that we expect to have a material impact on our results of
> operations or financial condition.

Order at 20 (emphasis added).  But the Court misquoted the opinion statement, replacing the

word "judicial"—which appears in both the opinion statement and the Amended Complaint—

with the word "regulatory"—which does not.  Indeed, the word "regulatory" was *never* used in

any version of the statement; rather, Och-Ziff's 2012 and 2013 disclosures consistently referred

to "pending **<u>judicial</u>**, administrative or arbitration proceedings."  Am. Compl. ¶¶ 78, 85, 88, 91,

94, 101, 104, 107 (emphasis added).  Thus, contrary to the Court's determination that "Och-Ziff

chose to discuss regulatory proceedings," Order at 18 n.9; *see also id*. at 19-22, 27, Och-Ziff's

2012 and 2013 disclosures made no reference at all to "regulatory proceedings."[1]

---

[1]   In its "Background" section, the Order does quote the "pending judicial, administrative or arbitration
proceedings" language.  *See* Order at 4-6.  However, in the portion of the Order denying the motion to
dismiss, the section entitled "Duty to Disclose the SEC-DOJ Investigation," the Order misquotes that
language and repeatedly refers to Och-Ziff's "choice" to make "projections" about "regulatory
proceedings."  *See, e.g.*, Order, § IV.A.2, at 18 n.9 ("Och-Ziff chose to discuss regulatory proceedings
. . ."); *id*. at 20 ("The statements of opinion include three slightly different versions of the sentence:
"We are not currently subject to any pending regulatory . . . proceedings that we expect to have a
material impact . . . ."); *id*. ("Plaintiffs have adequately alleged that Och-Ziff made actionable
misstatements about the existence and risks of regulatory proceedings."); *id*. at 21 ("Plaintiffs have
plausibly alleged that Och-Ziff's projections about the likely impact of regulatory proceedings were
based on omitted facts . . . . ."); *see also id*. at 27 (denying motion to dismiss "insofar as Plaintiffs
allege Rule 10b-5(b) violations with respect to statements about pending regulatory proceedings").

This was a critical error because regulatory investigations do not become "judicial proceedings" or "administrative proceedings" until a regulatory agency files a lawsuit in court or commences an administrative action.  *See, e.g.*, "Investigations by the SEC," *available at* https://www.sec.gov/answers/investg.htm (explaining that investigations are designed to be a "confidential process" that "protects the reputations of companies and individuals," and do not become public until the SEC files an  "action in court" or commences an "administrative proceeding"); "Administrative Proceedings," *available at* https://www.sec.gov/litigation/ admin.shtml (containing links to all "significant pleadings, orders and decisions" for "administrative proceedings" commenced by the SEC); *Lions Gate*, 2016 WL 297722, at *4, 13 (explaining that SEC investigation started in 2011, but that "the SEC commenced the administrative proceeding on March 13, 2014").

Thus, the "projections" in Och-Ziff's 2012 and 2013 disclosures regarding "pending judicial, administrative, or arbitration proceedings" did not refer to any regulatory investigations. Because the Court mistakenly construed the "projections" regarding "pending judicial, administrative, or arbitration proceedings" to refer to "regulatory proceedings," the Court erred in holding that "Plaintiffs have plausibly alleged that Och-Ziff misled investors by suggesting that the company was not facing an investigation that could have a material impact on its business."  Order at 20.

In its 2012 and 2013 disclosures, Och-Ziff did not make any "projections" about the likely impact of any regulatory investigations.  Instead, Och-Ziff's statements about regulatory investigations were limited to the following:

> The Company is also subject to extensive scrutiny by the regulatory agencies
> globally that have or may in the future have regulatory authority over the
> Company and its business activities.  This has resulted or may in the future result
> in regulatory agency investigations, litigation and subpoenas.

Am. Compl. ¶¶ 78, 85, 88, 91, 94, 101, 104, 107.

