

**The Rosen Law Firm**
INVESTOR COUNSEL

Sara Fuks, Esq.
sfuks@rosenlegal.com

September 27, 2016

<u>VIA ECF</u>

The Honorable J. Paul Oetken
United States District Judge
United States Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: <u>*Menaldi, et al. v. Och-Ziff Capital Management Group LLC, et al.*</u>, **No. 14-CV-3251 (JPO)**

Dear Judge Oetken:

Pursuant to Rule 4.B of Your Honor's Individual Rules of Practice, I write on behalf of Lead Plaintiffs Ralph Langstadt and Julie Lemond ("Plaintiffs") to request an informal conference with the Court to resolve a discovery dispute between the parties. On September 2, 2016 counsel for Plaintiffs and Defendant Och-Ziff Capital Management, Group ("Och-Ziff"), Daniel Och and Joel Frank (collectively "Defendants," and together with Plaintiffs, the "Parties") met and conferred via telephone, and communicated via letter and email thereafter, and are unable to resolve the dispute.

Procedural Background and Meet-and-Confer Process

The Parties' discovery dispute concerns the scope of appropriate document production by Defendants in response to Plaintiffs' First Request for the Production of Documents (the "Requests"), served June 7, 2016 (Exhibit A). Defendants submitted Responses and Objections (the "Responses") on July 15, 2016 (Exhibit B). On August 19, 2016, Plaintiffs wrote to counsel for Defendants outlining their disagreements with Defendants' positions concerning the scope of discovery set forth in the Responses (Exhibit C). The Parties agreed to meet and confer via telephone on September 2, 2016. On September 1, 2016 Plaintiffs received a letter from Defendants in response to Plaintiffs' August 19 letter (Exhibit D hereto). Subsequent to the Parties' telephonic meet and confer, on September 13, 2016 Plaintiffs sent a letter to Defendants requesting further clarification on their position with respect to the issues raised on the meet and confer (Exhibit E). Defendants sent Plaintiffs a letter on September 22, 2016 essentially maintaining the position set forth in their Responses. (Exhibit F). Thereafter, Plaintiffs informed Defendants that given the disparity between the Parties' respective positions Plaintiffs intended to seek a conference with the Court. (Exhibit G). Fact discovery in this case is set to close on

January 6, 2016, and fact depositions are to be completed by December 19, 2016. (Dkt. No. 57, 7a. and 7f.). Defendants have yet to produce a single document in the case despite receiving the Requests over three and a half months ago.

In addition, Defendants ignored repeated requests by Plaintiffs to provide comments or edits on a protective order drafted and sent by Plaintiffs on August 26, 2016. Instead, Defendants waited nearly a month and then circulated a completely different draft agreement, which now requires substantial negotiation and revision. (*See* exhibits E, H, I, and J hereto). Defendants' failure to respond to Plaintiffs' repeated requests for entry of a protective order in the case has forestalled document production, including production of documents by third parties.

Disputes Concerning the Overall Scope of Discovery

The core of the Parties' dispute concerns Defendants' obligation to conduct reasonable searches of their files and produce non-privileged, relevant information consistent with the requirements of Federal Rule of Civil Procedure 26(b)(1). Specifically, in response to Plaintiffs' Requests seeking documents related to the pending regulatory investigations, the Parties disagree as to: (a) who is a relevant custodian; (b) what files must be searched; and (c) the relevant time period applicable to Plaintiffs' Requests.

In their Responses, Defendants indicate that they will only "conduct a search of the reasonably accessible hard copy and active system electronic files of the Individual Defendants and those individual Company custodians who *participated in drafting or reviewing the allegedly misleading statements contained in the Company's 2012 and 2013 periodic SEC filings* (the Individual Defendants, together with all such individual Company custodians, the "Relevant Custodians"; and all such files the "Relevant Files")." (*see* Exhibit B , General Objection 9, p. 4 (emphasis added).

This falls short of Defendants' discovery obligations under the Federal Rules. As the Court held: "Plaintiffs have plausibly alleged that Och-Ziff misled investors by suggesting that the company was not facing an investigation that could have a material impact on its business, when, in fact, it was facing such an investigation." (*See* Dkt. 39 at 20). Consequently, individuals with knowledge of the Investigation[1] and its potential impact on Och Ziff's business are not limited to only those involved in "drafting or reviewing" the Company's statements in its public filings. Rather, Plaintiffs submit that "relevant custodians" should include current or former Och Ziff employees who participated in determining whether or not the investigation might have a material impact on Och Ziff's business, as well as employees who reviewed, evaluated or analyzed any requests for information or who prepared any responses to such requests in connection with the Investigation. (*See*, *e.g.*, Exhibit A at Request 3, p. 6-7). Likewise, Defendants cannot limit searches for relevant and responsive documents to "hard copy and active system electronic files" of purported "Relevant Custodians," essentially avoiding production of relevant and material information unless it was sent or received by a subset of individuals whose files remain active.

