

# The Rosen Law Firm
### I N V E S T O R   C O U N S E L

May 9, 2018

<u>**VIA ECF**</u>
The Honorable J. Paul Oetken
United States District Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: <u>*Menaldi, et al. v. Och-Ziff Capital Management Group LLC, et al.*, No. 14-CV-3251 (JPO)</u>

Dear Judge Oetken:

Plaintiffs write in further support of their May 2, 2018 pre-motion letter ("Motion") and in reply to Defendants' May 7, 2018 letter.  With the exception on the last issue raised in Plaintiffs' Motion concerning the appropriate number of depositions which has been resolved by the Parties, Plaintiffs' respectfully submit that the Court should grant Plaintiffs' Motion.

1. **Plaintiffs' Motion is Procedurally Proper**

Plaintiffs complied with Your Honor's Individual Rules in submitting their Motion.  The fact that, as Defendants point out, the close of fact discovery is less than one month away, underscores the necessity of Plaintiffs having filed the motion when they did. In Plaintiffs' April 27 letter Plaintiffs requested that Defendants provide a response by May 1 concerning all of the issues raised in Plaintiffs' April 27 letter, including the number of depositions Defendants would agree to.  Defendants set forth their positions in their May 1 letter and did not provide a response concerning the number of depositions Defendants would agree to. Because Defendants' letter response made it clear that their position was wholly at odds with Plaintiffs' position and that no compromise could be reached, and because Defendants provided no response concerning the number of deponents they would agree to Plaintiffs were completely justified in filing their Motion when they did.  Given the fact discovery cutoff is less than 30 days away, Plaintiffs could not afford to delay in seeking resolution of these issues.  That one of the issues in the Motion is now moot because Defendants modified their position subsequent to Plaintiffs' filing does not render the Motion procedurally improper, it merely resolves one of the several issues raised.

2. **Defendants Have Waived Privilege by using Advice of Counsel as a Sword and a Shield**

It is well settled that attorney-client privilege cannot "at once be used as a shield and a sword." *See In re von Bulow*, 828 F.2d 94, 103 (2d Cir.1987).  The "privilege may implicitly be waived

1

when defendant asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)(finding "waiver principle is applicable here for Bilzerian's testimony that he thought his actions were legal would have put his knowledge of the law and the basis for his understanding of what the law required in issue"). Similarly, where a privilege holder disclaims the advice of counsel defense but nonetheless asserts that it "believes the conduct to be lawful," it waives privilege. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1419 (11th Cir.), *opinion modified on reh'g,* 30 F.3d 1347 (11th Cir. 1994). "Whether fairness requires disclosure has been decided by the courts on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *In re Grand Jury Proceedings, 219 F.3d 175, 183* (2d Cir. 2000). *See, e.g. In re Kidder Peabody Secs. Litig.,* 168 F.R.D. 459, 470 (S.D.N.Y.1996)(finding a waiver where the defendant "invoked [an attorney-created investigative] report and its conclusions ... both in judicial fora and in other judicial-type contexts").

The Advisory Committee Notes to Federal Rule of Evidence 502(a) explain that the [waiver] Rule "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." This case presents one of these situations.

Defendants' entire defense, i.e., ████████████████████████████████████████, relies solely on information over which it asserts privilege. As Mr. Foradada testified, ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████. Och-Ziff has purposely crafted its strategy such that facts and legal advice are so intertwined that any meaningful attempt to probe purely factual matters is quickly shut down based on claims of privilege.

The following excerpt from Mr. Foradada's deposition demonstrates that █████████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████. When asked ███████████████████████████████████████ ██████████████████ Mr. Foradada testified:

> "████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████
> ████████████████████████████████████████████████████████"

Foradada Tr. 112:17-25; 113:2-7.[1]

Mr. Foradada made clear that █████████████████████████████████████████████████████ █████████████████████████████████████████████████ – and Och-Ziff is claiming privilege over all of that information, ██████████████████████████████████ ████████████████████████████████████. *See* Plaintiffs' Motion, at p. 2-3 (Q: "██████████ ███████████████████████████████████████████████?" A: "██████████████████████

---

[1] The entire transcript from Mr. Foradada's deposition is attached hereto as Exhibit A. Plaintiffs have highlighted the relevant excerpts from the transcript but attached it in its entirety so that the Court can assess the testimony in context.

██████.█" Q: "█████████████████████████████████
███████████████?" A: "█████████████████████████████
██████████████████████████████████████████.█" Foradada
Tr., 46:8-17); (Q: "█████████████████████████████████████
██████████████?" A: "███████████████████████████████████
█████████████.█" Q: "██████████████████████████████████
████████████████████████████?" [MR. SERIO
[Och-Ziff's Counsel]:   "██████████████████████████████
███████████████████████████████"] A: "████████████████
████████████████████████." Foradada Tr., 87: 13-25; 88: 1-3.); (Q: "█████████
████████████████████████████████████████████████████████
██████████████████████████...[ ]██████████████████████████
███████████████████████?" A: "████████████████████████████
███████████████████████████████████████████.█" Foradada
Tr. 178: 3-7, 25; 179:2-11)).

