## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ARTHUR MENALDI, Individually and on Behalf of All Others Similarly Situated,<br><br>         Plaintiff(s),<br><br>  -against-<br><br>OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC, DANIEL S. OCH, and JOEL M. FRANK,<br><br>         Defendants. | Civil Action No. 14 Civ. 3251 (JPO) |

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT ................................ 2

    A. Procedural History ................................................................................ 2

    B. Settlement Negotiations ....................................................................... 4

III.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
APPROPRIATE ............................................................................................. 5

    A. Standards for Preliminary Approval ..................................................... 5

    B. The Settlement Negotiated By the Parties Enjoys a Presumption of Fairness ...................... 7

    C. The Settlement Benefit Falls within the Range of Possible Approval ................. 10

       (i)     The Complexity, Expense and Likely Duration of the Litigation ................. 10

       (ii)    The Stage of the Proceedings ................................................... 11

       (iii)   The Risks of Establishing Liability and Damages ......................... 12

       (iv)   Reasonableness of the Settlement Fund ..................................... 12

       (v)    The Plan of Allocation is Reasonable ........................................ 13

IV.   THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE 23(C)(2)(B) ................................................................................. 14

V.    PROPOSED SCHEDULE OF EVENTS ............................................................ 15

VI.   CONCLUSION .............................................................................................. 17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>Cases</u>

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981) ............................................................... 6

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) .................................................................................. 6, 9, 10, 12

*Clark v. Ecolab Inc.*,
   Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May
   11, 2010) .......................................................................................................................... 7

*Consol. Edison, Inc. v. Ne. Utilities*,
   332 F. Supp. 2d 639 (S.D.N.Y. 2004) ................................................................................ 14

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) .................................................................................................. 8

*Diaz v. E. Locating Serv. Inc.*,
   No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136 (S.D.N.Y. Nov. 29, 2010) .......................... 7

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) ......................................................... 15

*Flinn v. FMC Corp.*,
   528 F.2d 1169 (4th Cir. 1975) ............................................................................................. 7

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398, 189 L. Ed. 2d 339 (2014) .......................................................................... 10

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) .......................................................................... 11, 13

*In re Citigroup Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013) ............................................................................ 9, 13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................... 6

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................................ 9

*In re Medical X-Ray Film Antitrust Litig.*,
   No. 93 Civ. 5904, 1997 WL 33320580 (E.D.N.Y. Dec. 26, 1997)............................................7

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ........................................................................................7

*Krangel v. Golden Rule Resources, Ltd.*,
   194 F.R.D. 501 (E.D. Pa. 2000) ........................................................................................15

*Lyons v. Marrud, Inc.*,
   No. 66 Civ. 415, 1972 WL 327 (S.D.N.Y. June 6, 1972) ........................................................8

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950) ................................................................15

*Palacio v. E\*TRADE Fin. Corp.*,
   No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. WL 2384419 (S.D.N.Y. June 22, 2012) ........... 5, 7

*Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*,
   323 F. Supp. 364 (E.D. Pa. 1970) ........................................................................................7

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 Civ. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014).....................................13

*Spann v. AOL Time Warner, Inc.*,
   No. 02 Civ. 8238 (DLC), 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ....................................5

*Thompson v. Metro. Life Ins. Co.*,
   216 F.R.D. 55 (S.D.N.Y. 2003)........................................................................................9, 10

*Vargas v. Capital One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ........................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................5, 6, 14

*Wright v. Stern*,
   553 F. Supp. 2d 337 (S.D.N.Y. 2008)........................................................................................6

## **Statutes**

15 U.S.C. § 78j(b) ........................................................................................3

15 U.S.C. § 78t(a) ........................................................................................3

15 U.S.C. § 78u-4(a)(4) ........................................................................................13

15 U.S.C. § 78u-4(a)(7) ................................................................................................ 14

**Rules**

Fed. R. Civ. P. 23(e) ...................................................................................................... 6

**Regulations**

17 C.F.R. § 240.10b-5.................................................................................................... 3

**Other Authorities**

*Manual for Complex Litigation* (Fourth) ............................................................... 6, 10

*Newberg on Class Actions* (4th ed. 2002)............................................................... 5, 6

