**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Sara Fuks
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: sfuks@rosenlegal.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

*Class Counsel for Class Representatives and the Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTHUR MENALDI, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff(s), <br><br> -against- <br><br> OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC, DANIEL S. OCH, and JOEL M. FRANK, <br><br> Defendants. | Civil Action No. 14 Civ. 3251 (JPO) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** |

## **TABLE OF CONTENTS**

I.     BACKGROUND ................................................................................................. 3

       A.     The Litigation.......................................................................................... 4

       B.     The Settlement ........................................................................................ 8

              1.     Cash Consideration and Release .................................................. 8

              2.     Notice to the Class ....................................................................... 9

              3.     Exclusion and Objection Deadline................................................ 9

              4.     The Plan of Allocation ................................................................. 9

II.    ARGUMENT ................................................................................................... 10

       A.     Final Approval of Proposed Class Action Settlement .......................... 10

              1.     Certification for Settlement Class is Appropriate...................... 10

              2.     Final Approval of the Settlement Should be Granted Because the
                     Proposed Settlement is Fair, Adequate and Reasonable Under the
                     Second Circuit's *Grinnell* Factors ........................................... 11

       B.     Approval of the Plan of Allocation Is Warranted ................................. 21

III.   NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS......... 22

IV.    CONCLUSION.................................................................................................. 24

## TABLE OF AUTHORITIES

### Cases

*Chatelain v. Prudential-Bache Sec., Inc.*,

   805 F. Supp. 209 (S.D.N.Y. 1992) ......................................................................... 13

*City of Detroit v. Grinnell Corp.*,

   495 F.2d 448 (2d Cir. 1974).......................................................................... 12, 14, 18

*Crossing Sec. & ERISA Litig.*,

   225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................................ 22

*Dura Pharm., Inc. v. Broudo*,

   544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)................................... 10, 22

*Eisen v. Carlisle & Jacquelin*,

   417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974), 417 U.S. 156 (1974) ........................ 22

*Granada Investments, Inc. v. DWG Corp.*,

   962 F.2d 1203 (6th Cir. 1992) ................................................................................ 17

*Hammon v. Barry*,

   752 F. Supp. 1087 (D.D.C. 1990) ............................................................................ 14

*In re "Agent Orange" Prod. L*iab. Litig.,

   611 F. Supp. 1396 (E.D.N.Y. 1985) ........................................................................ 19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,

   298 F.R.D. 171 (S.D.N.Y. 2014) ....................................................................... 17, 24

*In re Am. Bank Note Holographics, Inc.*,

    127 F. Supp. 2d 418 (S.D.N.Y. 2001).......................................................................... 13, 16, 20

*In re AT&T Corp. Sec. Litig.*,

    455 F.3d 160 (3d Cir. 2006)........................................................................................... 18

*In re China Sunergy Sec. Litig.*,

    No. 07 CIV. 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................. 18

*In re Crocs, Inc. Sec. Litig.*,

    306 F.R.D. 672 (D. Colo. 2014) .................................................................................... 20

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,

    No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..................................... 11

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,

    142 F.R.D. 588 (S.D.N.Y. 1992) .................................................................................... 16

*In re Mannkind Corp. Sec. Litig.*,

    No. CV 11-0929 GAF (SSX), 2012 WL 13008151 (C.D. Cal. Dec. 21, 2012) ....................... 20

*In re Merrill Lynch Tyco Research Sec. Litig.*,

    249 F.R.D. 124 (S.D.N.Y. 2008) .................................................................................... 11

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,

    187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................................... 14

*In re Oracle Sec. Litig.*,

    No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ....................................... 22

*In re PaineWebber Ltd. P'ships Litig.*,

    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................. 16, 18, 21

*In re Salomon Inc Sec. Litig.*,

    No. 91 CIV. 5442 (RPP), 1994 WL 265917 (S.D.N.Y. June 16, 1994).................................. 21

*In re Sumitomo Copper Litig.*,

    189 F.R.D. 274 (S.D.N.Y. 1999) ................................................................. 12, 20

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,

    718 F. Supp. 1099 (S.D.N.Y. 1989)................................................................. 18

*In re Warner Commc'ns Sec. Litig.*,

    618 F. Supp. 735 (S.D.N.Y. 1985) ................................................................. 15, 16

*In re Warner Commc'ns Sec. Litig.*,

    798 F.2d 35 (2d Cir. 1986)................................................................. 12

*Maywalt v. Parker & Parsley Petroleum Co.*,

    67 F.3d 1072 (2d Cir. 1995)................................................................. 11

*Olden v. LaFarge Corp.*,

    472 F. Supp. 2d 922 (E.D. Mich. 2007)................................................................. 14

*Slomovics v. All for a Dollar, Inc.*,

    906 F. Supp. 146 (E.D.N.Y. 1995) ................................................................. 13

*Stieberger v. Sullivan*,

    792 F. Supp. 1376 (S.D.N.Y. 1992)................................................................. 13

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,

   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................ 11, 14

*Trief v. Dun & Bradstreet Corp.*,

   840 F. Supp. 277 (S.D.N.Y. 1993) ........................................................................ 11

*Varljen v. H.J. Meyers & Co.*,

   No. 97 CIV 6742 (DLC), 2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) ................................. 11

*Velez v. Novartis Pharm. Corp.*,

   No. 04 CIV 09194 CM, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................. 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

