**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Sara Fuks
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: sfuks@rosenlegal.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181

**POMERANTZ LLP**
Jeremy A. Lieberman
Michele S. Carino
600 Third Avenue, Floor 20
New York, New York 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
Email: mcarino@pomlaw.com.

*Class Counsel for Class Representatives and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ARTHUR MENALDI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff(s),<br> -against-<br><br>OCH-ZIFF CAPITAL MANAGEMENT GROUP LLC, DANIEL S. OCH, and JOEL M. FRANK,<br><br>       Defendants. | Civil Action No. 14 Civ. 3251 (JPO)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVES' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO CLASS REPRESENTATIVES** |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     FACTS ................................................................................................................. 4

III.    ARGUMENT ....................................................................................................... 5

      A.     The Application for an Award of Attorneys' Fees and Reimbursement of
           Expenses Is Reasonable and Should Be Approved................................................ 5

           1.     Legal Standards for an Award of Attorneys' Fees...................................... 5

           2.     The Requested Fee is Fair Under the Percentage-of Recovery Method and
                  the Second Circuit's *Goldberger* Factors ................................................... 6

           3.     The Requested Fee is Reasonable Under the Lodestar "Cross-Check".... 14

           4.     Reimbursement of Litigation Expenses ..................................................... 16

      B.     The Proposed Award to Class Representatives is Reasonable ............................ 17

IV.    CONCLUSION.................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Pages**

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
    568 U.S. 455, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013) ........................................................ 4

*AOL Time Warner, Inc. Sec.*,
    No. 02 CIV. 5575 (SWK), 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ................................ 7

*Aponte v. Comprehensive Health Mgmt., Inc.*,
    No. 10 CIV. 4825 JLC, 2013 WL 1364147 (S.D.N.Y. Apr. 2, 2013) ...................................... 15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299, 105 S. Ct. 2622, 86 L. Ed. 2d 215 (1985) ........................................................ 5

*Becher v. Long Island Lighting Co.*,
    64 F. Supp. 2d 174 (E.D.N.Y. 1999) ...................................................................................... 13

*Blum v. Stenson*,
    465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) .................................................. 6, 13

*Boeing Co. v. Van Gemert*,
    444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) .......................................................... 5

*Campos v. Goode*, No. 10 CIV. 0224 DF,
    2011 WL 9530385 (S.D.N.Y. Mar. 4, 2011) .......................................................................... 16

*Cherner v. Transitron Elec. Corp.*,
    221 F. Supp. 55 (D. Mass. 1963) ............................................................................................ 10

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .................................................................................. 9, 10, 12, 14

*Dolgow v. Anderson*,
    43 F.R.D. 472 (E.D.N.Y. 1968) ............................................................................................... 5

*Eltman v. Grandma Lee's, Inc.*,
    No. 82 CIV. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ........................................ 12, 14

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ............................................................................................. passim

*Hicks v. Stanley*,
    No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) .............................. 17

*In re Akari Therapeutics PLC Securities Litigation*,
    Case No. 1:17-cv-03577-KPF (Nov. 28, 2018) (Dkt. No. 106) ................................................ 13

*In re Amaranth Nat. Gas Commodities Litig.*,
   No. 07 CIV. 6377 SAS, 2012 WL 2149094 (S.D.N.Y. June 11, 2012) ................................. 13

*In re AT & T Corp.*,
   455 F.3d 160 (3d Cir. 2006) ........................................................................................ 15

*In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*,
   772 F.3d 125 (2d Cir. 2014) ........................................................................................ 17

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) .......................................................................... 16

*In re Blech Sec. Litig.*,
   No. 94 CIV. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) ............................ 13

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014) ............................................................................ 15

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
   No. 98 CV 4318 HB, 2001 WL 709262 (S.D.N.Y. June 22, 2001) .......................................... 6

*In re Elan Sec. Litig.*,
   385 F. Supp. 2d 363 (S.D.N.Y. 2005) .......................................................................... 15

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................... 15

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   No. MDL 12-2389, 2015 WL 6971424, at *12 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re
   Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) ............................................................ 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................. 12

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................... 13, 17

*In re IDreamSky Tech. Ltd. Sec. Litig.*,
   No. 15-cv-02514, (S.D.N.Y. April 6, 2018) (Dkt. #111) ..................................................... 13