The SEC-DOJ Investigation commenced in 2011, and the Company's disclosures in 2012 and 2013 that the Company was subject to "extensive scrutiny" by regulatory agencies that "has resulted" in "regulatory agency investigations" were accurate. They were not rendered false by the failure to specifically disclose the SEC-DOJ Investigation.[2] *See Flagstar*, 2016 WL 520944, at *6 (statements that government agencies investigate the company's practices "from time to time" and that it was subject to "ongoing investigations" were not rendered false by failure to disclose that the "the CFPB was specifically investigating Flagstar for violations of consumer protection laws and regulations"); *Lions Gate*, 2016 WL 297722, at *11 ("The SAC at most pleads that the defendants disclosed an investigation was ongoing, but refused to provide details. . . . The plaintiffs have not pleaded how the details of the SEC investigation . . . would conflict with the statement Lions Gate made."); *In re Bank of Am.*, 980 F. Supp. 2d at 579 ("[W]here there is disclosure that is broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk.").

Judge Nathan's decision in *In re BioScrip, Inc. Securities Litigation*, 95 F. Supp. 3d 711 (S.D.N.Y. 2015), is not to the contrary. In *BioScrip*, Judge Nathan held that the following language from the company's disclosures could be "reasonably read as assuring the investor that no [investigation or litigation] existed at that precise moment": "There can be no assurance that we will not receive subpoenas or be requested to produce documents in pending investigations or

---

[2] Nor was Och-Ziff's statement that "[f]rom time to time, the Company is involved in litigation and claims incidental to the conduct of the Company's business" rendered false by the failure to disclose the SEC-DOJ Investigation. Plaintiffs do not, and cannot, allege that the SEC or DOJ commenced litigation against Och-Ziff in 2012 or 2013, or that Och-Ziff learned in 2012 or 2013 that the SEC or DOJ would pursue claims against it. *See Lions Gate*, 2016 WL 297722, at *10-11 (statement that "[f]rom time to time, the Company is involved in certain claims and legal proceedings arising in the normal course of business" was not rendered false by failure to disclose SEC investigation).

litigation from time to time." *Id.* at 726-27; *see also Lions Gate*, 2016 WL 297722, at *8 ("[I]n *In re BioScrip*, a company's affirmative statement that it was not presently in the process of responding to an investigatory request from the Government triggered a duty to disclose that it had in fact received a civil investigative demand in an investigation relating to violations of the Anti-Kickback Statute and False Claims Act."). There was no such language in Och-Ziff's 2012 or 2013 disclosures. Rather, Och-Ziff's disclosures stated that agency scrutiny "*has resulted* or may in the future result in regulatory agency investigations, litigation and subpoenas." Order at 6 (emphasis added). A reasonable investor simply cannot read a statement that agency scrutiny "has resulted . . . in regulatory agency investigations" as an assurance that an investigation is not currently pending. *See Flagstar,* 2016 WL 520944, at *6.

In finding that Plaintiffs adequately alleged that "Och-Ziff's projections [in 2012 and 2013] about the likely impact of regulatory proceedings" were rendered false by the Company's failure to specifically disclose the SEC-DOJ Investigation, Order at 20-21, the Court mistakenly construed Och-Ziff's "projections" regarding "pending judicial, administrative, or arbitration proceedings" as if they were disclosures about regulatory investigations. Because the "projections" did not refer to any regulatory investigations, the Court erred in holding that "Plaintiffs have plausibly alleged that Och-Ziff misled investors by suggesting that the company was not facing an investigation that could have a material impact on its business." Order at 20.

Because Och-Ziff's disclosures in 2012 and 2013 were not rendered false by the failure to disclose the SEC-DOJ Investigation, there could only be an actionable omission if Och-Ziff deliberately or recklessly violated an independent duty to disclose. *See Lions Gate*, 2016 WL 297722, at *8 ("[A] government investigation, without more, does not trigger a generalized duty to disclose."). Disclosures in SEC filings regarding "pending legal proceedings" are governed

by Item 103 of SEC Regulation S-K, 17 C.F.R. § 229.103. Under Item 103, a regulatory investigation is not a "pending legal proceeding" that must be specifically disclosed unless the regulatory agency makes it known that it intends to bring charges. Because Plaintiffs do not, and cannot, allege that the SEC or DOJ made it known in 2012 or 2013 that they intended to bring charges, Och-Ziff had no independent duty to disclose the Investigation under Item 103. *See Lions Gate*, 2016 WL 297722, at *12-13 ("The SEC investigation was not a 'pending legal proceeding' in this case, because the SEC had not yet decided whether it would charge Lions Gate and the individual defendants with securities violations."); *Richman*, 868 F. Supp. 2d at 272 ("An investigation on its own is not a 'pending legal proceeding' until it reaches a stage when the agency or prosecutorial authority makes known that it is contemplating filing suit or bringing charges.") (internal quotation omitted).[3]