Defendants' proposed list of custodians demonstrates the inadequacies of their approach. First, the list omits any details concerning the employees' titles, roles, or dates of employment,

---

[1] The "Investigation" refers to, collectively, the subpoenas from the Securities and Exchange Commission and requests for information from the U.S. Department of Justice in connection with an investigation involving the Foreign Corrupt Practices Act and related laws.

making it impossible for Plaintiffs to discern exactly what is being produced. (*See* Exhibit F, Schedule A). Second, notably absent from the custodian list is Michael Cohen, Och Ziff's former Head of European Investing, who oversaw the transactions that triggered the Investigation. (*Id*.). It defies reason and common sense that a person with firsthand knowledge of the underlying conduct would not be involved in assessing the significance of the Investigation and its likely impact on Och Ziff's business. Moreover, as a high-level executive, Mr. Cohen's knowledge related to the Investigation is imputable to Och Ziff. *See*, *e.g.*, *In re Silvercorp Metals, Inc.* 2014 WL 2839440 (S.D.N.Y. June 23, 2014) ("All that is required is that the pleaded facts create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter."). Production of documents and information from Mr. Cohen, as well as other personnel with knowledge of the Investigation, is clearly within the scope of permissible discovery under Rule 26.

The Parties also disagree as to the relevant time period applicable to Plaintiffs' Requests. Defendants contend that March 31, 2014, the date on which Och-Ziff issued its restated 10-K disclosing the Investigation, should be the cut-off for document production. Plaintiffs believe that Defendants should search for and produce documents continuing through the present, or at a minimum, through May 3, 2016, when Och-Ziff disclosed that the Company accrued a $200 million charge in connection with the Investigation, which remains at the heart of this action and has not yet concluded. These documents reflect Defendants' handling of the Investigation, as well as their knowledge during the Class Period, and are therefore relevant and material. Furthermore, in connection with discovery in securities class actions, it is well settled that the proposed class period does not determine the period of relevancy for discovery purposes. *See, e.g. In re Seagate Technology II Sec. Litig.*, No. C-89-2493, 1993 WL 293008 at *2 (N.D. Cal. June 10, 1993).

Disputes Concerning Specific Requests

Requests 9 and 10 seek documents concerning the financial accounting and the Company's compliance with FAS 5 in connection with the Investigation. FAS 5 is the accounting rule that mandated Och Ziff evaluate whether or not the Investigation might have a material impact on its business. Under FAS 5, companies are required to disclose loss contingencies- in this case costs and possible fines and penalties arising from the Investigation- and where a loss contingency is less than probable, but not remote, a company must: (1) disclose it to investors and indicate its nature and (2) provide an estimate of the possible loss, range of loss or state that an estimate of the loss cannot be made. FAS 5, Par. 10. One of the statements upheld as misleading is the statement in Och Ziff's financial statements pursuant to FAS 5 that "The Company is currently not subject to any pending judicial, administrative or arbitration proceedings that are expected to have a material impact on the Company's consolidated financial statements." (Dkt. No. 37 ¶91). Thus, Och Ziff's FAS 5 analysis and underlying documentation supporting this statement, including the basis for the ultimate FAS 5 determination by management (who is responsible for the financial statement disclosures), and any discussions with Och Ziff's auditors on the subject, are directly relevant to proving falsity and scienter in this action. Defendants have narrowed Request 9, agreeing to produce only documents "concerning any financial statement entries" related to the Investigation at or before the time when the allegedly misleading statements in Och-Ziff's SEC filings were made. However, *all* documents concerning Defendants' financial accounting determination in connection with the Investigation are highly material and relevant. The fundamental issues in this case concern, *inter alia*, Defendants' representations as to how the Investigation would or would not affect Och-Ziff financially. When Och-Ziff disclosed the existence of the Investigation in its Restated 10-K and stated that "the Company is unable to

determine how the investigation will be resolved *and what impact, if any, it will have* [and that] an adverse outcome could have a material effect on the Company's financial statements," Och-Ziff was making an FAS 5 disclosure. Documents concerning Och-Ziff's compliance with FAS 5 therefore are relevant to determining what information Defendants had concerning the potential impact of the Investigation on the Company, and accordingly, whether Defendants' failure to disclose the existence of the Investigation at an earlier point was misleading.