This is not a situation in which Och-Ziff has withheld information that is merely relevant.  (*cf
Weiss v. National Westminster Bank, PLC,* 2008 WL 5115027, at *3 (E.D.N.Y. 2008)
(Defendants' Opposition at p. 3) ("A key component of NatWest's defense is that it relied, in
part, on the findings of the Charity Commission, which, after an investigation, cleared Interpal of
any wrongdoing. That, however, is a far cry from NatWest claiming, which it has not, that its
actions were lawful because it relied on its attorneys' interpretations of those findings.").  Here
by contrast Mr. Foradada's testimony on behalf of Och-Ziff demonstrates that ███████████████
████████████████████████████████████████████████████████████
██████████████████████████" (Defendants' Opposition fn. 5) Mr. Foradada testified that ██████████
██████████████████████████: Q: "████████████████████████████
██████████████████...A: "██████████████████████████████████
████████████████████████. [ ]███████████████████████████████
██████████" Q "████████████████████████████████████████████
███████████████████████████████ [ ]." Foradada Tr., 151: 13-25;
152: 3-10.    Similarly, while Och-Ziff also points to ████████████████████████
████████████████████████████████████████████████. *See*  EY-OZ-WP-000089-000092.
(Exhibit B hereto) ("███████████████████████████████████████████
████████████████████████████████████████████████████████████
█████████████████" (Exh. B at EY-OZ-WP-000089); "██████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████.█" (Exh
B at EY-OZ-WP-000091) (Emphasis added).

In other words, all roads lead to Defendants' reliance on the advice of counsel.   As Mr.
Foradada's deposition testimony evidences each of Plaintiffs' attempts to meaningfully probe ████
████████████████████████████████ leads down a rabbit hole where
anything of substance is placed under the cloak of privilege.

Defendants' assertion that Plaintiffs can build their case without use of privileged information because "███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████" (Defendants' Response p. 3) is utterly belied by the fact that Defendants have redacted nearly all substantive communications where "█████████████████████████████████████████████████████████████████████████████████████."

For example, ██████████████████████████████████████████████████████████████ are completely sanitized and contain redactions at precisely the points where ████████████ ██████████████████████████████████ would have occurred.  *See* OZMEN000104528-104529 (Exhibit C hereto) ("████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████..." "█████████████ ███████████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████"

Additionally, correspondence that Defendants produced referencing ███████████████ ██████████████████ have been redacted so as to be useless in terms of evidencing anything ████████ ███████████████████████████████████████████████████████████████████.  For example, ████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████" Defendants have redacted the portion of the email that ██████████████████████████ ███████████████████████████████████████████.  *See, e.g,* OZMEN00056630 (Exhibit D hereto) (Email from Mark Schonfeld at Gibson Dunn to Andrew Frank (OZM General Counsel) and Jeffrey Blockinger (Och-Ziff's Chief Legal Officer) stating "██████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████."  Indeed, internal communications concerning Och-Ziff's counsel's correspondence with the Government contains redactions which render the communications completely non-substantive.  *See, e.g,* OZMEN00061300-00061301 (Exhibit E hereto) (Email correspondence entitled "█████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████████████").

Defendants fail to adduce any facts rebutting Plaintiffs' evidentiary showing that Och-Ziff based its determinations concerning its disclosure obligations on the advice of counsel.

### 3. Defendants Are Required to Produce Documents Responsive to Requests 21-23

The plain language of the Court's order on the motion to compel directed Och-Ziff to produce documents responsive to Requests 21-23 "insofar as they constitute or reflect communications regarding FCPA compliance or noncompliance with the referenced transactions."  Plaintiffs are not attempting to re-litigate any issue that has already been resolved.  If anything it is Defendants that waited until seven weeks before the close of fact discovery to complete their document production. Plaintiffs were of course unable to challenge the sufficiency of Defendants' production without having received, let alone fully reviewed, the documents Defendants produced.   The Court stated almost two years ago and before any discovery had been propounded: "I am not going to adopt plaintiff's position for an automatic disclosure of all SEC investigation production.  I am just going to follow the normal rules for discovery.  You request what you request, and then insofar as there is a dispute as to that, I will either get you on the phone and resolve it or refer it to Magistrate Judge Peck for resolving the dispute. (Defendants' Response Ex. I p. 13:2-9.).  Defendants read the Court's statement refusing to adopt *automatic* disclosure for *all* of the SEC investigation production as tantamount to a statement that Defendants would *never* be required to produce *anything* contained in the SEC investigation

production. This interpretation defies logic. To the extent that any documents and communications created during the Relevant Period contain attachments that pre-date the Relevant Period and "constitute or reflect communications regarding the FCPA compliance or noncompliance of the referenced transactions" Defendants are required to produce them per the plain language of the Court's order.

### 4. Och-Ziff's Designations of Work-Product Protection in E&Y's Documents are Improper

The attorney work-product rule "shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative absent a showing of substantial need." *U.S. v. Adlman*, 68 F.3d 1495, 1503 (2d Cir. 1995). The mere prospect of future litigation is insufficient to claim the protection. *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977) ("the work product rule does not [ ] come into play merely because there is a remote prospect of future litigation.").

Och-Ziff has made clear, through the testimony of Mr. Foradada, that ███████████████ ███████████████████████. Accordingly, Och-Ziff cannot claim work-product protection over the materials it shared with E&Y.

For example, Mr. Foradada testified that ███████████████████████████████ ████████████████████████████████████████████████████ ███████████" Foradada Tr., 111:23-25; 112: 2-4. Further, when Mr. Foradada was asked ████ ████████████████████████████████████████████ (Foradada Tr., 188:13-16) he testified that █████████████ ████████████████████████████████████████ ███████████████████████████." (Foradada Tr., 190: 9-14). In sum, Mr. Foradada testified that "███████████████████████████████████████████ ███████████." Foradada Tr., 188: 25-25; 189: 2.

Och-Ziff cannot have it both ways. It cannot, on the one hand based its defense on the fact that ██ ████████████████████████████████████████, and on the other hand, claim work-product protection over materials it provided E&Y ████████████████.

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion.

We are available at the Court's convenience should the Court request a conference or additional information on this issue.


Respectfully,

*/s/ Sara Fuks*
Sara Fuks


CC:    All counsel on the following service list (by email)