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiffs Ralph Landgstadt and Julie Lemond (collectively, "Plaintiffs" or "Class Plaintiffs") respectfully submit this memorandum in support of Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I.      INTRODUCTION

Plaintiffs and defendants Och-Ziff Capital Management Group LLC ("OZM" or the "Company"), Daniel S. Och ("Och"), and Joel M. Frank ("Frank") (collectively, "Defendants") have agreed to settle this case for twenty-eight million seven hundred and fifty thousand U.S. dollars ($28,750,000.00).[1]   By this motion, Class Plaintiffs respectfully request the Court take the first step in the approval process[2] and enter an order: (i) granting preliminary approval of the proposed Settlement; (ii) approving the Settling Parties' proposed form and method of giving notice to the proposed Settlement Class; and (iii) setting a date for a Final Approval Hearing and deadlines for mailing and publication of the Notice, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, the filing of Plaintiffs' motion for Final Approval of the Settlement, and the filing of Class Counsel's application for attorneys' fees and expenses.

The proposed Settlement is an excellent recovery for Settlement Class Members and was achieved following arm's-length negotiations with independent mediator Layn Phillips of

---

[1] All capitalized terms used herein have the meanings set forth and defined in the Stipulation and Agreement of Settlement (the "Settlement Stipulation") filed contemporaneously herewith.

[2] Court approval of a class settlement is a two-step process. First, the Court must preliminarily approve the settlement, as well as the content and method of providing notice to the proposed settlement class. Second, after notice has been issued to settlement class members, the Court must make a final determination as to whether the Settlement is fair, reasonable and adequate, such that it should be finally approved.

Phillips ADR.  As set forth herein, based on, *inter alia,* Plaintiffs' extensive litigation of the action, including full briefing on two motions to dismiss and class certification;  the completion of  fact discovery which entailed review of thousands of pages of documents and eleven depositions; consultation with experts to evaluate potential damages; and preparation and exchange of formal mediation statements by the parties, Plaintiffs and their counsel had a thorough understanding of the strengths and weaknesses of the claims asserted in the Action, including the potential limitations on damages and recovery, prior to agreeing to accept the proposed Settlement.

Plaintiffs estimate that the proposed Settlement returns approximately 17.3% of estimated damages, far in excess of the median settlement for similar securities class actions.  *See, e.g*., Cornerstone Research, *Securities Class Action Settlement 2017 Review and Analysis* (2017) at p. 8 (figure 7) (noting that in 2017, securities settlements where damages are between $150-$249 million retuned an average of 2.9% of damages).  Thus, the Settlement easily falls "within the range of possible approval" and warrants preliminary approval.  Likewise, the proposed Notice satisfies the PSLRA's disclosure requirements and is the best practicable notice under the circumstances.

At this stage, the Court need not engage in a detailed analysis of the fairness of the Settlement, as that is reserved for the hearing on final approval, at which time interested Settlement Class Members and Plaintiffs' and Settling Defendants' Counsel will be heard on the matter.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

### A.    Procedural History

The initial complaint in this Action was filed on filed on May 5, 2014.  The complaint asserted securities fraud claims under Sections 10(b) and 20(a) of the Securities Exchange Act of

1934 ("Exchange Act"), 15 U.S.C. § 78j(b), 15 U.S.C. § 78t(a), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) (Dkt. #1).   On September 24, 2014, the Court appointed Ralph Langstadt and Julie Lemond as Lead Plaintiffs and approved Pomerantz LLP and The Rosen Firm, P.A. as Co-Lead Counsel for Lead Plaintiffs (Dkt. #16).   Plaintiffs filed their Consolidated Amended Class Action Complaint (the "CAC") on November 24, 2014 (Dkt. #17).

On February 17, 2016, the Court granted in part and denied in part Defendants' motion to dismiss, holding that the CAC adequately alleged that OZM made actionable misstatements about the existence and risks of regulatory proceedings (Dkt #39). On March 2, 2016, Defendants moved for partial reconsideration of the February 17, 2016 Order (Dkt. #40), which the Court denied on May 27, 2016 (Dkt. #43).