   396 F.3d 96 (2d Cir. 2005) ................................................................................ 11, 20

*Weinberger v. Kendrick,*

   698 F.2d 61 (2d Cir. 1983) ................................................................................ 11

**<u>Rules</u>**

Fed. R. Civ. P. 23 ................................................................................................ 10

Fed. R. Civ. P. 23(a) ............................................................................................ 10

Fed. R. Civ. P. 23(b)(3) ........................................................................................ 10

Fed. R. Civ. P. 23(c) ............................................................................................ 17

Fed. R. Civ. P. 23(c)(1) ........................................................................................ 17

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 22, 24

Fed. R. Civ. P. 23(e) ................................................................................................ 11

Fed. R. Civ. P. 23(e)(1) ............................................................................................ 22

**Other Authorities**

4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 at 87-89 (4th ed. 2002) . 21

*Manual for Complex Litigation, Third*, § 30.42 (1995) ................................................. 20

*Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* at 38, Fig. 29

   https://www.nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0

   118_final.pdf ......................................................................................................... 19

*Securities Class Action Settlement 2016 Review and Analysis* (2016) at 8, Fig. 7

   http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-

   Review.pdf ............................................................................................................ 19

**INTRODUCTION**

Class Representatives Ralph Langstadt ("Langstadt") and Julie Lemond ("Lemond" and with Langstadt, "Class Representatives" or "Plaintiffs"), on behalf of themselves and the Settlement Class[1], respectfully submit this memorandum in support of the motion for final approval of the proposed settlement.[2]

The Settlement, which seeks to resolve this litigation in its entirety between Class Representatives and Defendants Och-Ziff Capital Management Group LLC ("OZM" or the "Company"), Daniel S. Och ("Och"), and Joel M. Frank ("Frank") (collectively, "Defendants" and with Class Representatives, the "Parties"), provides for a cash fund of $28,750,000. This is an excellent result as it recovers between 17.3% and 28.3% of estimated damages. The Settlement is eminently fair, reasonable, and adequate as it was reached as a result of arm's-length negotiations among the Parties aided by nationally recognized mediator and retired federal judge the Hon. Layn Phillips (Ret.) of Phillips ADR. Given the advanced procedural stage of the action as well as the time and effort expended to prosecute this action, Counsel had an in-depth understanding of the strengths and weaknesses of the case. For these reasons and those set forth below, Class Representatives respectfully submit that the proposed Settlement strongly warrants approval by this Court as fair, reasonable, and adequate.

---

[1] "Settlement Class" means "all persons other than Defendants who purchased OZM securities between February 9, 2012 and August 22, 2014, both dates inclusive." (Dkt. ##186, 193). Excluded from the class are "Defendants, current and former officers and directors of Och-Ziff, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest." (Dkt. #186).

[2] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement (the "Stipulation"), filed with the Court on October 2, 2018 (Dkt. #190).

Additionally, as explained herein, the Plan of Allocation of the Net Settlement Fund was formulated by experienced counsel in consultation with a damages consultant and comports with loss causation principles. Accordingly, the Plan of Allocation is fair and reasonable and should be approved.

Pursuant to the Court's Preliminary Approval Order (Dkt. #193), 68,689 copies of the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Final Approval Hearing (the "Notice") and Proof of Claim and Release Form ("Claim Form" and with the Notice, the "Notice and Claim Form") were mailed to potential Class Members, brokers, and nominee holders. *See* Declaration of Sarah Evans Concerning the Mailing of the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Final Approval Hearing and Proof of Claim and Release ("Evans Decl." or "Evans Declaration") at ¶6.[3] Copies of the Notice and Claim Form are attached to the Evans Declaration as Exhibit A.

On October 26, 2018, the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") was disseminated electronically over *GlobeNewswire.* Evans Decl. ¶9. Requests for exclusion must be received by the Claims Administrator by January 2, 2019. No requests for exclusion have yet been received. Evans Decl. ¶11; Joint Decl. ¶67. Objections to the Settlement must be received by January 2, 2019. There have been no objections to any aspect of the Settlement. Evans Decl. ¶12; Joint Decl. ¶68.

---

[3] The Evans Declaration is attached as Exhibit 1 to the Joint Declaration of Laurence M. Rosen and Patrick V. Dahlstrom In Support of Class Representatives' Motions For: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Class Representatives ("Joint Decl." or "Joint Declaration").

## I.      BACKGROUND

OZM is the largest publicly traded institutional asset management firm, managing assets of over $45.9 billion as of June 2014. ¶2[4]. OZM attributed its success to its conservative reputation and ability to deliver steady returns as a stable and safe steward for investors. OZM touted to investors that it had a robust global compliance program to address legal and regulatory requirements of its company-wide operations. *Id.* However, beginning in or around 2008, and continuing until 2016, Defendants were engaged in a pervasive, illegal bribery scheme and cover-up in which Defendants paid or facilitated payments of bribes to foreign government officials in exchange for hundreds of millions of dollars of business in Africa in violation of the Foreign Corrupt Practices Act ("FCPA"). ¶3.