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
   No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................ 17

*In re Merrill Lynch Tyco Research Sec. Litig.*,
   249 F.R.D. 124 (S.D.N.Y. 2008) ................................................................................. 16

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) .......................................................................... 17

*In re Penthouse Exec. Club Comp. Litig.*,
No. 10 CIV. 1145 KMW, 2014 WL 185628 (S.D.N.Y. Jan. 14, 2014) .................................... 7

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ................................................................................... 10, 12

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005) .......................................................................................... 5

*J. I. Case Co. v. Borak*,
377 U.S. 426 (1964) ...................................................................................................................... 6

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................. 6, 7, 15

*Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ......................................................................................... 17

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970) ................................................................ 5

*Miltland Raleigh-Durham v. Myers*,
840 F. Supp. 235 (S.D.N.Y. 1993) ........................................................................................... 16

*Missouri v. Jenkins by Agyei*,
491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) ....................................................... 12

*Perry v. Duoyuan Printing, Inc.*,
No. 10-cv-7235 (GBD) (S.D.N.Y.), Dkt. No. 185 .................................................................. 13

*Reichman v. Bonsignore, Brignati & Mazzotta P.C.*,
818 F.2d 278 (2d Cir. 1987) ..................................................................................................... 16

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185 (S.D.N.Y. 1997) ........................................................................................... 15

*State of W. Va. v. Chas. Pfizer & Co.*,
314 F. Supp. 710 (S.D.N.Y. 1970) ............................................................................................. 9

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ......................................................................................... 6

*Vaccaro v. New Source Energy Partners L.P.*,
No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) .............................. 13

## **Statutes**

15 U.S.C. § 78u-4(a)(4) ................................................................................................................ 17

iv

15 U.S.C. § 78u-4(a)(6) ................................................................................................. 7

15 U.S.C. § 78u-4(f)(7) .................................................................................................. 3

**<u>Other Authorities</u>**

*Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* at 38, Fig. 29,
   https://www.nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0
   118_final.pdf. .......................................................................................................... 11

*Securities Class Action Settlement 2016* Review *and Analysis* (2016) at 8, Fig. 7,
   http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-
   Review.pdf ............................................................................................................. 11

## I.      INTRODUCTION

Class Representatives Ralph Langstadt and Julie Lemond ("Class Representatives"), on behalf of themselves and the Settlement Class,[1] respectfully submit this memorandum in support of the motion for an award of attorneys' fees and reimbursement of expenses to Class Counsel.[2]

Class Representatives and Class Counsel achieved the immediate and significant $28,750,000 Settlement for the Class. Class Counsel seeks attorneys' fees of 30% of the Settlement Amount, or $8,625,000. This fee is reasonable particularly in light of the extraordinary results achieved in this case, recovering up to 28.3% of Class Representatives' estimate of class-wide damages. *See* Joint Declaration of Laurence M. Rosen and Patrick V. Dahlstrom In Support of Class Representatives' Motions For: (1) Final Approval of Proposed Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Class Representatives ("Joint Decl." or "Joint Declaration"), filed herewith, ¶63.

The requested fees are fair, reasonable, and consistent with the range of percentages that courts have awarded in securities class-action settlements of this size. Class Counsel expended substantial time and labor in advancing this Action and the Settlement. They accomplished the following, without limitation: (1) conducted an investigation to plead an initial complaint and detailed First Consolidated Amended Class Action Complaint ("FAC") which required both scouring of public records and retention of investigators; (2) moved for lead-plaintiff appointment on behalf of Class Representatives Langstadt and Lemond; (3) successfully opposed

---

[1] "Settlement Class" means "all persons other than Defendants who purchased OZM securities between February 9, 2012 and August 22, 2014, both dates inclusive." (Dkt. ##186, 193). Excluded from the class are "Defendants, current and former officers and directors of Och-Ziff, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest." (Dkt. #186).

[2] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement (the "Stipulation"), filed with the Court on October 2, 2018 (Dkt. #190).