## II. The Court's Order Erroneously Held That An Alleged "Contrast" Between Och-Ziff's Disclosures On March 18, 2014 And Its Disclosures In 2012 And 2013 Was Sufficient To Plead The Falsity Of The 2012 And 2013 Statements

Even if it were proper to construe disclosures regarding "pending judicial, administrative, or arbitration proceedings" as if they were disclosures regarding regulatory investigations (and it

---

[3] Nor did Och-Ziff have any independent duty to disclose the SEC-DOJ Investigation under Item 303 of Regulation S-K, which concerns "known trends or uncertainties." *See Lions Gate*, 2016 WL 297722, at *13 ("An SEC investigation could not be characterized as a 'known trend' or 'uncertainty' under Item 303."). Even if it were proper to characterize a regulatory investigation as a "known trend" or "uncertainty" under Item 303 (and it is not), Plaintiffs do not, and cannot, allege facts showing that, in 2012 or 2013, Och-Ziff "reasonably expect[ed]" that the Investigation would have a "material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii). *See City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, __ F. Supp. 3d __, 2015 WL 5311196, at *21 (S.D.N.Y. Sept. 11, 2015) ("In light of the Court's conclusion that . . . Central States has not alleged adequately either that MetLife did not actually believe its representations concerning the adequacy of its IBNR reserves or that those representations did not rest on a meaningful inquiry—it would make little sense for the Court now to hold that MetLife violated SEC Regulation S–K, Item 303, by failing timely to disclose the existence of various state investigations into its death benefits payment practices. To hold as much, in essence, would punish MetLife for failing to foresee something that Central States has not shown was reasonably foreseeable.").

is not), dismissal would still be warranted. To adequately plead the falsity of Och-Ziff's "projections" in 2012 and 2013, Plaintiffs must plead facts that were known to the Company in 2012 and 2013 and that conflict with the Company's statements that there were no "pending judicial, administrative, or arbitration proceedings" that were "expected to have a material impact." *See Omnicare*, 135 S. Ct. at 1328-32. Rather than plead contemporaneous facts from 2012 or 2013, however, Plaintiffs rely on, and the Order exclusively cites, disclosures in Och-Ziff's Form 10-K filed on March 18, 2014, which allegedly stand "in contrast" to the 2012 and 2013 disclosures. Order at 20.

As the Second Circuit has long made clear, an alleged "contrast" between a later company statement and an earlier one is insufficient to plead the falsity of the earlier statement:

- *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812-13 (2d Cir. 1996) (company's announcement that "retail sales were declining at a rate of 8.3 percent" was insufficient to plead falsity of company's statements three weeks earlier that "retail sales were strong" because plaintiffs failed to plead facts showing that the company's earlier optimistic statements "were not based on the facts available to the company at the time the statements were made");

- *Acito v. IMCERA Grp.*, 47 F.3d 47, 53 (2d Cir. 1995) ("Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud.");

- *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978) ("[T]he complaint is an example of alleging fraud by hindsight . . . [because] plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones.");

- *In re Magnum Hunter Res. Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 290, 295-96 (S.D.N.Y. 2014) ("An allegedly material misstatement must have been false at the time that it was made. A statement that was believed to be true when made, but was later shown to be false, is insufficient; there is no actionable falsity in such a circumstance. Put another way, without contemporaneous falsity, there can be no fraud."), *aff'd*, 616 F. App'x 442 (2d Cir. 2015);

- *Faulkner v. Verizon Commc'ns., Inc.*, 156 F. Supp. 2d 384, 400 (S.D.N.Y. 2001) ("The mere disclosure of adverse information shortly after a positive statement does not support a finding that the prior statement was false at the time it was made.").