Requests 13-17 seek documents related to: (1) the statements contained in Och-Ziff's SEC filings that it was not subject to any "pending judicial administrative or arbitration proceedings" that were expected to have a material impact on is financial condition and (2) Och-Ziff's later statement disclosing that "an adverse outcome of the [Investigation] could have a material effect on the Company's consolidated financial statements." Defendants have agreed to produce responsive documents only insofar as they concern the "drafting and review" of these statements. Defendants offer no explanation for narrowing production to "drafting and review." The statements in Och-Ziff's SEC filings quoted in Requests 13-17 that concern not simply to "drafting and review" of those statements  the underlying documents upon which the statements themselves are based and documents supporting those statements should be produced. Narrowing production to documents concerning "drafting and review" would omit for example, documents concerning the basis for the statements themselves.

Request 19 seeks documents concerning the Company's decision to reserve $200 million in connection with the Investigation, as announced on May 3, 2016. Defendants have refused to produce documents responsive to this Request. While Defendants maintain that what occurred in 2016 with respect to the Investigation has no bearing on what was occurring during the Class Period, Plaintiffs believe that the Company's decision to reserve $200 million in connection with the Investigation is relevant to the Defendants' prior determinations not to disclose or to reserve for contingent liabilities related to the Investigation.

Requests 21-23 seek documents concerning whether the investments in Africa described in the Complaint that are the subject of the Investigation complied with the FCPA. Defendants have stated that they will produce documents concerning "knowledge" of FCPA compliance "at the time the Challenged Statements were made." However, the scope of relevance goes beyond merely "knowledge" of FCPA compliance. For example, if Defendants recklessly disregarded the fact that Och-Ziff's investments violated the FCPA or failed to monitor information that they had a duty to monitor in connection with FCPA compliance that would of course be relevant as well. Additionally, Och-Ziff's FCPA compliance concerning the African Investments *after* it issued the allegedly misleading statements is relevant because it is probative of why Och-Ziff decided to disclose the Investigation and whether its prior statements were materially misleading.

Dispute Concerning Document Requests in Plaintiffs' 30(b)(6) Deposition Notices

On August 22, 2016 Plaintiffs sent Defendants three separate notices of deposition directed to Och-Ziff pursuant to FRCP 30(b)(6) (the "30(b)(6) Notices") concerning three discrete areas (Exhibits K, L, and M). In a letter dated September 22, 2016  Defendants informed Plaintiffs that they objected to three separate 30(b)(6) depositions and also objected to the document requests embedded in the 30(b)(6) Notices on the grounds that, *inter alia*, the document requests were "untimely under the Court's May 11, 2016 Civil Case Management Plan and Scheduling Order ('Scheduling Order'), which required document requests to be served by June 10, 2016." (Exhibit N at page 3). Thereafter, Plaintiffs informed Defendants that they would agree to taking

one single 30(b)(6) deposition of Och-Ziff on the topics identified in the 30(b)(6) Notices, and requested that Defendants withdraw their wholesale objection to producing documents responsive to the document requests embedded in the 30(b)(6) Notices. (Exhibit O). Defendants advised Plaintiffs that they would consider this request (Exhibit P, Q), but then sent Plaintiffs a letter stating that they would not produce documents responsive to the requests in the 30(b)(6) Notices on work-product grounds. (Exhibit R).

Firstly, contrary to Defendants' position, nothing in the Court's Scheduling Order or the Federal Rules of Civil Procedure limits Plaintiffs to one and only one set of requests for the production of documents. Instead, the Court's Scheduling Order states that *"Initial* requests for production of documents shall be served within 30 days after entry of this Order." (Dkt, No. 57, page 3) (emphasis added). Secondly, the documents a deponent intends to rely upon in testifying at a Rule 30(b)(6) deposition are not automatically shielded from discovery under the work-product doctrine. *See, e.g. FDIC v. Wachovia Ins. Svcs., Inc.*, 241 F.R.D. 104, 107-108 (D. Conn. 2007) (granting motion to compel production of all documents reviewed in preparation for 30(b)(6) deposition rejecting argument that documents constituted work-product, and stating that "courts should narrowly construe, not expansively interpret, exceptions to discoverability."). Because the document requests embedded in the 30(b)(6) Notices are entirely appropriate and seek relevant documents consistent with Rule 26(b)(1) Defendants should be required to produce responsive documents consistent with their obligations under the Federal Rules.

\*\*\*

Finally, given the fact that the deadline for the completion of fact depositions is less than two months away and Defendants have yet to produce a single document, Plaintiffs respectfully request that the Court extend the deadline for the completion of fact depositions and fact discovery by approximately three months from the date on which the Parties' discovery dispute is resolved.

Plaintiffs are prepared to submit briefing on any of the issues raised herein or any other issues that the Court should deem appropriate, at the Court's request.

Respectfully Submitted,

Sara Fuks

Cc: All Counsel of Record (via ecf)