Thereafter, the parties commenced discovery. On July 11, 2016, the Parties participated in a mediation session before Hon. Layn Phillips (Ret.). The mediation did not result in a settlement.   On August 9, 2016, Plaintiffs moved for certification of a class comprised of all persons other than Defendants who purchased OZM securities between February 9, 2012 and August 22, 2014, both dates inclusive (Dkt. #60).   Defendants deposed both Lead Plaintiffs as well as Plaintiffs' expert on market efficiency.   On October 14, 2016, the Parties filed a stipulated proposed order (Dkt. #71) under which Defendants consented to Plaintiffs' filing of a Second Amended Complaint (the "SAC"), and the parties agreed upon a briefing schedule for Defendants' anticipated motion to dismiss the SAC.  Plaintiffs filed the SAC on November 18, 2016 (Dkt. #76). On January 11, 2017, Defendants OZM, Och, and Frank moved to dismiss those portions of the SAC that sought to revive previously dismissed claims or assert new claims (Dkt. #96).  During the pendency of Defendants' Motion to Dismiss the SAC no discovery took place.  On September 29, 2017, the Court (i) granted the motions filed by Defendants OZM,

Och, and Frank to dismiss the previously dismissed claims and any newly asserted claims; and (ii) denied Plaintiffs' motion for leave to renew claims against Michael Cohen (Dkt. #136), essentially leaving the Parties with the same pending claims that existed prior to Plaintiffs' filing of the SAC.   Thereafter, the Parties resumed fact discovery and briefing on Plaintiffs' Motion for Class Certification.   On November 10, 2017 OZM filed its opposition to Lead Plaintiffs' motion for class certification (Dkt. #141-44), and Och and Frank filed letters to the Court advising that they were joining in OZM's opposition brief (Dkt. ##141, 142).   Defendants produced thousands of pages of documents during the course of discovery which Plaintiffs reviewed in preparation for depositions. Plaintiffs also issued numerous third-party subpoenas and reviewed documents from OZM's auditor Ernst & Young.  Plaintiffs took eleven depositions in total, including the depositions of Defendants Och and Frank and the Ernst & Young audit partner in charge of OZM's audits during the Class Period.   On June 5, 2018 the Parties completed fact discovery.   On June 8, 2018, the Parties participated in a second mediation session before Hon. Layn Phillips (Ret.), but did not reach an agreement to settle the case. Following the June 8, 2018 mediation session, the Parties continued settlement discussions through the mediator, which ultimately resulted in settlement.   Thereafter, on September 14, 2018, the Court granted Plaintiffs' motion for class certification, certifying a class of plaintiffs consisting of all persons (other than Defendants) who purchased OZM securities between February 9, 2012 and August 22, 2014, inclusive; appointing Ralph Langstadt and Julie Lemond as lead plaintiff and appointing Pomerantz LLP and the Rosen Law Firm, P.A. as class counsel (Dkt. No 186).   On September 17, 2018 the Parties informed the Court of the agreement-in-principle to settle the Action.

    **B.**    **Settlement Negotiations**

The Settling Parties attended two mediation sessions with Judge Layn Phillips (Ret.) of Phillips ADR.  The first was on July 11, 2016.  The second was nearly two years later, on June 8, 2018, just after fact discovery had closed.  A settlement was not reached at either of these mediation sessions, but continued negotiations through Judge Phillips following the second mediation, the Parties reached an agreement in principle to settle the Action.

This process included reviewing and analyzing: (i) documentary evidence and deposition testimony elicited through discovery; (ii) publicly available information, including press releases, news articles, and other public statements issued by or concerning Defendants; (iii) input of information and advice by Plaintiffs' experts; and (v) the applicable law governing the claims and potential defenses. This analysis, in the Plaintiffs' judgment, has provided an adequate and satisfactory basis for the evaluation of an agreement to settle, as described herein.

The Settlement Stipulation memorializes the agreement between the parties to fully and finally settle the Action and to fully release all Released Claims against all Defendants and the Released Parties with prejudice in return for specified consideration.