In 2011, this bribery scheme prompted regulatory investigation by both the U.S. Securities and Exchange Commission ("SEC") and the U.S. Department of Justice ("DOJ"). ¶4. The truth about the SEC and DOJ investigations came to light in a series of disclosures several years later. On February 3, 2014, *The Wall Street Journal* reported some of the facts that Defendants had long concealed or denied, including that the DOJ was investigating OZM regarding possible FCPA violations in connection with its dealing in Libyan Investment Authority ("LIA"), a sovereign wealth fund, and that the DOJ's criminal probe was proceeding alongside a civil probe by the SEC which had begun in 2011. On this news, shares of OZM stock fell $0.90 or 6.7%, to close at $13.04 on heavy volume, damaging investors.  ¶¶242-243.

On March 18, 2014, OZM filed a restated Form 10-K with the SEC for the year ending December 31, 2013 (the "2013 10-K"). The 2013 10-K disclosed for the first time OZM's receipt of subpoenas and requests for information from the SEC and DOJ as early as 2011 relating to the

---

[4] Citations to "¶__" are to the Consolidated Second Amended Class Action Complaint ("SAC") (Dkt. No. 76).

Company's questionable dealings in Africa in relation to violations of the FCPA. The 2013 10-K did not explicitly state it was OZM's dealings with the LIA that the governmental investigations were focused, but on March 19, 2014, *Bloomberg News* reported that the LIA was the "foreign sovereign wealth fund" to which the 2013 10-K discussed. On this news, OZM's shares fell 3.5% or $0.49, on heavy trading volume, to close at $13.71 on March 19, 2014. ¶¶244, 246-247.

Then on April 27, 2014, *The Wall Street Journal* revealed additional details concerning OZM's investments in Africa that were the subjects of the SEC and DOJ investigations. This information was about two loans, totaling $234 million, to help finance two ventures in Congo involving properties that were subject to ownership disputes. On this news, shares of OZM stock fell by $1.28, almost 10% on heavy trading volume, to close at $11.65 on April 28, 2014 – the biggest daily drop in OZM's stock price in almost five years. ¶¶248-249. Further, on August 22, 2014, *Bloomberg Businessweek* published an article which described how OZM was financing political intimidation and violence in the 2008 Zimbabwe election by investing in a mining company that engaged Robert Mugabe to violently crush opposition to his dictatorial regime. On this news, OZM's stock price fell 7%, or $0.86 per share. ¶250. Finally, on April 11, 2016, *The Wall Street Journal* reported that the DOJ wanted OZM to plead guilty and the SEC was seeking $400 million in civil penalties based upon what they believed was the Company's illegal conduct. On this news, OZM stock fell by approximately 13.2% on extraordinarily heavy trading volume. These announcements caused OZM's stock price to lose considerable value during the Class Period and damaged investors. ¶253.

### A.   The Litigation

This litigation was commenced on May 5, 2014, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against OZM, Och, and Frank. (Dkt. #1). On

September 24, 2014, Langstadt and Lemond were appointed Lead Plaintiffs and The Rosen Law Firm, P.A. and Pomerantz LLP were appointed Co-Lead Counsel (Dkt. #16).

On November 24, 2017, Lead Plaintiffs filed the First Consolidated Amended Class Action Complaint (the "FAC") (Dkt. #17). The FAC added Michael Cohen ("Cohen") as a defendant and a claim for scheme liability. On March 16, 2015, Defendants moved to dismiss the FAC (Dkt. ##23-27). Lead Plaintiffs filed their opposition to Defendants' motion to dismiss on May 29, 2015 (Dkt. #32) and Defendants filed their reply on July 2, 2015 (Dkt. #33).

On February 17, 2016, the Court granted in part and denied in part Defendants' motion to dismiss, holding that the FAC adequately alleged that OZM made actionable misstatements about the existence and risks of regulatory proceedings (Dkt #39). On March 2, 2016, Defendants moved for partial reconsideration of the Court's February 17, 2016 Order (Dkt. #40), which Lead Plaintiffs opposed on April 8, 2016 (Dkt. # 52). The Court denied Defendants' motion for reconsideration on May 6, 2016 (Dkt. #56).

Thereafter, the Parties engaged in extensive discovery which included propounding document requests and interrogatories. The Parties met and conferred concerning discovery protocol and the parameters of Defendants' document production, but were unable to resolve their disputes, resulting in Lead Plaintiffs filing a letter motion to compel on September 27, 2016 (Dkt. No. 68). The Court ultimately granted in part and denied in part Lead Plaintiffs' letter motion.  (Dkt. No. 147).

On August 9, 2016, Lead Plaintiffs moved for certification of a class comprised of all persons other than Defendants who purchased OZM securities between February 9, 2012 and August 22, 2014, both dates inclusive (Dkt. #60).  Prior to the completion of class certification briefing, and after learning of OZM's entry into the Deferred Prosecution Agreement with the

DOJ and SEC Cease and Desist Order, Lead Plaintiffs informed Defendants of their intention to seek to amend their complaint. Defendants' stipulated to Lead Plaintiffs filing a second amended complaint, and on October 14, 2016, the Court entered a stipulated proposed order (Dkt. #71) under which Defendants consented to Lead Plaintiffs' filing of the Consolidated Second Amended Class Action Complaint (the "SAC"), without waiving and expressly reserving Defendants' rights to move against any amended pleading filed in the case, and the parties agreed upon a briefing schedule for Defendants' anticipated motion to dismiss the SAC.