Defendants' motion to dismiss the FAC; (4) successfully opposed Defendants' motion for reconsideration of the Court's order sustaining the FAC; (5) propounded and responded to document requests and interrogatories and negotiated the parameters of document discovery, filing a motion to compel document production when the parties were unable to resolve discovery disputes concerning the parameters of document production; (6) filed a motion for class certification (which was fully briefed and resulted in the Court certifying the Class) and defended the depositions of both Class Representatives; (7) entered into a stipulation with Defendants which was so-ordered by the Court permitting Class Representatives to file a Consolidated Second Amended Class Action Complaint ("SAC"); (8) filed the SAC, which included detailed additional allegations concerning OZM's entry into the Deferred Prosecution Agreement with the DOJ and SEC Cease and Desist Order, as well as OZM's accounting practices, which entailed the engagement of an accounting expert; (9) filed a motion for leave to renew claims against Michael Cohen; (10) opposed Defendants' motions to dismiss the SAC; (11) continued with, and completed, fact discovery after the Court issued its order granting in part and denying in part Defendants' motions to dismiss the SAC; (12) reviewed thousands of pages of documents produced by Defendants, as well as documents produced by OZM's auditor, and issued numerous third-party subpoenas; (13) filed a motion to compel the production of documents withheld on the basis of attorney-client privilege and work product protection (14) took eleven depositions in total, including the depositions of Defendants Och and Frank and the Ernst & Young audit partner in charge of OZM's audits during the Class Period; (15) participated in two mediation sessions with Judge Layn Phillips (Ret.) of Phillips ADR (which took place two years apart) and prepared substantial and detailed mediation submissions; (16) negotiated and drafted the terms of all relevant settlement documents including the Stipulation,

Preliminary Approval Order, and the notice documents; (17) presented those settlement terms to this Court by way of a motion for preliminary approval of the proposed settlement; and (18) oversaw the provision of Notice to the proposed settlement class and monitoring the work of the selected claims administrator. Joint Decl. ¶5.

In addition to the daunting requirements of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, 15 U.S.C. § 78u-4(f)(7) ("PSLRA"), this litigation was risky and complex for several reasons. If the Settlement was not reached, the first hurdle Class Representatives faced was summary judgment motions, followed by trial. Even if Class Representatives survived these obstacles and secured a judgment on behalf of the Settlement Class, a significant hurdle remained: collecting the judgment from Defendants. Joint Decl. ¶60. Class Representatives and Class Counsel have invested significant time and resources into litigating this action and if the Settlement was not reached, they faced the need to expend more significant time and resources.

Class Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $401,240.26.  *See* Joint Decl. ¶85; Rosen Fee Decl. ¶8; Pomerantz Fee Decl. ¶8.[3] This amount is below the estimated $500,000 limit of litigation-expense reimbursement that Class Representatives set forth in the Notice.[4] These expenses were

---

[3] Declaration of Laurence M. Rosen on behalf of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl."), Declaration of Patrick V. Dahlstrom on behalf of Pomerantz LLP Concerning Attorneys' Fees and Expenses ("Pomerantz Fee Decl."), attached respectively as Exhibits 2 to 3 to the Joint Declaration.

[4] "Notice" refers to the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Final Approval Hearing, attached as Exhibit A to the Declaration of Sarah Evans Concerning the Mailing of the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Final Approval Hearing and Proof of Claim and Release ("Evans Decl." or "Evans Declaration"), Exhibit 1 to the Joint Declaration.

both reasonable and necessary to prosecute and resolve the claims against Defendants successfully.

Additionally, for over four years Class Representatives have expended substantial time participating in this action on behalf of the Class. Accordingly, they deserve the modest request for an award of $5,000 each, or $10,000 in total, to compensate them for their time and service to the Settlement Class, as well as to function as incentives to serve as Class Representatives. Joint Decl. ¶¶86-88.

Class Representatives and Class Counsel undertook the risky task of pursuing this litigation, with no guarantee of the positive outcome they achieved. "Congress, the Executive Branch, and [the Supreme] Court, moreover, have 'recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions […].'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 478, 133 S. Ct. 1184, 185 L. Ed. 2d 308 (2013). Class Representatives' and Class Counsel's contributions here exemplify the value of this "essential supplement." In light of the risks faced, the complexity of the case, the quality of legal work performed, necessary expenses incurred, the amount of time and effort expended by Class Counsel, and the size of the fee and expense request in relation to the Settlement achieved, the fee request of 30% of the Settlement Amount or $8,625,000 with interest is both fair and reasonable under the standards used in the Second Circuit.