Thus, it was erroneous as a matter of law for the Court to hold that an alleged "contrast" between Och-Ziff's March 18, 2014 disclosures and its 2012 and 2013 disclosures was sufficient to plead the falsity of the 2012 and 2013 disclosures. To the extent the Court believed that the March 18, 2014 disclosures regarding the SEC-DOJ Investigation retroactively amended disclosures in prior periods because they were contained in a "restated Form 10-K amending [Och-Ziff's] 2013 annual report," the Court's ruling is based on a factual error. Order at 6, 20. Och-Ziff filed only one Form 10-K in 2014. It did *not* file a "restated" Form 10-K. Instead, on March 14, 2014, the Company filed a Form 8-K explaining that it had determined to "consolidate the CLOs it manages" and that its upcoming Form 10-K would include a restatement of certain *prior* financial statements to reflect "an increase in the assets and liabilities of consolidated Och-Ziff funds in the consolidated balance sheets, as well as an increase in the income, expenses and net gains of consolidated Och-Ziff funds in the consolidated statements of comprehensive income."[4] Those restatements of prior financial results concerned an accounting issue entirely unrelated to the SEC-DOJ Investigation, and the disclosures in the March 18, 2014 Form 10-K regarding the SEC-DOJ Investigation did *not* replace or retroactively amend any prior disclosures. The Amended Complaint does not allege otherwise.

The 2012 and 2013 disclosures could be considered misleading only if they are unsupported or contradicted by facts that were available to Och-Ziff *at the time of the disclosures*. Stating in March 2014 that the unknown future outcome of the SEC-DOJ Investigation "could have a material effect" says nothing about the facts that were known to Och-Ziff in 2012 and 2013. On this point, Judge Koeltl's recent decision in *Lions Gate* is

---

[4]  Och-Ziff Form 8-K (Mar. 14, 2014), *available at* http://www.sec.gov/Archives/edgar/data/1403256/ 000156459014000754/ozm-8k_20140313.htm.

instructive.  There, the SEC commenced an investigation of the defendant company in 2011.

2016 WL 297722, at *4.  "[I]n July 2012, the SEC Enforcement Division provided several

'Wells Notices' indicating that the SEC Enforcement Division was considering recommending

that the SEC file a civil action against the Company and its executives."  *Id.*  In March 2014,

*after* Lions Gate signed an offer of settlement in February 2014, Lions Gate disclosed the SEC

investigation.  *Id.* at *5.  Prior to March 2014, Lions Gate disclosed that it was "involved in

certain claims and legal proceedings" and that it did not believe that "the outcome of any

currently pending claims or legal proceedings in which the Company is currently involved will

have a material adverse effect."  *Id.* at *10.  Judge Koeltl rejected the plaintiffs' argument that

these disclosures were rendered misleading by Lions Gate's failure to disclose the SEC

investigation because the plaintiffs failed to plead contemporaneous facts from before March

2014 showing that the company's opinion statements were not supported by the facts known at

the time of the statements:

> [T]he plaintiffs have failed to plead how the defendants' opinions were not
> supported by the facts known to them at the time. *See Omnicare, Inc. v. Laborers
> Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1332 (2015) ("The
> investor must identify particular (and material) facts going to the basis for the
> issuer's opinion—facts about the inquiry the issuer did or did not conduct or the
> knowledge it did or did not have—whose omission makes the opinion statement
> at issue misleading to a reasonable person reading the statement fairly and in
> context. . . . That is no small task for an investor.").
>
> . . .
>
> [T]he statements acknowledged there were pending claims or legal proceedings and
> stated that the Company did not believe a material adverse effect would arise from
> these claims. The plaintiffs have not pleaded how the details of the SEC investigation
> or the Wells Notices undercut the Company's statement of belief or how the
> knowledge of those details would conflict with the statement Lions Gate made.

*Id.* at *11.

Judge Kaplan's decisions in *City of Westland Police & Fire Retirement System v.*

*MetLife, Inc.*, 928 F. Supp. 2d 705 (S.D.N.Y. 2013) ("*MetLife I*"), and *City of Westland Police &*