## III.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.   Standards for Preliminary Approval

The law favors settlement, particularly in class actions and other complex cases because they tie up substantial judicial resources, use up the parties' time and money, and, in such cases, litigation resolution is usually significantly delayed.  *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. WL 2384419, at *7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"); *Newberg on Class*

*Actions* (4th ed. 2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *12 (S.D.N.Y. July 27, 2007). More explicitly, the Supreme Court has cautioned that in reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14, 101 S. Ct. 993, 67 L. Ed. 2d 59 (1981).

Where, as here, the parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. *See* Fed. R. Civ. P. 23(e); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008). The typical process for approval of class action settlements is described in the *Manual for Complex Litigation* (Fourth) §§ 21.632-634 (2004). The steps are:

1. Preliminary approval of the proposed settlement at an informal hearing;

2. Dissemination of mailed and/or published notice of the settlement and fairness hearing to all affected class members; and

3. A formal fairness hearing, or final approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.

This procedure, commonly employed by federal courts, safeguards class members' procedural due process rights and enables the court to fulfill its role as the guardian of the class members' interests. *See Newberg*, § 11.25 (quoting *Manual for Complex Litigation* (Second) (1985)). In the Second Circuit, courts will examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc.*, 396 F.3d at 116. They will also determine whether the

settlement's terms are fair, reasonable, and adequate, using the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

Preliminary approval is merely the prerequisite to giving notice that "the proposed settlement … may be submitted to members of the prospective Class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970). Accordingly, at this stage of the settlement process, the Court conducts only a preliminary evaluation to determine whether the proposed Settlement is within the range of possible final approval. *See* 5 James Wm. Moore, *Moore's Federal Practice* ¶¶ 23.83[1], 23-336.2 to 23-339 (3d ed. 2002); *see also Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007) ("Preliminary approval of settlements should be given if the settlement is the result of serious, informed and non-collusive negotiations and the proposed settlement has no obvious deficiencies, such as giving preferential treatment to class representatives, or granting excessive attorneys fees") (*quoting In re Medical X-Ray Film Antitrust Litig.*, No. 93 Civ. 5904, 1997 WL 33320580, at *6 (E.D.N.Y. Dec. 26, 1997)).

**B.      The Settlement Negotiated By the Parties Enjoys a Presumption of Fairness**

"In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 U.S. Dist. LEXIS 47036, at *18 (S.D.N.Y. May 11, 2010) (citation omitted). Courts also give weight to the parties' judgment that the settlement is fair and reasonable. *See Palacio*, 2012 U.S. Dist. LEXIS 88019, at *8; *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 U.S. Dist. LEXIS 139136, at *10 (S.D.N.Y. Nov. 29, 2010); *Clark*, 2010 U.S. Dist. LEXIS 47036, at *18; *Flinn v. FMC Corp.*,

528 F.2d 1169, 1173 (4th Cir. 1975) ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion should be given weight in evaluating the proposed settlement").

On July 11, 2016 and June 8, 2018, the Parties participated in mediation sessions before a nationally regarded mediator and retired Judge, the Hon. Layn Phillips.  In advance of those sessions, the Parties exchanged and provided to Judge Phillips detailed mediation statements and exhibits addressing liability and damages. Those sessions ended without an agreement being reached.  Subsequent to the second mediation session, further discussions ensued and an agreement in-principle-was reached.  The negotiations were at all times hard-fought and at arm's length, and have produced a result that the Settling Parties believe to be in their respective best interests.  The arm's-length nature of the settlement negotiations and the involvement of an experienced mediator supports the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

The proponents of Settlement are highly experienced in this type of litigation and are familiar with the legal and factual issues of the case.  Class Counsel, Pomerantz LLP and the Rosen Law Firm, P.A., are highly regarded and highly experienced in the field of prosecuting federal securities class actions.  As the court held in *Lyons v. Marrud, Inc.*, No. 66 Civ. 415, 1972 WL 327, at *2 (S.D.N.Y. June 6, 1972), "[e]xperienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary.  The parties' decision regarding the respective merits of their positions has an important bearing on this case."  In Class Counsel's view, the Settlement

provides substantial benefits to the Settlement Class, especially considering the expense, risks, difficulties, delays, and uncertainties of expert discovery, summary judgment, trial, and post-trial proceedings.