On November 18, 2016, the SAC was filed (Dkt. #76) which contained detailed allegations concerning OZM's Deferred Prosecution Agreement and the SEC Order as well as allegations concerning Defendants' accounting practices under FAS 5 and ASC 450.  On January 7, 2017, Lead Plaintiffs filed a motion for leave to renew claims against Cohen (Dkt. #86).

Thereafter, pursuant to the Court's request, the parties filed letter briefs concerning the issue of whether or not discovery should be stayed pursuant to the PSLRA during the pendency of Defendants' motion to dismiss the SAC, with Lead Plaintiffs taking the position that discovery should continue and Defendants taking the position that discovery should be stayed pending the Court's resolution of Defendants' then anticipated motions to dismiss the SAC.

On January 11, 2017, Defendants OZM, Och, and Frank, who were now being represented by three separate law firms, each filed a motion to dismiss portions of the SAC that sought to revive previously dismissed claims or asserted new claims (Dkt. ##96, 100, 103).  Lead Plaintiffs filed an omnibus opposition to Defendants' motions to dismiss on March 24, 2017 (Dkt. # 127).

On September 29, 2017, the Court granted the motions filed by Defendants OZM, Och, and Frank to dismiss the previously dismissed claims and any newly asserted claims; and denied

Lead Plaintiffs' motion for leave to renew claims against Cohen (Dkt. #136), essentially leaving intact the existing claims in the case.  On November 10, 2017, Defendants OZM, Och, and Frank filed their Answers to the SAC (Dkt. ## 130, 140, 145). That same day OZM filed its opposition to Lead Plaintiffs' motion for class certification (Dkt. ##143-144), with Och and Frank filing letters to the Court advising that they were joining in OZM's opposition brief (Dkt. ##141-142). Lead Plaintiffs thereafter completed discovery from Defendants' class certification expert and filed reply papers in further support of their motion for class certification (Dkt. ##152-53).

After the Court's ruling on Defendants' motions to dismiss the SAC, the Parties resumed fact discovery. Defendants substantially completed document production at the end of March 2017.  Non-party Ernst & Young, OZM's auditor during the Class Period, likewise produced documents pursuant to a subpoena. Lead Plaintiffs issued numerous other non-party subpoenas to OZM's insurers and several law firms.  Fact discovery was completed on June 4, 2018.

On September 14, 2018, the Court granted Lead Plaintiffs' motion for class certification, certifying a class of plaintiffs consisting of all persons (other than Defendants) who purchased OZM securities between February 9, 2012 and August 22, 2014, inclusive; appointing Langstadt and Lemond as Class Representatives and approving Pomerantz LLP and The Rosen Law Firm, P.A. as Class Counsel (Dkt. # 186).

On October 2, 2018, Class Representatives moved for preliminary approval of the proposed settlement (Dkt. #191). On October 3, 2018, the Court entered the Preliminary Approval Order (Dkt. #193). On October 4, 2018, the Court scheduled the final approval hearing for January 16, 2019 at 11:00 a.m. (Dkt. #195). The Claims Administrator provided notice of the preliminary settlement to class members.

**B.** **The Settlement**

The Parties engaged in protracted and hard-fought negotiations with respect to a compromise and settlement of the Action. The Parties participated in two mediation sessions with Judge Layn Phillips (Ret.). Prior to the mediation sessions, the Parties exchanged detailed mediation statements and replies. The first session, on July 11, 2016, was unsuccessful. The second session, on June 8, 2018, occurred nearly two years after the first mediation session and after the close of fact discovery. A settlement was not reached at the second session either, but negotiations were ongoing with the continued assistance of Judge Phillips. Eventually the parties accepted a mediator's proposal to settle the action. Joint Decl. ¶51.

On October 2, 2018, Class Representatives filed the motion for preliminary approval which included the settlement agreement and proposed notices to the Class. (Dkt. ##190-192). On October 3, 2018, the Court entered the Preliminary Approval Order. (Dkt. # 193). After, the Claims Administrator provided notice of the preliminary settlement to class members. The Final Approval Hearing is scheduled for January 16, 2019 at 11:00 a.m. (Dkt. #95).

**1.** **Cash Consideration and Release**

The Settlement provides for a payment of $28,750,000 in cash to pay claims of investors who purchased OZM Class A Shares between February 9, 2012 and August 22, 2014, both dates inclusive.  If the Settlement is finally approved by the Court, Class Representatives, on behalf of the Class, will forever release their claims alleged against Defendants. The Settlement represents an average recovery of $0.415 per share of OZM for the estimated 69.2 million shares allegedly damaged OZM Class A Shares purchased during the Settlement Class Period.  *See* Evans Decl. (Ex. 1 to the Joint Decl.) Ex. A. page 1.  After deduction of the requested attorneys' fees and expenses and award to Class Representatives, the Settlement represents an average recovery of $0.285 per share.

### 2.      Notice to the Class

Pursuant to the Preliminary Approval Order, Notice was mailed to potential Class Members, brokers, and nominee holders. Evans Decl. ¶¶3-9. The Notice advised Class Members of the terms of the Settlement and Plan of Allocation; that Class Counsel would seek a fee award not to exceed one-third of the Settlement Amount, expenses not to exceed $500,000, and an award to Class Representatives of $5,000 each (or $10,000 in total); and that any objections to any aspect of the Settlement or to the fee and expense request were due to be postmarked no later than January 2, 2019. Evans Decl. Ex. A.