## II.    FACTS

A detailed description of the procedural history, settlement negotiations, and the considerations leading to the Settlement is set forth in the Joint Declaration filed herewith, as well as Section II of the Memorandum of Law in Support of Class Representatives' Motion for Final Approval of the Proposed Class Action Settlement (the "Final Approval Memo."), which is

incorporated herein by reference. Class Representatives respectfully refer the Court to the background section of the Final Approval Memo.

## III.     ARGUMENT

### A.     The Application for an Award of Attorneys' Fees and Reimbursement of Expenses Is Reasonable and Should Be Approved

#### 1.     Legal Standards for an Award of Attorneys' Fees

The Supreme Court, the Second Circuit, and courts within this Circuit have all recognized that where counsel's efforts have created a "common fund" for the benefit a class, counsel should be compensated from that common fund. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980), 478 (1980); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) ("When attorneys create a common fund from which members of a class are compensated for a common injury, they are entitled to a reasonable fee – set by the court – to be taken from the fund.") (internal quotation omitted).

Awards of attorneys' fees from a common fund serve the dual purposes of encouraging representatives to seek redress for damages caused to an entire class of persons and discouraging future misconduct of a similar nature. *Dolgow v. Anderson,* 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). The common fund doctrine is also designed to prevent the unjust enrichment of class members who benefit from a lawsuit without paying for its costs. *See Boeing Co.*, 444 U.S. at 478. Because the common fund doctrine provides incentives for both plaintiffs and their counsel and serves to deter securities misconduct, the Supreme Court has emphasized that private securities actions "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v.*

*Berner*, 472 U.S. 299, 310, 105 S. Ct. 2622, 86 L. Ed. 2d 215 (1985) (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)).

### 2.      The Requested Fee is Fair Under the Percentage-of Recovery Method and the Second Circuit's *Goldberger* Factors

The Supreme Court consistently has held that the percentage-of-recovery approach is a correct method for determining attorneys' fees in common fund cases. *See Blum v. Stenson*, 465 U.S. 886, 900, n.16, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). In determining a reasonable fee, the Second Circuit has set forth the six factors that courts should consider when determining the reasonableness of a request for attorneys' fees in a common fund action:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (2d Cir. 2000) (internal quotations omitted). Each of these factors supports the fee requested here.

In *Goldberger*, the Second Circuit examined the history of the alternative methods for calculating attorneys' fees and expressly approved use of the percentage-of-recovery method in awarding fees from a common fund. *Id.* at 50. Indeed, the clear trend within this Circuit and this District is to utilize the percentage-of-recovery approach when awarding attorneys' fees in common fund cases. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (stating that "the trend [is] in favor of the percentage-of-recovery approach ... within this district"); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("*Del Global*") (citing *Goldberger*, and noting "the trend within this Circuit is to use the percentage of recovery method to calculate fee awards to class counsel" in common fund cases); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 CV 4318 HB, 2001 WL

6

709262, at *4 (S.D.N.Y. June 22, 2001) ("use [of] the percentage method is consistent with the trend in the Circuit"). *In re Penthouse Exec. Club Comp. Litig.*, No. 10 CIV. 1145 KMW, 2014 WL 185628, at *8–9 (S.D.N.Y. Jan. 14, 2014) (awarding a percentage of the fund in a common fund wage and hour class action and noting "the trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one.") (citations omitted).

The use of the percentage of recovery method also comports with the language of the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class . . . ." 15 U.S.C. § 78u-4(a)(6); *Maley*, 186 F. Supp. 2d at 370 (when drafting the PSRLA, Congress "indicated a preference for the use of the percentage method").

In determining a reasonable fee under the percentage-of-recovery approach, courts look to the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *In re AOL Time Warner, Inc. Sec.*, No. 02 CIV. 5575 (SWK), 2006 WL 3057232, at *11 (S.D.N.Y. Oct. 25, 2006) (*citing Goldberger*). Each factor supports the fee request here.