*Fire Retirement System v. MetLife, Inc.*, __ F. Supp. 3d __, 2015 WL 5311196 (S.D.N.Y. Sept. 11, 2015) ("*MetLife II*"), are also instructive.  In *MetLife I*, which is cited in the Court's Order, Judge Kaplan concluded that the plaintiffs had adequately alleged that MetLife should have disclosed state investigations into its death benefits payment practices before August 2011 because the plaintiffs had pled facts about events that occurred prior to August 2011 which showed that "Defendants reasonably should have expected that the state investigations would cause MetLife to alter its IBNR reserves."  928 F. Supp. at 718.  In *MetLife II*, which is *not* cited in the Court's Order, Judge Kaplan reversed course and dismissed the claim because he had "mistakenly construed" plaintiffs' complaint to allege that "an IBNR reserve 'shortfall of $80 million' had been uncovered as a consequence of the 2007 SSA-DMF cross-check."  2015 WL 5311196, at *21.  Judge Kaplan explained that, without factual allegations relating to pre-August 2011 events, "there is nothing in the SAC from which to infer that MetLife reasonably expected, prior to August 2011, that it would incur fines and/or liabilities . . . as a result of the state investigations."  *Id.* at *22.[5]

Like the plaintiffs in *Lions Gate* and *MetLife II* who failed to plead contemporaneous facts contradicting the defendant company's opinion statements, Plaintiffs here have failed to plead facts from 2012 and 2013 showing that Och-Ziff did not believe, or had no genuine factual

---

[5]  *BioScrip* is not to the contrary.  In *BioScrip*, the defendant received a "civil investigative demand" or "CID" after a *qui tam* complaint was filed against it that—by statute—informed "BioScrip of 'the nature of the conduct constituting the alleged violation of a false claims law which is under investigation, and the applicable provision of the law alleged to be violated.'"  *BioScrip*, 95 F. Supp. 3d at 721, 729 (quoting 31 U.S.C. § 3733).  Thus, the receipt of a CID necessarily informed the defendant that it was subject to claims for alleged legal violations.  Here, Och-Ziff merely "received subpoenas from the SEC and requests for information from the DOJ," Order at 4, neither of which indicate that a company will be subject to suit.  Even a Wells Notice—which Plaintiffs do not, and cannot, allege that Och-Ziff received in 2012 or 2013—"only informs an individual or company that the SEC Enforcement Division staff is considering that the SEC file an action, but the SEC itself has not yet determined whether or not to bring a case."  *Lions Gate*, 2016 WL 297722, at *13.

basis for believing, that there were no "pending judicial, administrative, or arbitration proceedings" that were "expected to have a material impact." Accordingly, Plaintiffs' claims here should be dismissed just like the plaintiffs' claims in *Lions Gate* and *MetLife II*.

### III. The Court's Order Overlooked That Nonculpable Explanations For Defendants' Conduct Must Be Considered And That An Omission Cannot Give Rise To A Strong Inference Of Recklessness Unless There Was A "Clear Duty To Disclose"

The Court also erred in holding that Plaintiffs' allegations of scienter were sufficient because Defendants allegedly "knew about the SEC-DOJ Investigation from 2011 onward, but waited to disclose its potential impact, which Och-Ziff later described [in March 2014] as material, until after the *Wall Street Journal* published an article about the Africa Transactions." Order at 23. Regulatory investigations are not static; instead, they develop over time, and the views of both the regulatory agency and the subject of the investigation develop over time as well. Och-Ziff's statement in March 2014 that the unknown future outcome of the SEC-DOJ Investigation "could have a material effect" thus says nothing about what the status of the SEC-DOJ Investigation was in 2012 or 2013.

Because Plaintiffs do not plead any facts about the status of the SEC-DOJ Investigation in 2012 or 2013, the Court erred in holding that Plaintiffs had adequately pled facts giving rise to a strong inference that Defendants "opt[ed] to misrepresent their exposure to civil and criminal liability" in 2012 and 2013. Order at 23. *See Janbay*, 2012 WL 1080306, at *11 ("The Complaint relies on two sources of information in the effort to raise an inference of scienter: purported statements made at two U.S. sales meetings on November 11 and 23, 2009; and a series of e-mails purportedly exchanged between November 12, 2009 and March 11, 2010. These alleged communications do not identify any act done by, or fact known to, anyone at CSI earlier than November 11, 2009. Consequently, the Complaint fails to allege scienter with respect to all statements prior to November 11, 2009.")