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the case prior to the agreement to settle.  Having completed discovery, Plaintiffs reviewed thousands of pages of documents produced by Defendants and took eleven depositions including those of Defendants Och and Frank.  Further, Plaintiffs engaged their own damages and accounting experts, and had the benefit of Defendants' mediation statement setting forth their arguments and defenses on Plaintiffs' theories of liability, damages, loss causation and ability to pay.  As a result, Lead Plaintiffs and Plaintiffs' Counsel had an ample basis for assessing the strength of the Settlement Class's claims and Defendants' defenses when they entered into the Settlement.

The Settlement does not provide preferential treatment to Plaintiffs or any other Settlement Class Members. The proposed Plan of Allocation, which is set forth on pages 4-9 of the Notice and was developed by Plaintiffs' damages expert in consultation with Plaintiffs' Counsel, provides a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class Members who submit valid Claim Forms.  The Net Settlement Fund will be allocated to Authorized Claimants on a pro rata basis based on the relative size of their Recognized Claims.  Similar plans have repeatedly been approved by Courts in this District.  *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386–87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145–46 (S.D.N.Y. 2010).

For all these reasons, the Settlement was the product of a thorough, arm's length process, and as such, enjoys a presumption of fairness.  *See Thompson v. Metro. Life Ins. Co.*, 216 F.R.D.

55, 61 (S.D.N.Y. 2003) ("A strong presumption of fairness attaches to proposed settlements that have been negotiated at arms-length.").

### C.      The Settlement Benefit Falls within the Range of Possible Approval

At the Settlement Hearing, in determining whether a settlement is fair, reasonable, and adequate, the Court will decide whether to approve the settlement under the factors articulated in *Grinnell*:  (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  495 F.2d at 463.  All nine factors need not be satisfied; rather, the Court should consider the totality of these factors in light of the particular circumstances.  *Thompson*, 216 F.R.D. at 61.

At the Preliminary Approval stage, however, the Court need not determine whether the Settlement should be approved.  Rather, if the Court finds that the Settlement is "within the range of possible approval" that might be approved under *Grinnell*, it should then order that the Class be notified of the Settlement and given an opportunity to be heard, and that the Settlement Hearing be held.  *See Manual for Complex Litigation* (Fourth) § 40.42 (model preliminary approval order).   Here, the Settlement substantially satisfies the test announced by *Grinnell*. Therefore, the Court should grant preliminary approval.

### (i)      The Complexity, Expense and Likely Duration of the Litigation

The proposed Settlement provides the Settlement Class with substantial and certain relief, without the delay and expense of expert discovery and summary judgment, trial, and post-trial

proceedings.   Due to the inherent complexity of securities litigation, and particularly the stringent requirements imposed by the Private Securities Litigation Reform Act of 1995's ("PSLRA") amendments to the Exchange Act, as well as supervening case law developments, including the Supreme Court's recent decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 189 L. Ed. 2d 339 (2014), prosecution of securities class action litigation is inherently complex and lengthy.   Had this Action continued it would have proceeded to expert discovery, summary judgment and then trial.   Trial would have been particularly expensive and risky.   The jury would then have had to determine: (i) whether the alleged representations/omissions were material; (ii) whether Defendants acted with scienter; (iii) whether OZM's stock traded on an efficient market, entitling Plaintiffs to a presumption of reliance; and (iv) what was the artificial inflation of OZM's stock and how much of the price declines were attributable to what Plaintiffs allege were the disclosures of information correcting the alleged false statements.   Further, not only would *any* recovery be very uncertain, considering the near-certainty of appeals, it would inevitably be delayed by years.

### (ii)   The Stage of the Proceedings

In this Action, the proceedings were at a very advanced stage, providing Plaintiffs with a thorough understanding of the strengths and weaknesses of the Class's claims.   Plaintiffs conducted an investigation prior to filing the Complaint; prepared the First Amended Complaint and Second Amended Complaint after performing additional investigation; Opposed Defendants' Motions to Dismiss both the FAC and SAC; Briefed several discovery motions, and a motion for class certification; consulted with experts in the fields of damages and accounting; engaged in extensive discovery which included review of thousands of pages of documents, the issuance of third party subpoenas, and eleven fact depositions along with the deposition of Defendants' market efficiency expert.   By the time the Proposed Settlement was reached, all of the above

illuminated the relative strengths and weaknesses of the parties' positions. Indeed, such extensive litigation is beyond what Courts find necessary for parties to make intelligent decisions on settlement.  *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001) ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery.  Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted).