As of the date of this writing, 68,689 copies of the Notice were mailed to Class Members. Evans Decl. ¶6. The Notice and Proof of Claim were also posted on the Claims Administrator's website at www.strategicclaims.net. Evans Decl. ¶7. The website also provides a link for online claim filing and lists important deadlines. *Id.* Additionally, the Claims Administrator disseminated the Summary Notice electronically over *GlobeNewswire*. Evans Decl. ¶9.

### 3.      Exclusion and Objection Deadline

Requests for exclusion must be postmarked by January 2, 2019.  As of December 17, 2018, there have been no requests for exclusion. Evans Decl. ¶11; Joint Decl. ¶67. Objections to the Settlement must be received by the Court and counsel by January 2, 2019. As of this writing there have been no objections to any aspect of the Settlement. Evans Decl. ¶12; Joint Decl. ¶68.

### 4.      The Plan of Allocation

The Plan of Allocation is described in the Notice sent to the members of the Class, at pages 4-7 thereof. Evans Decl., Ex. A. It was formulated by Class Counsel, upon consultation with a damages consultant, with the goal of reimbursing Class Members in a fair and reasonable manner consistent with the federal securities laws and the principles of loss causation. To that end, the Plan of Allocation does not compensate losses resulting from "in and out" transactions,

9

*i.e.* losses from sales made prior to revelation of the truth. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). The Plan of Allocation requires any gains from Class Period transactions to be netted with losses from Class Period transactions, which is rational and reasonable. Once these considerations are taken into account, the Plan of Allocation provides that each authorized claimant will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Lead Plaintiffs). *See* Joint Decl. ¶¶72-75.

## II.   ARGUMENT

### A.   Final Approval of Proposed Class Action Settlement

#### 1.   Certification for Settlement Class is Appropriate

The Court has ruled on two separate occasions, in its Opinion and Order granting class certification (Dkt. #186) and in the Preliminary Approval Order (Dkt. #193), that the requirements of class certification under Fed. R. Civ. P. 23 have been satisfied. Federal Rule of Civil Procedure 23(a) provides that a movant must meet four requirements to be entitled to class certification: numerosity, commonality, typicality, and adequacy of representation. In addition, Rule 23(b)(3) provides that the movant must show both (i) that common questions predominate over any questions affecting only individual members, and (ii) that class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.

The Class was certified as to "all persons other than Defendants who purchased OZM securities between February 9, 2012 and August 22, 2014, both dates inclusive." (Dkt. ## 186, 193). No changes have occurred since the issuing the Order and Opinion granting class certification or the entry of the Preliminary Approval Order. Thus the Court should finally certify this as a class action for the purposes of the Settlement.

    2.    **Final Approval of the Settlement Should be Granted**
           **Because the Proposed Settlement is Fair, Adequate and**
           **Reasonable Under the Second Circuit's *Grinnell* Factors**

As a matter of public policy, courts strongly favor the settlement of lawsuits. *Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1983). This is particularly true in connection with complex class action litigation. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). When evaluating a proposed settlement under Fed. R. Civ. P. 23(e), a court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate, and was not the product of collusion. *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995); *Varljen v. H.J. Meyers & Co.*, No. 97 CIV. 6742 (DLC), 2000 WL 1683656, at *3 (S.D.N.Y. Nov. 8, 2000); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008). A proposed class action settlement enjoys a presumption of fairness where, as here, it was the product of arm's-length negotiations conducted by capable counsel who are well-experienced in class action litigation arising under the federal securities laws. *See, e.g., In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) (citation omitted). The principal factors in evaluating the fairness of a proposed settlement in the Second Circuit are well-settled:

    (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible

recovery, [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). In weighing these factors, courts recognize that settlements usually involve a significant amount of give and take between the negotiating parties; therefore courts do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement."). Class Counsel submit that the proposed settlement is fair, reasonable and adequate when measured under the foregoing criteria and should be approved by this Court.

### a.      Complexity, Expense and Likely Duration of the Litigation

Prior to settling this action, Class Representatives and their counsel had a thorough understanding of the action, and the strengths and weaknesses of the Parties' respective positions. Particularly in light of the stringent pleading requirements imposed by the PSLRA's amendments to the Exchange Act, securities class actions are particularly "difficult and notoriously uncertain" with respect to both liability and damages issues. *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999). While Class Counsel believes the claims alleged in the SAC are valid and provable, uncertainty in litigation always remains even when surviving motions to dismiss.

The complexity of Class Representatives' claims weighs in favor of the Settlement. As further explained *infra*, this action presents a mosaic of issues: whether the alleged statements were false, whether they were known or knowable when the alleged misstatements were made, and whether the alleged false and misleading statements were the cause of the Class Members'

losses. Although Class Representatives are confident in their claims, they recognize that there are many uncertainties to prove their claims if this case were to proceed.

The Settlement avoids even further litigation that would not necessarily lead to a greater recovery for the Class. *See Slomovics v. All for a Dollar, Inc.*, 906 F. Supp. 146, 149 (E.D.N.Y. 1995) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class."); *see also Stieberger v. Sullivan*, 792 F. Supp. 1376, 1377 (S.D.N.Y. 1992); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 213 (S.D.N.Y. 1992).