### a.      Time and Labor Expended By Counsel

Over the course of the past four years, counsel worked diligently to achieve such an impressive result. As set forth in the Joint Declaration, Class Counsel expended 6,166.4 hours for an aggregate lodestar of $4,119,968.50 in the litigation of this case. Joint Decl. ¶83; *See* Rosen Fee Decl.; Pomerantz Fee Decl. This action was procedurally advanced as fact discovery had been completed and the next stages would be summary judgment and trial. To litigate this action,

Class Counsel: (1) conducted an investigation to plead the FAC which required both scouring of public records and retention of investigators; (2) moved for lead-plaintiff appointment on behalf of Class Representatives; (3) successfully opposed Defendants' motion to dismiss the FAC; (4) successfully opposed Defendants' motion for reconsideration of the Court's order sustaining the FAC; (5) propounded and responded to document requests and interrogatories and negotiated the parameters of document discovery, filing a motion to compel document production when the parties were unable to resolve discovery disputes concerning the parameters of document production; (6) filed a motion for class certification (which was fully briefed and resulted in the Court certifying the Class) and defended the depositions of both Class Representatives; (7) entered into a stipulation with Defendants which was so-ordered by the Court permitting Class Representatives to file a SAC; (8) filed the SAC, which included detailed additional allegations concerning OZM's entry into the Deferred Prosecution agreement with the DOJ and SEC Cease and Desist Order, as well as OZM's accounting practices, which entailed the engagement of an accounting expert; (9) filed a motion for leave to renew claims against Cohen; (10) opposed Defendants' motion to dismiss the SAC; (11) continued with, and completed, fact discovery after the Court issued its order granting in part and denying in part Defendants' motion to dismiss the SAC; (12) reviewed thousands of pages of documents produced by Defendants, as well as documents produced by OZM's auditor, and issued numerous third-party subpoenas; (13) filed a motion to compel the production of documents withheld on the basis of attorney-client privilege and work product protection; (14) took eleven depositions in total, including the depositions of Defendants Och and Frank and the Ernst & Young audit partner in charge of OZM's audits during the Class Period; (15) participated in two mediation sessions with Judge Layn Phillips (Ret.) and prepared substantial and detailed mediation submissions; (16) negotiated and drafted

the terms of all relevant settlement documents including the Stipulation, Preliminary Approval Order, and the notice documents; (17) presented those settlement terms to this Court by way of a motion for preliminary approval of the proposed settlement; and (18) oversaw the provision of Notice to the proposed settlement class and monitoring the work of the selected claims administrator.  Joint Decl. ¶5. Further, Class Counsel divided up work in the action in an effort to avoid duplicating work and ensured that all work was performed efficiently. Considering the extensive investigations, motion practice, and discovery completed at the time of the Settlement, the time and labor expended by Class Counsel here amply supports the requested fee.

### b. The Magnitude and Complexities of the Litigation/Risks of Litigation

The magnitude, complexities and the risks of the litigation are addressed fully in the final approval memorandum of law. Although Class Representatives believe that this action has significant merit, given the risks of any litigation, the prospect of a favorable verdict was far from assured. Moreover, cases far less complex than this action have been lost on motion, at trial, or on appeal. As stated in *State of W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970), *aff'd,* 440 F.2d 1079 (2d Cir. 1971)

> It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced. Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some plaintiffs and were disapproved by this Court. The trial in each case then resulted unfavorably for plaintiffs; in one case they recovered nothing and in the other they recovered less than the amount which had been offered in settlement.

The Second Circuit explicitly recognizes that the attorneys' "risk of litigation" analysis is an important factor to be considered in making an appropriate fee award. In *Grinnell*, the Second Circuit explained:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (quoting *Cherner v. Transitron Elec. Corp.*, 221 F. Supp. 55, 61 (D. Mass. 1963)). There are numerous cases where Class Counsel have spent thousands of hours and received no payment. Furthermore, due to the real risk that the claims would be defeated at summary judgment or trial – Class Counsel submits that the risk of obtaining a smaller recovery, or no recovery at all, will only increase if the action is prosecuted any further. Joint Decl. ¶¶57-60. Further, this action has been pending for over four years and class members have been patiently hoping for some recovery of their investment in OZM.  Settling the lawsuit now, with such an impressive recovery, is beneficial to the Class so they can receive guaranteed payment much sooner than if the action had to proceed longer, with the many moving pieces, and with no guarantee of recovery.