Moreover, in "[c]onstruing all inferences in Plaintiff's favor," Order at 23, the Court overlooked that it was required to "consider plausible, *nonculpable* explanations for the defendant's conduct, as well as inferences favoring the plaintiff," and that scienter is only sufficiently pled "if a reasonable person would deem the inference of scienter *cogent and at least as compelling as any opposing inference* one could draw from the facts alleged." *Tellabs*, 551 U.S. at 323-24 (emphasis added). The Court appears to have found significant the fact that Och-Ziff disclosed the existence of the SEC-DOJ Investigation after it was publicized by the *Wall Street Journal*, but that does not give rise to a strong inference of recklessness under the "inherently comparative" analysis that *Tellabs* compels, 551 U.S. at 323; the inference is at least as compelling—if not far more compelling—that Och-Ziff believed it was under no obligation to disclose the SEC-DOJ Investigation, but concluded, upon learning that its existence had been reported publicly, that it was appropriate to provide context to the market (including by disclosing that, although the Company could not predict how the SEC-DOJ Investigation would unfold, a potentially material adverse result was within the realm of possibility).

Indeed, that inference is particularly cogent and compelling given that a fund manager in Och-Ziff's position[6] surely would wish to speak to its fund investors about such a public revelation—which, in itself, would necessitate public disclosure of that information under Regulation FD. *See, e.g.*, 17 C.F.R. § 243.100. And this inference is further confirmed by the fact that Och-Ziff later made more extensive disclosures, after the commencement of this action, when additional information concerning the status and potential outcome of the SEC-DOJ

---

[6]   Och-Ziff is one of the largest institutional alternative asset managers in the world, with approximately $46.2 billion in assets under management as of October 1, 2014. Am. Compl. ¶ 21. Och-Ziff provides asset management services through its funds, which pursue a broad range of global investment opportunities. Investors in Och-Ziff's funds include pension funds, fund-of-funds, foundations and endowments, corporations and other institutions, private banks, and family offices.

Investigation became available.[7]  Unsurprisingly, that sequence of events implies that Defendants' understanding of the scope of the SEC-DOJ Investigation evolved over time as the Investigation itself unfolded.  The mere fact that Defendants knew about the existence of the Investigation before it was disclosed publicly, and disclosed what they did about the potential outcome of the Investigation once it did become public through other channels, does not support a plausible inference of reckless failure to disclose the Investigation earlier in the face of an obvious duty to do so—let alone an inference that is "at least as plausible" as the opposing inference that Defendants sought to discharge their disclosure obligations in good faith throughout the relevant period, and reasonably believed that they had done so.  The Court's failure to engage in this analysis constitutes legal error.

The Court's scienter analysis was also erroneous in another significant respect.  In assessing the adequacy of Plaintiffs' scienter allegations, the Court erroneously assumed that "Och-Ziff made projections about the likely impact of regulatory proceedings" in its 2012 and 2013 disclosures, which "suggest[ed] that the company was not facing an investigation that could have a material impact on its business."  Order at 20-21.  Because Och-Ziff made no such projections, the relevant analysis was not whether Defendants were "reckless in opting to misrepresent their exposure to civil and criminal liability," *id.* at 23, but whether Och-Ziff "incurred a duty to disclose the Investigation," *id.* at 18, and, if so, whether the Company deliberately or recklessly "failed to disclose that since 2011, Och-Ziff has been under investigation by the DOJ and the SEC for violation of the FCPA and other related laws."  Am. Compl. ¶¶ 79, 86, 89, 92, 95, 102, 105, 108.   As discussed above and in Defendants'

---

[7]  *See*, *e.g.*, Och-Ziff Form 10-Q at 31 (May 5, 2015), *available at* https://www.sec.gov/Archives/edgar/data/1403256/000140325615000082/ozm-10xqx1q2015.htm.

submissions for their motion to dismiss, Och-Ziff did not incur a duty to disclose the SEC-DOJ Investigation based either on its disclosure that that the Company was subject to "extensive scrutiny" by regulatory agencies that "has resulted" in "regulatory agency investigations," or any SEC rule or regulation. Even if the Court disagrees, however, dismissal is still warranted because the Amended Complaint does not plead facts giving rise to a strong inference that Defendants deliberately or recklessly omitted disclosure of the SEC-DOJ Investigation.

Where a securities fraud claim "lies in non-disclosure," the alleged omission cannot give rise to a strong inference of recklessness unless a plaintiff's allegations "present facts indicating a *clear duty to disclose.*" *Kalnit*, 264 F.3d at 144 (emphasis added); *see also ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 203 (2d Cir. 2009) ("To plead recklessness through circumstantial evidence, Plaintiffs would have to show, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.") (internal quotation omitted).