### (iii)   The Risks of Establishing Liability and Damages

There were substantial risks in prosecuting this Action, and further prosecution of this Action to trial may have yielded limited or no recovery.  Although Plaintiffs believe that the merits of the case are strong, securities cases in general are risky to undertake.  It is possible that after a costly trial and years of litigation Defendants would not be able to pay a large amount after trial given the potential exhaustion of Defendants' insurance policy by the time any trial concluded.  If the Settlement was not reached, the parties would have to incur substantial additional costs through expert discovery, summary judgment, trial and if applicable, subsequent appeals.  Additional costs would be significant and could be in the multi-million dollar range for Plaintiffs.  It is possible that these costs could exceed the value Defendants would have been able to pay after having expended significant funds on years of litigation.

### (iv)   Reasonableness of the Settlement Fund

The Stipulation provides for the Settlement Amount of $28.75 million to be paid into the Settlement Fund.  Plaintiffs' consultation with their expert indicated that, based on the allegations in the Complaint that the Court sustained, class-wide damages were approximately $166 million.  As compared to this range of damages, the Settlement represents an excellent result:  17.3% of estimated damages.  As such, the settlement far exceeds the range of possible

approval.  *Grinnell*, 495 F.2d at 455 n.2 ("In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); Cornerstone Research, Securities Class Action Settlement 2017 Review and Analysis, at page 8 figure 7 (noting that in 2017, securities settlements overall returned a median of 5% of damages, with 2.9% where damages are between $150-$249 million).

(v)      **The Plan of Allocation is Reasonable**

The Plan of Allocation for distributing the proceeds of the Net Settlement Fund (after the payment of attorneys' fees and expenses, awards for Class Plaintiffs, costs of administration, taxes, any payment under 15 U.S.C. § 78u-4(a)(4), and any other court-approved payments) is described at length in the Notice, attached to the Stipulation at Exhibit A-1.  It was devised with the assistance of an experienced damages consultant, taking into account Och-Ziff's stock price movements during the Class Period.  Whether a Class Member has sustained a loss that will entitle the Class Member to recover from the Settlement Fund will depend on the calculation of a "recognized loss" for that Class Member.

The proposed Plan of Allocation is based on Plaintiffs' theory of the case and reflects their contention that the price of OZM stock was artificially inflated during the Class Period. There is no reason to doubt the fairness of the proposed Plan of Allocation for purposes of preliminary approval.  Even at the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel."  *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (citation omitted).

## IV.   THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE23(C)(2)(B)

When a settlement is proposed, class notice must meet the requirements of both Rules 23(c)(2) and 23(e). *See In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d at 379-80. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors,* 559 F. App'x 22, 26 (2d Cir. 2014) (finding delivery of notice by first class mail to be reasonable).  In addition to being sent by an adequate delivery method, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 7961 CM, 2014 WL 1224666, at *17 (S.D.N.Y. Mar. 24, 2014) ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). Notice is adequate "if the average person understands the terms of the proposed settlement and the options provided to class members thereunder." *Wal-Mart Stores, Inc.*, 396 F.3d at 114.

The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.") (internal citations omitted).

Here, the Proposed Order for Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), attached as Exhibit A to the Stipulation, mandates that within 10 Business Days of the Court's order preliminarily approving the Settlement, Class Counsel shall provide notice to Settlement Class Members through mailing of the proposed

Notice to all identifiable Settlement Class Members, substantially in the form annexed as Exhibit A-1 to the Preliminary Approval Order, together with a copy of the Proof of Claim and Release, substantially in the form annexed as Exhibit A-2 to the Preliminary Order.

The proposed Notice provides detailed information concerning (a) the rights of Settlement Class Members, including the manner in which objections could be lodged; (b) the nature, history, and progress of the Litigation; (c) the proposed Settlement; (d) the process for filing a Proof of Claim; (e) a description of the proposed Plan of Allocation; (f) the fees and expenses to be sought by Class Counsel; and (g) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name.