This action has already been pending for over four years. In that time, Class Representatives successfully defeated Defendants' motions to dismiss and request for reconsideration, obtained class certification, and engaged in extensive discovery including reviewing thousands of pages of documents and taking eleven depositions. Even at this late point in the litigation, summary judgment and trial would be expensive and risky. Not only would *any* recovery be very uncertain, considering the near-certainty of appeals, it would inevitably be delayed by years.

At this point in the litigation, Class Representatives faced the substantial additional obstacles of summary judgment and trial. Scienter is notoriously difficult to prove in securities-fraud cases. *See In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). While Class Representatives are confident in the claims, a jury may have found that Defendants' conduct amounted to corporate mismanagement and negligence instead of recklessness. Similarly, with respect to loss causation and damages, a jury may have found that OZM's stock price declined not just because of the alleged fraud, but also because of broader investor concerns over mismanagement or corporate strategy.

13

Even if Class Representatives prevailed on all of the securities-fraud elements at trial and secured damages, a significant hurdle remained: collecting the judgment from Defendants. Defendants' funds available to satisfy a judgment in this Action would be severely limited.  Joint Decl. ¶60.

### b.      Adequate Notice and Reaction of the Class

Courts repeatedly hold that "one indication of the fairness of a settlement is the lack of or small number of objections." *Strougo*, 258 F. Supp. 2d at 258 (citing *Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C. 1990)); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 478–80 (S.D.N.Y. 1998) (approving settlement where "minuscule" percentage of the class objected); *Grinnell,* 495 F.2d at 462 (approving settlement where 20 objectors appeared from group of 14,156 claimants); *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007) (approving settlement where 82 objectors appeared from a class of 11,000 people). To date, Class Representatives and Class Counsel have not received any requests for exclusion or objections to the Settlement. Evans Decl. ¶¶11-12; Joint Decl. ¶¶67-68. If any requests for exclusion and/or objections are received, Class Representatives will address these in their reply.

### c.      Stage of Proceedings and Discovery Completed

The Settlement was achieved after Class Counsel:  (1) conducted an investigation to plead an initial complaint and detailed FAC which required both scouring of public records and retention of investigators; (2) moved for lead-plaintiff appointment on behalf of Class Representatives Langstadt and Lemond; (3) successfully opposed Defendants' motion to dismiss the FAC; (4) successfully opposed Defendants' motion for reconsideration of the Court's order sustaining the FAC; (5) propounded and responded to document requests and interrogatories and negotiated the parameters of document discovery, filing a motion to compel document production when the parties were unable to resolve discovery disputes concerning the parameters

of document production; (6) filed a motion for class certification (which was fully briefed and resulted in the Court certifying the Class) and defended the depositions of both Class Representatives; (7) entered into a stipulation with Defendants which was so-order by the Court permitting Class Representatives to file a SAC; (8) filed the SAC, which included detailed additional allegations concerning OZM's entry into the Deferred Prosecution agreement with the DOJ and SEC Cease and Desist Order, as well as OZM's accounting practices, which entailed the engagement of an accounting expert; (9) filed a motion for leave to renew claims against Cohen; (10) opposed Defendants' motion to dismiss the SAC; (11) continued with, and completed, fact discovery after the Court issued its order granting in part and denying in part Defendants' motion to dismiss the SAC; (12) reviewed thousands of pages of documents produced by Defendants, as well as documents produced by OZM's auditor, and issued numerous third-party subpoenas; (13) filed a motion to compel the production of documents withheld on the basis of attorney-client privilege and work product protection; (14) took eleven depositions in total, including the depositions of Defendants Och and Frank and the Ernst & Young audit partner in charge of OZM's audits during the Class Period; (15) participated in two mediation sessions with Judge Phillips (Ret.) and prepared substantial and detailed mediation submissions; (16) negotiated and drafted the terms of all relevant settlement documents including the Stipulation, Preliminary Approval Order, and the notice documents; (17) presented those settlement terms to this Court by way of a motion for preliminary approval of the proposed settlement; and (18) oversaw the provision of Notice to the proposed settlement class and monitoring the work of the selected claims administrator. *See* Joint Decl. ¶5. As a result, prior to entering into the Settlement, Class Counsel and Class Representatives understood the strengths and weaknesses of the case. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745

(S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) (settlement approved where the parties "have a clear view of the strengths and weaknesses of their cases").

**d.**   **Risks of Establishing Liability and Damages**

In assessing the Settlement, the Court should balance the immediacy and certainty of a recovery for the Class against the continuing risks of litigation. *See In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 591–92 (S.D.N.Y. 1992); *In re Warner Commc'ns. Sec. Litig.*, 618 F. Supp. at 741. While the claims asserted in this action were brought in good faith and Class Representatives believe they have merit, as further explained in the Joint Declaration, there are always risks in attempting to achieve a better result for a class through continued litigation. Joint Decl. ¶¶52-65.

Proof of damages in a securities case is always difficult and invariably requires highly-technical expert testimony. The experts retained by Class Representatives and Defendants no doubt would have widely divergent views as to the range of recoverable damages at trial. Where it is impossible to predict which expert's testimony or methodology would be accepted by the jury, courts have recognized the need for compromise. *See generally Am. Bank Note Holographics,*127 F. Supp. 2d at 426-27 (stating that "[i]n such a battle, Lead Counsel recognize the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount of Plaintiffs' losses"); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Aside from these difficulties – which are common to any contested securities action – Class Counsel has identified the following specific risks weighing against continued prosecution of this action:

**i.**   **Risks Posed In Obtaining A Favorable Verdict at Trial**

Class Representatives and Class Counsel recognize that prosecution of this case to trial would have presented substantial difficulties. Class Representatives and Class Counsel recognize

16

that there is a risk in securities class action litigation. Although Class Representatives' SAC survived motions to dismiss and Class Representatives received substantial discovery, it does not always mean that this evidence would be enough to prevail at summary judgment and trial.