### c.      The Quality of Representation

The result achieved and the quality of the services provided are also important factors to be considered in determining the amount for reasonable attorneys' fees under a percentage of the fee analysis. *See Goldberger*, at 209 F.3d at 50; *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986). Class Counsel's estimate of class-wide damages is between $101.6 and $166 million. Despite the significant risk of no recovery in this action, Class Counsel has successfully obtained a substantial cash settlement for the Class which represents between 17.3% and 28.3% of estimated damages. Joint Decl. ¶63. This is an impressive recovery for a securities class action as it is well above recoveries in similar actions. Cornerstone Research calculated that for 2016, securities settlements overall returned a median of 2.5% of damages and 3.4% where damages were between $125 million and $249 million.

10

Between 2006 and 2015, the overall median settlement as a percentage of estimated damages was 2.4% and for cases where damages were between $125 million and $249 million, it was 2.7%. Cornerstone Research, *Securities Class Action Settlement 2016 Review and Analysis* (2016) at 8, Fig. 7.[5] Further, a recent analysis by NERA Economic Consulting found that in 2017 the median settlement as a percentage of estimated damages was 2.6%, and just 2.1% in 2016. NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2017 Full-Year Review* at 38, Fig. 29.[6] Between 1996 and 2017, the median ratio of settlements to investment losses was 3.2% for cases alleging investor losses under between $100 million and $199 million. *Id.* at 37, Fig. 28. Thus, the result here is more than the historical median settlements for cases of this size. Thus, the Settlement easily falls "within the range of possible approval" and warrants final approval.

Moreover, the positive reaction by Settlement Class Members confirms the quality of Class Counsel's representation. The Settlement Class is overwhelmingly in favor of the Settlement. To alert Class Member of the Settlement: on October 26, 2018, Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice") was published on *GlobeNewswire*; Notice and Claim Forms[7] were mailed to 68,689 potential Settlement Class Members brokers, and nominee holders; and the Claims Administrator added the Notice and Claim Form to its website as well as provided a link for online claim filing. Evans Decl. at ¶¶6,

---

[5] Available at http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf. Last viewed on December 17, 2018.

[6] Available at https://www.nera.com/content/dam/nera/publications/2018/PUB_Year_End_Trends_Report_0118_final.pdf. Last viewed on December 17, 2018.

[7] "Notice and Claim Form" refer collectively to the Notice and the Proof of Claim and Release Form ("Claim Form"), Exhibit A to the Evans Declaration.

7, 9. As of December 17, 2018, no members of the Settlement Class have objected to the Settlement. *Id*. at 12; Joint Decl. ¶7.

The standing and prior experience of Class Counsel is also relevant in determining fair compensation. *See, e.g.*, *Grinnell*, 495 F.2d at 470; *Eltman v. Grandma Lee's, Inc.*, No. 82 CIV. 1912, 1986 WL 53400, at *4 (E.D.N.Y. May 28, 1986). Here, Class Representatives and the Class are represented by The Rosen Law Firm, P.A. and Pomerantz LLP as Class Counsel. As their firm resumes[8] demonstrate, Class Counsel has extensive experience in the specialized field of shareholder securities litigation. Class Counsel was able to leverage their experience and resources to assess the merits and value of the case adequately, and successfully negotiate the Settlement.

The quality and vigor of opposing counsel is also important in evaluating the services rendered by Class Counsel and the challenges overcome by Class Counsel. *See, e.g.*, *Warner Commc'ns*, 618 F. Supp. at 749; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010). Here, Defendants were represented by experienced and highly qualified attorneys at Gibson, Dunn, & Crutcher LLP, Covington & Burling LLP, and Orrick, Herrington, & Sutcliffe LLP who aggressively represented their clients' interests and spared no expense. The fact that Class Counsel achieved this settlement for the Class in the face of high-quality legal opposition further evidences the quality of Class Counsel's efforts herein.

### d.      The Requested Fee in Relation to the Settlement

A fee is intended to approximate what counsel would receive when bargaining in the marketplace. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285, 109 S. Ct. 2463, 105 L. Ed. 2d

---

[8] The Rosen Law Firm, P.A.'s firm resume is Attached as Exhibit A to the Rosen Fee Decl. and Pomerantz LLP's firm resume is attached as Exhibit A to the Pomerantz Fee Decl.

229 (1989). In the marketplace, the customary fee arrangement in individual contingent-fee cases is between 30% and 40% of the recovery. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.") (Brennan, J., concurring).