Here, there was no "clear" duty to disclose. As Judge Koeltl recently explained in *Lions Gate*, there is no SEC rule or regulation requiring the disclosure of an SEC investigation and "no clear case law that would require the disclosure of the SEC investigation and the Wells Notices in the absence of a pre-existing duty to disclose." *Lions Gate*, 2016 WL 297722, at *18. To the contrary, as of the February 2013 to March 2014 time period relevant in *Lions Gate*, "[t]here was authority that supported [the company's failure to disclose the ongoing SEC investigation and Wells Notices." *Id.* (citing *Richman*, 868 F. Supp. 2d at 272-76); *see also In re Hous. Am. Energy Corp. Sec. Litig.*, 970 F. Supp. 2d 613, 637 (S.D. Tex. 2013), *rev'd on other grounds sub nom.*, *Spitzberg v. Hous. Am. Energy Corp.*, 759 F.3d 676 (5th Cir. 2014); *In re Thornburg*

*Mortg., Inc. Sec. Litig.*, 695 F. Supp. 2d 1165, 1208-09 (D.N.M. 2010); *In re Morgan Stanley*

*Deriv. Litig.*, 542 F. Supp. 2d 317, 323-25 (S.D.N.Y. 2008).[8]

     Rather than identify any authority that existed at the time of Och-Ziff's disclosures in

2012 and 2013 that would have established a "clear" duty to disclose the SEC-DOJ

Investigation, Plaintiffs alleged that Defendants "knew about the SEC-DOJ Investigation from

2011 onward, but waited to disclose its potential impact."  Order at 23.  But "alleging that the

disclosures in the securities filings were incomplete or that they omitted material information, is

not enough to plead scienter," *Lions Gate*, 2016 WL 297722, at *18, and the Court erred in

failing to assess whether Och-Ziff had a "clear" duty to disclose the SEC-DOJ Investigation in

2012 or 2013.

     Because there was no clear duty to disclose the SEC-DOJ Investigation in 2012 or 2013,

but instead authority indicating that disclosure was not required because the SEC-DOJ

Investigation had not matured to the point where litigation was apparent or substantially certain

to occur, "[t]he more cogent inference is that [Och-Ziff] did not specifically disclose the

---

[8]  *BioScrip* was not even decided until more than a year after the last disclosure at issue and does not support the Court's conclusion that Defendants were reckless in failing to disclose the SEC-DOJ Investigation in Och-Ziff's 2012 and 2013 disclosures.  In *BioScrip*, the court found that scienter had been adequately alleged because the defendant elected not to disclose a pending civil investigative demand relating to its alleged liability under the False Claims Act, despite having "stated publicly" in its SEC filings that it was "in legal compliance" and making other statements suggesting that the existence of an active investigation was "a mere hypothetical" scenario.  95 F. Supp. 3d at 733.  Here, Och-Ziff did not make any representation that it was "in legal compliance," nor did it make the sort of statements that *BioScrip* found sufficient to imply that the defendant there was "assuring the investor that no [specific] threat [of regulatory scrutiny] existed at that precise moment."  *Id.* at 727 (finding that statement of "no assurance that we will not receive subpoenas" implied that defendant was not contemporaneously subject to an active investigation).  To the contrary, Och-Ziff disclosed that "extensive scrutiny" by regulators "has resulted or may in the future result" in regulatory investigations.  Because Och-Ziff did not make the sort of statements that, under the rationale of *BioScrip*, would have necessitated affirmative disclosure in the interest of completeness, the mere fact that Och-Ziff did not specifically disclose the existence of the SEC-DOJ Investigation cannot support an inference of scienter in this case.

investigation [in 2012 or 2013] . . . because it did not believe that there was a requirement to do so." *Lions Gate*, 2016 WL 297722, at *18.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion for reconsideration, reverse the portion of the Order that denied their motion to dismiss, and dismiss the Amended Complaint in its entirety.

Dated:  New York, New York
        March 2, 2016

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:   /s/ Robert F. Serio
     Robert F. Serio (rserio@gibsondunn.com)
     Aric H. Wu (awu@gibsondunn.com)

200 Park Avenue
New York, NY 10166-0193

*Attorneys for Defendants Och-Ziff Capital*
*Management Group LLC, Daniel S. Och,*
*and Joel M. Frank*