No later than ten calendar days after mailing of the Notice, Class Counsel shall cause the Summary Notice, substantially in the form annexed as Exhibit A-3 to the Preliminary Approval Order, to be published in a national business internet newswire.

The content of the proposed Settlement and Notices are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950). In addition, the proposed method of notice described above, specifically mailing and publication, satisfies the requirements of Rule 23, the PSLRA, and due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974); *see also Krangel v. Golden Rule Resources, Ltd.*, 194 F.R.D. 501, 505 (E.D. Pa. 2000) ("The mailing of the notice to identifiable class members and major financial institutions and publication of the summary notice in *The Wall Street Journal* and *The Globe and Mail* was the best means practicable to notify class members and, thus, satisfies Rule 23.").

### V.   PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule of events leading to the Settlement Hearing as set forth in the Preliminary Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Mailing of the Notice and Proof of Claim and Release. | No later than ten (10) business days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶5(a).) |
| Publication of the Summary Notice. | No later than ten (10) calendar days after mailing of the Notice. (Preliminary Approval Order ¶5(b).) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses. | No later than thirty (30) calendar days prior to the Final Approval Hearing. (Preliminary Order ¶11.) |
| Filing deadline for requests for exclusion. | No later than fourteen (14) calendar days prior to the Final Approval Hearing. (Preliminary Order ¶10.) |
| Filing deadline for objections. | No later than fourteen (14) calendar days prior to the Settlement Hearing (Preliminary Order ¶9.) |
| Filing deadline for Claim Forms. | No later than seven (7) calendar days before the Final Approval Hearing (Preliminary Order ¶8(a)) |
| Date for Plaintiffs to file reply papers in support of the Settlement, the Plan of Allocation, and for application of attorneys' fees and expenses. | No later than seven (7) calendar days prior to the Final Approval Hearing. (Preliminary Approval Order ¶11.) |

This schedule is similar to those used in numerous class action settlements and provides due process for the putative Settlement Class Members with respect to their rights concerning the Settlement.

The Court should schedule the Final Approval at least one-hundred (100) days after entering the Preliminary Approval Order in order for there to be sufficient time for mailing the Notice and Proof of Claim and Release, publishing Summary Notice, filing Proofs of Claim, making requests for exclusion, filing the motion in support of final approval of the Settlement

and the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses, making objections, filing the reply in support of final approval, and reviewing the requests for exclusion.

### VI.    CONCLUSION

Counsel for the Settling Parties have reached this Settlement following extensive discussions and arm's-length negations. At this juncture, the Court need not answer the ultimate question: whether the Settlement is fair, reasonable, and adequate. The Court is being asked to permit notice of the terms of the Settlement to be sent to the Settlement Class and to schedule a hearing to consider any views expressed by the putative Class Members, the fairness of the Settlement, and Class Counsel's request for an award of attorneys' fees and reimbursement of expenses. *Moore*, *supra*, § 23.83[1], at 23-336.2 to 23-339. We respectfully submit that the Settlement should be preliminary approved and the proposed order entered.

For all the above-stated reasons, Plaintiffs request that the Court: (1) preliminarily approve the Settlement under the terms set forth in the Settlement Stipulation; (2) approve the form and manner of Notice; and (3) set a Final Approval Hearing date for final approval of the proposed Settlement.

Dated: October 2, 2018                              Respectfully submitted,

                                                    By: /s/ *Sara Fuks*

                                                    **THE ROSEN LAW FIRM, P.A.**
                                                    Laurence M. Rosen
                                                    Sara Fuks
                                                    275 Madison Ave., 34th Floor
                                                    New York, New York 10016
                                                    Telephone: (212) 686-1060
                                                    Fax: (212) 202-3827
                                                    Email: lrosen@rosenlegal.com
                                                    Email: sfuks@rosenlegal.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

Jeremy A. Lieberman
Michele S. Carino
**POMERANTZ LLP**
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100

*Counsel for Lead Plaintiffs and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 2, 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By: <u>*/s/ Sara Fuks*</u>
Sara Fuks

19