### ii.   Risks Posed by Obstacles to Collecting a Judgment

Class Representatives and Class Counsel also recognize that even if they were successful at trial, it is likely that expensive, long appeals would be filed. This poses a risk to the Class because it would drag out the action and deplete Defendants' resources that could potentially go to the Class. Having the Settlement now guarantees recovery to Class Members.

### e.   The Risks of Maintaining the Class Action Through Trial

Although the Court has previously certified the Class, it is a conditional order. Fed. R. Civ. P. 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 178 (S.D.N.Y. 2014) ("Indeed, Federal Rule of Civil Procedure 23(c) authorizes a court to decertify a class at any time."). Accordingly, although Class Representatives believe that the certified should be maintained, it is not a guarantee.

### f.   Range of Reasonableness of the Settlement

Reality dictates that, to settle a case, some discount needs to be offered to a settling defendant, or it would otherwise have no economic incentive to settle. Additionally, in the context of a factually and legally complex securities class action lawsuit, responsible class counsel cannot be certain that they will be able to obtain – and enforce – a judgment at or near the full amount of the class-wide damages that they would propose. Thus, the possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992), 1206 (6th Cir. 1992) (citation omitted).

Indeed, the Second Circuit has held that "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455 (footnote omitted); *accord In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 170 (3d Cir. 2006). "In fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455, n.2. Courts agree that the determination of a "reasonable" settlement is not susceptible to a single mathematical equation yielding a particularized sum. *In re PaineWebber*, 171 F.R.D. at 130; *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 718 F. Supp. 1099, 1103 (S.D.N.Y. 1989).

Class Counsel, in consultation with a damages expert, estimates the aggregate damages to the class are approximately between $101.6 and $166 million. Joint Decl. ¶63. The Settlement represents between 17.3% and 28.3% of estimated damages, a range that is far above the range of typical class action securities settlements. *Id.*; *see also In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of the class' total estimated losses); *Velez v. Novartis Pharm. Corp.*, No. 04 CIV 09194 CM, 2010 WL 4877852, at *14 (S.D.N.Y. Nov. 30, 2010) (noting that "courts often approve class settlements even where the benefits represent 'only a fraction of the potential recovery'" and collecting cases from the Southern District where settlements were approved for percentages of estimated damages such as 1.6%, 2%, and 5%). This is an extraordinary recovery for a securities class action. Cornerstone Research calculated that for 2016, securities settlements overall returned a median of 2.5% of damages and 3.4% where damages were between $125 million and $249 million. Between 2006

18

and 2015, the overall median settlement as a percentage of estimated damages was 2.4% and for cases where damages were between $125 million and $249 million, it was 2.7%. Cornerstone Research, *Securities Class Action Settlement 2016 Review and Analysis* (2016) at 8, Fig. 7.[5] Further, a recent analysis by NERA Economic Consulting found that in 2017 the median settlement as a percentage of estimated damages was 2.6%, and just 2.1% in 2016. NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* at 38, Fig. 29.[6] Between 1996 and 2017, the median ratio of settlements to investment losses was 3.2% for cases alleging investor losses under between $100 million and $199 million. *Id.* at 37, Fig. 28. Thus, the result here is more than the historical median settlements for cases of this size.

Additionally, the Settlement provides for payment to Class Members now, without delay, not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985). Any additional recovery would be highly speculative, and would require many years of additional litigation with no promise of recovering any personal assets of the Individual Defendants.

Although additional litigation could theoretically result in a large damages award at trial, that result would only come after Defendants spent millions of dollars in litigation expenses – further depleting *available* funds, while, at the same time, not guaranteeing that the Class would get a larger result. Joint Decl. ¶60. Given the obstacles and uncertainties attendant to this

---

[5] Available at http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf. Last viewed on December 17, 2018.

[6] Available at https://www.nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf. Last viewed on December 17, 2018.

complex litigation, the Settlement is well within the range of reasonableness. It is unquestionably better than the unfortunate likelihood of no recovery at all.

### g.      Settlement Resulted From Arm's-Length Negotiations

The experience and reputation of the Parties' counsel and the arm's-length nature of the negotiations is entitled to great weight. *See, e.g., Wal-Mart*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)) ("A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery'"); *Am. Bank Note Holographics*, 127 F. Supp. 2d at 428 ("Courts have looked to ensure that the settlement resulted from arm's-length negotiations between counsel possessed of experience and ability necessary to effective representation of the class's interests.") (internal quotations omitted).