The fee request of 30% of the Settlement Fund, or $8,625,000 is well in line with percentages courts in this Circuit, and around the country, have awarded in similar securities class action settlements. *See, e.g.*, *In re Amaranth Nat. Gas Commodities Litig.*, No. 07 CIV. 6377 SAS, 2012 WL 2149094, at *2 (S.D.N.Y. June 11, 2012) (awarding 30%, or $23,130,000 in attorneys' fees for reaching "reasonable" but "by no means extraordinary" settlement); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *12 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) (awarding one-third of attorneys' fees of $26,500,000 settlement); *In re Akari Therapeutics PLC Securities Litigation*, Case No. 1:17-cv-03577-KPF (Nov. 28, 2018) (Dkt. No. 106) (approving attorneys' fees of one-third of $2,700,000 settlement); *In re IDreamSky Tech. Ltd. Sec. Litig.*, No. 15-cv-02514, (S.D.N.Y. April 6, 2018) (Dkt. #111) (awarding one-third of $4.15 million); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding one-third of $2,850,000 settlement); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding 1/3 of $13 million); *In re Blech Sec. Litig.*, No. 94 CIV. 7696 (RWS), 2002 WL 31720381 (S.D.N.Y. Dec. 4, 2002) (awarding one-third of $2,795,000 settlement fund); *Perry v. Duoyuan Printing, Inc.*, No. 10-cv-7235 (GBD) (S.D.N.Y.), Dkt. No. 185 (one-third of $4.3 million); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (one-third fee of $7.8 million, is "well within the range accepted by courts in this circuit").

Under the percentage-of-recovery approach, the attorneys' fee requested by Class Counsel is fair and reasonable for litigation of this kind and is wholly consistent with previous awards made by Courts both within and outside this Circuit.

<strong>e. Public Policy Considerations</strong>

Private lawsuits further the objective of the federal securities laws to protect investors and consumers against deceptive practices. *Eltman*, 1986 WL 53400, at *4. As a practical matter, those lawsuits can be maintained only if competent counsel can be obtained to prosecute them. *Id.* In turn, competent counsel can be obtained only if courts award reasonable and adequate compensation for their services where successful results are achieved. "To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding." *Id.*

These public policy goals are present here as it is important for the integrity of the markets for companies to comply with the federal securities laws. It is important for the markets and the Courts to have competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner. Public policy thus supports the award of the attorneys' fees requested here.

For all of the reasons set forth above, including the result achieved for the Class, as well as the substantial efforts and considerable expenses undertaken on a contingent fee basis in a risky case, it is respectfully requested that the Court adopt the percentage-of-recovery approach and award attorneys' fees equal to thirty percent of the Settlement Fund with interest.

<strong>3. The Requested Fee is Reasonable Under the Lodestar "Cross-Check"</strong>

This Court may also consider whether the requested fee determined under the percentage approach is consistent with an award that would result under the lodestar/multiplier approach. *Grinnell*, 495 F.2d at 470-71. When performing a lodestar "cross-check," the hours documented

14

"need not be exhaustively scrutinized." *Goldberger*, 209 F.3d at 50. Here, the lodestar multiplier is 2.09. Joint Decl. ¶83. This is a reasonable multiplier as it falls in line with multipliers approved in this and courts around the country. *See e.g., In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *17 (S.D.N.Y. July 27, 2007) ("[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District."); *In re AT & T Corp.*, 455 F.3d 160, 173 (3d Cir. 2006) (2.99 multiplier was reasonable in case that lasted "four months, 'discovery was virtually nonexistent'"); *Maley*, 186 F. Supp. 2d at 363–64, 373 (awarding 4.65 multiplier in a case that settled after one year, noting that "in the context of a complex class action, early settlement has far reaching benefits in the judicial system"); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 376 (S.D.N.Y. 2005) (3.47 multiplier at early settlement); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding attorney's fees representing a 5.2 multiplier); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5).

Moreover, Class Counsel's legal work will not end with the Court's approval of the Settlement. Additional hours and resources will necessarily be expended assisting Settlement Class Members with their Claim Forms, shepherding the claims process, and responding to Settlement Class Members' inquiries. *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 CIV. 4825 JLC, 2013 WL 1364147, at *7 (S.D.N.Y. Apr. 2, 2013) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward, also supports their fee request.").