The record demonstrates the procedural fairness of the Settlement. The proposed Settlement was the result of lengthy negotiations between Class Counsel and defense counsel, with the aid of well-regarded mediator Hon. Layn Phillips (Ret.). *In re Mannkind Corp. Sec. Litig.*, No. CV 11-0929 GAF (SSX), 2012 WL 13008151, at *5 (C.D. Cal. Dec. 21, 2012) ("Judge Phillips is an extremely able and experienced mediator … The Court is completely confident that the negotiations and mediation were conducted at arm's length, were the product of rational compromise on the part of all involved, and were in no way collusive."); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 679 (D. Colo. 2014) (noting that Judge Phillips "has extensive experience mediating complex cases."); *See* Joint Decl. ¶51. The attorneys on both sides are experienced and thoroughly familiar with the factual and legal issues posed in the litigation (as evidenced by the procedural history of the case and the issues briefed before the Court). Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *See Sumitomo*, 189 F.R.D. at 280 (when settlement negotiations are

conducted at arm's length, "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation") (quoting *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. at 125; *In re Salomon Inc Sec. Litig.*, No. 91 CIV. 5442 (RPP), 1994 WL 265917, at *13 (S.D.N.Y. June 16, 1994) (judgment of experienced counsel "weighs strongly in favor [of] the proposed settlement"); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 at 87-89 (4th ed. 2002).  Here, the settlement did was the product of two separate mediations that took place two years apart.

Class Counsel urges final approval of the proposed settlement based upon their: knowledge of the strengths and weaknesses of the case; the analysis and substantial litigation to date; the likely recovery at trial and/or after appeal; and experience in evaluating proposed class action settlements. Defendants are also represented by highly-capable and sophisticated counsel, Gibson, Dunn, & Crutcher LLP, Covington & Burling LLP, and Orrick, Herrington, & Sutcliffe LLP, that fervently represented their clients and spared no expense. These highly-respected and experienced firms entered into the Settlement following extensive negotiation.

### h.     Greater Judgment

For the reasons explained herein, the possibility of greater recovery than provided by the Settlement is not a guarantee and there are several risks attendant to continued litigation. If the action proceeds, both sides would be expending substantial resources and thus could deplete funds available to Class Representatives.

The Settlement should therefore be finally approved because it is fair, adequate and reasonable under the Second Circuit's *Grinnell* factors.

### B.     Approval of the Plan of Allocation Is Warranted

The Plan of Allocation was formulated with the principles of loss causation in mind. Therefore, those shareholders who bought and then sold shares, "before the relevant truth begins

21

to leak out" have no recognized losses under the Plan of Allocation because "the misrepresentation will not have led to any loss." *Dura*, 544 U.S. at 342; *see also In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at \*1 (N.D. Cal. June 18, 1994), at \*1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable").

In addition to excluding those who incurred no provable damages, the Plan of Allocation also recognizes differences in damages incurred by those who bought and sold their shares at different times during the Class Period, reflecting the different damages due to the purchase and sale prices that they paid. Evans Decl., Ex. A. After considering lack of loss causation and the timing of Class Members stock purchases and sales, the Plan of Allocation does not discriminate between Class Members in the same position. The Net Settlement Fund will be distributed on a *pro rata* basis depending on a Class Members' recognized losses.

In short, the Plan of Allocation has a rational basis, Class Counsel believes it fairly compensates Class Members, and this Court should approve it. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'").

## III.   NOTICE TO THE CLASS COMPLIED WITH RULE 23 AND DUE PROCESS

Courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1). Notice must be the "best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974), 417 U.S. 156, 173 (1974).

Both the substance of the Notice and the means of dissemination satisfied these standards. The Court-approved Notice includes all the information required by Rule 23(c)(2)(B)

and the PSLRA, including the following, without limitation: (i) an explanation of the Action and the claims asserted; (ii) the definition of the Settlement Class; (iii) the amount of the Settlement; (iv) a description of the Plan of Allocation; (v) the reasons for proposing the Settlement; (vi) the fees and expenses to be sought by Class Counsel, administrative costs, and awards to certain Class Representatives; (vii) the Settlement Class Members' rights, including the right to accept, opt out, or object to the Settlement, Plan of Allocation, or the requested attorneys' fees or expenses; (viii) the process for filing a proof of claim; (ix) the necessary information for any Settlement Class Member to examine the Court records should they desire to do so; (x) instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name; and (xi) the binding effect of a judgment on Settlement Class Members.

The Notice program was carried out by a third-party claims administrator, Strategic Claims Services ("SCS"), which is nationally recognized for notice and claims administration and has administrated hundreds of similar settlements, under the supervision of Class Counsel. Evans Decl. at ¶2.  In accordance with the Court's orders, SCS distributed 68,689 Notice and Claim Forms to Class Members, brokers, and nominee holders. Evans Decl. ¶6. Summary Notice was posted over *GlobeNewswire* on October 26, 2018. *Id.* at ¶9. The Notice and Claim Forms were also available on SCS's website, www.strategicclaims.net, along with a link for an online claim filing. *Id.* at ¶7.

This combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate, widely circulated publication, transmitted over the newswire, and posted on the internet, was "the best

notice … practicable under the circumstances." Rule 23(c)(2)(B); *see In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014).

## IV.    CONCLUSION

For all of the foregoing reasons, Class Representatives respectfully request that the Court finally approve the proposed class action settlement.

Dated:   December 17, 2018

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen
Sara Fuks
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: sfuks@rosenlegal.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

**POMERANTZ LLP**
Jeremy A. Lieberman
Michele S. Carino
600 Third Avenue, Floor 20
New York, New York 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
Email: mcarino@pomlaw.com.

*Class Counsel for Class Representatives and the Class*

24

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2018, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


<u>/s/Sara Fuks</u>