Accordingly, the time and effort devoted to this case by Class Counsel to obtain the $28,750,000 recovery confirms that the requested fee is thus reasonable, whether calculated as a percentage of the fund or in relation to Class Counsel's lodestar.

### 4.      Reimbursement of Litigation Expenses

In addition to Class Counsel's request of 30% of the Settlement Fund, Class Counsel seeks reimbursement of $401,240.26 in litigation costs and expenses incurred or expected to be incurred in connection with the prosecution of this Action. *See* Joint Decl., ¶85. Courts routinely hold that counsel is entitled to reimbursement from the common fund for reasonable litigation expenses that would have been reimbursed by a paying client. *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993); *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 132 (S.D.N.Y. 2008).

Class Counsel incurred $401,240.26 of unreimbursed expenses to prosecute this action. Substantial expenses included: (1) retention of an expert in connection with class certification; (2) investigator fees incurred in connection with the filing of the FAC; (3) retention of an accounting expert in connection with the filing of the SAC; (4) database fees for hosting the documents produced in discovery for review; (5) mediation fees; (6) travel expenses incurred in connection with depositions; (7) court reporting fees incurred in connection with the eleven fact depositions taken; (8) online legal research fees; (9) printing and postage fees. All of the expenses incurred were necessary to prosecute this action effectively and are reflected in the books and records of Class Counsel. *See* Exs. 2 - 3, Rosen Fee Decl. at ¶¶8-9 and Pomerantz Fee Decl. at ¶¶8-9. These fees were necessary for the prosecution and resolution of the action. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012) (reimbursing over $1 million in expert expenses to plaintiff's counsel); *Campos*

*v. Goode*, No. 10 CIV. 0224 DF, 2011 WL 9530385, at *8 (S.D.N.Y. Mar. 4, 2011) (reimbursing mediation fee); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1367 (N.D. Cal. 1996) (reimbursing investigator fee). These expenses were reasonable and necessarily incurred to achieve the Settlement. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 364 (E.D.N.Y. 2010) (reimbursing "expert fees, electronic research charges, long distance telephone and facsimile charges, postage and delivery expenses, discovery costs, filing fees, photocopying, expenses associated with locating and interviewing dozens of witnesses, and out-of-town travel expenses").

### B.   The Proposed Award to Class Representatives is Reasonable

A plaintiff may be compensated for the time he has spent overseeing a case. *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011); *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). The PSLRA permits "the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." 15 U.S.C. § 78u-4(a)(4). Congress, in fact, intended to grant courts discretion to approve awards in appropriate cases. Courts in the Second Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005); *In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expense and costs to lead plaintiffs totaling $453,000).

Class Representatives have devoted a substantial amount time to this case. Each spent time: (i) monitoring news on the company; (ii) reviewing the initial and amended pleadings and briefing and orders on motions to dismiss and class certification; (iii) communicating and corresponding with Class Counsel regarding the litigation and settlement; (iv) gathering and producing documents to Class Counsel concerning their respective OZM investments; and (v) traveling to, preparing for and attending their respective depositions and reviewing the transcripts thereof.   Joint Decl. ¶¶86-88; *See* Declaration of Julie Lemond and Declaration of Ralph Langstadt, attached as Exhibits 4 and 5 to the Joint Declaration, respectively. Therefore, each Class Representative requests a payment to reimburse them for considerable time they spent on this case in the amount of $5,000 each, or $10,000 in total.

## IV.    CONCLUSION

For all of the foregoing reasons, Class Representatives respectfully request that the Court grant their counsel's application for an award of attorneys' fees, reimbursement of reasonable expenses, and an Award to Class Representative for services rendered to the Settlement Class.

Dated:   December 17, 2018                     Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence M. Rosen
Laurence M. Rosen
Sara Fuks
275 Madison Ave., 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: sfuks@rosenlegal.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505

18

Chicago, Illinois 60603
Telephone: (312) 377-1181

**POMERANTZ LLP**
Jeremy A. Lieberman
Michele S. Carino
600 Third Avenue, Floor 20
New York, New York 10016
Phone: 212-661-1100
Fax: 917-463-1044
Email: jalieberman@pomlaw.com
Email: mcarino@pomlaw.com.

*Class Counsel for Class Representatives and the
Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2018, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/Sara Fuks</u>